UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RALPH BIRCH,<br><br>        Plaintiff,<br><br>-against-<br><br>TOWN OF NEW MILFORD et al.,<br><br>        Defendants. | No. 3:20-CV-1790 (VAB)<br>[*rel.* No. 3:20-CV-1792]<br><br><br><br><br>November 7, 2022 |

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DR. HENRY LEE**

## TABLE OF CONTENTS

I. OVERVIEW OF THE MOTION ................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 3

    A. The criminal trial and Dr. Lee's fabrication ............................................................ 3

    B. Dr. Lee doubles down on his fabrication ................................................................ 7

III. ARGUMENT ................................................................................................................ 12

    A. The Summary Judgment Standard ......................................................................... 12

    B. Messrs. Henning and Birch Are Entitled to Summary Judgment as to Liability on Their Fabrication of Evidence Claim Against Dr. Lee ...................... 14

IV. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Adilovic v. County of Westchester*,
   No. 08 Civ. 10971 (PGG), 2011 WL 2983101 (S.D.N.Y. July 14, 2011) .............................. 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................... 13, 15

*Beauvior v. Falco*,
   345 F. Supp. 3d 350 (S.D.N.Y. 2018) ........................................................................... 13, 15

*Birch v. Comm'r of Corr.*,
   334 Conn. 37 (2019) ............................................................................. 1, 3, 7, 12, 14, 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................ 12

*D'Amico v. City of New York*,
   132 F.3d 145 (2d Cir. 1998) ............................................................................................... 13

*Dixon v. Metropolitan Dist. Comm'n*,
   No. 3:14-cv-01468 (VAB), 2017 WL 4247051 (D. Conn. Sept. 25, 2017) ...................... 12

*Gallo v. Prudential Residential Servs., Ltd. P'Ship*,
   22 F.3d 1219 (2d Cir. 1994) ......................................................................................... 12, 13

*Harasz v. Katz*,
   239 F. Supp. 3d 461 (D. Conn. 2017) ................................................................................ 14

*Henning v. Comm'r of Corr.*,
   334 Conn. 1 (2019) .................................................................................. 1, 3, 4, 6, 7, 12, 14, 15

*In re Fosamax Products Liability Litig.*,
   707 F.3d 189 (2d Cir. 2013) ............................................................................................... 13

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) ............................................................................................... 13

*Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................... 13, 15

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F. 3d 98 (2d Cir. 2011) ............................................................................................ 13, 15

**STATUTES**

42 U.S.C. § 1983 ..................................................................................................................... 14

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................. 12

I.     **OVERVIEW OF THE MOTION**

Plaintiffs Shawn Henning and Ralph "Ricky" Birch are entitled to summary judgment as to liability on their fabrication of evidence claim against Dr. Henry Lee. There can be no genuine dispute that Dr. Henry Lee fabricated a "positive" blood test on a bathroom towel. The State used the towel evidence to fill a critical void in its cases against each man, calling it a "significant" piece of evidence. Specifically, the State had accused the Plaintiffs of brutally murdering Everett Carr in his daughter's house, leaving a shockingly bloody crime scene. But the State had *no* forensic evidence, blood or otherwise, connecting Messrs. Henning or Birch to the gruesome crime scene, despite having seized more than one hundred of their personal items. The State filled the forensic void with Dr. Lee's fabrication—claiming that the then teenagers cleaned blood off themselves and dried off using the towel, leaving blood detectable on the towel.

In *habeas corpus* proceedings, the State—represented by one of Dr. Lee's attorneys in this case—conceded at every level of the Connecticut judicial system that Dr. Lee never performed the blood test on the towel. Indeed, there are *no* reports or any other documentary evidence of the test being performed. The Connecticut Supreme Court ultimately vacated Messrs. Henning and Mr. Birch's convictions on the basis that Dr. Lee's false testimony about the towel testing positive for blood denied them due process of law. *See generally Henning v. Comm'r of Corr.*, 334 Conn. 1 (2019); *Birch v. Comm'r of Corr.*, 334 Conn. 37 (2019).

Nevertheless, at his deposition in this action, Dr. Lee claimed under oath to have photographic proof that he performed a presumptive tetramethylbenzidine ("TMB") test on the towel at the murder scene. TMB, when exposed to the "heme" in the hemoglobin of blood, turns the "heme" blue, and Dr. Lee testified that a test on the towel yielded a positive, blue result. Dr. Lee further testified that crime scene images of the towel (printouts of electronic images made

1

from slides), that were taken during his testing process showed the telltale blue TMB reaction. Dr. Lee even circled on those printed images what he claimed to be the blue staining. As the court can see, it is beyond genuine dispute that there is no blue on the towel images. No reasonable juror could conclude that the towel images show a blue stain. Dr. Lee's assertions are false.

Indeed, *knowing* that his testimony about the images was facially false and not credible, Dr. Lee then tried a different approach. Dr. Lee claimed that he had a "much better quality" slide of his test that he considered his "personal" property and that he had kept at his home—and had never previously disclosed to Plaintiffs at any time in the 37-year history of this case. Dr. Lee finally produced this purportedly "much better quality" slide following his original deposition. Once again—as the court and any juror can see—it is beyond genuine dispute that the slide does *not* show a blue TMB reaction. Despite having produced the slide as his supposed proof that he conducted the test, Dr. Lee could not identify any blue TMB reaction on the slide, and instead claimed that he could not properly see it because it was too small despite viewing it through a Kodak 3x, backlit, slide magnifier.

The falsity of Dr. Lee's testimony also is demonstrated by the testimony of **his own experts.** One, Dr. Brooke Kammrath, is an expert in criminalistics and crime scene investigation—at the Henry C. Lee Institute of Forensic Science, no less. Dr. Kammrath examined the very images that Dr. Lee claimed to show TMB staining. After that review, she testified that there is "no written documentation or photographic" evidence that Dr. Lee performed the TMB test. When shown Dr. Lee's "much better quality" slide of the "test," Dr. Kammrath had no difficulty viewing it through the Kodak viewer and testified (as is obvious) that there is no blue on the slide. Dr. Lee's second expert, Assistant State's Attorney Michael

Proto, who defended the *habeas* proceedings, similarly testified that there "just wasn't anything" to support Dr. Lee's claim that he performed a blood test on the towel.

Ordinarily, Dr. Lee's testimony might be enough to defeat summary judgment on Messrs. Henning and Birch's fabrication of evidence claims. But this case is not ordinary. Dr. Lee's proffered corroborating evidence—and his own experts—contradict his testimony. No reasonable juror could credit Dr. Lee's claim that images with no blue on them prove he conducted a positive TMB test for the presence of blood. Dr. Lee's sworn deposition claim that he performed a positive blood test on the towel is as fabricated as his original statement to the state's attorney's office, which fabrication the assistant state's attorney said was "significant" in convicting Messrs. Henning and Birch. Based on their wrongful conviction, Messrs. Henning and Birch each spent more than thirty years in prison.

A false claim that is flatly and conclusively contradicted by a party's ***own*** evidence does not create a ***genuine*** disputed issue of fact for trial. Because the evidence indisputably shows that Dr. Lee fabricated evidence, Messrs. Henning and Birch are entitled to summary judgment as to liability on their fabrication of evidence claims against him.

## II. FACTUAL BACKGROUND

### A. The criminal trial and Dr. Lee's fabrication

Late on December 1 or early on December 2, 1985, Everett Carr was brutally murdered in the home of his daughter, Diana Columbo. *See* Deposition Exhibits 52, 149 (crime scene photos showing victim and bloody crime scene (Attachments A & B); *Henning v. Commissioner of Correction*, 334 Conn. 1, 6 (2019); *Birch v Commissioner of Correction*, 334 Conn. 37, 39 (2019). Mr. Carr was stabbed twenty-seven times, had multiple blunt force trauma wounds to his head and had his jugular vein severed. *See* Depo. Exs. 52, 149; *Henning*, 334 Conn. at 6. Blood

was pooled on the floor and splattered from the floor nearly to the ceiling. Depo. Exs. 52 & 149; *Henning*, 334 Conn. at 6. According to the Commanding Officer of the Connecticut State Police Western Division Major Crime Squad at the time of the murder, the crime scene had the hallmarks of a rage-killing or a domestic attack in which the killer knew the victim. Deposition of James Hiltz at 103:10-104:16 (Attachment C). The scene conditions were not consistent with a burglary. *Id*. The lead investigator, Defendant Andrew Ocif had "never seen that kind of violence in a burglary." Deposition of Andrew Ocif at 46:9-47:1 (Attachment D).

Nevertheless, Ocif and some of his law enforcement colleagues assumed immediately that the murder resulted from a "botched burglary." Ocif, as the lead investigator, never investigated whether the crime scene might have been staged as a burglary. *Id*. at 41:24 – 43:1.[1] Rather, Ocif and some of his colleagues myopically focused on Messrs. Henning and Birch, who were seventeen and eighteen at the time, because they had admitted to conducting daytime burglaries in the area. *Henning*, 334 Conn. at 5. Ocif's theory was that after getting caught by Mr. Carr burglarizing Mr. Carr's daughter's house (where he was staying), these teenagers did not flee, but instead brutally butchered Mr. Carr and then wandered around two floors of the house with the lights on while spreading bloody footprints and blood droplets, only to later leave the scene without taking valuable, readily transportable items, such as cash, jewelry, antiques and a TV. Deposition Exhibit 53 (police report indicating TV left at residence), Deposition Exhibits 55 & 56 (investigating defendant's notes and testimony revealing lights on inside and outside of house, bloody footprints left in blood and valuable jewelry, crystal, mink coat,

---

[1] One investigator, Captain Nobert Lillis of the New Milford Police Department, who interrogated Messrs. Henning and Birch shortly after the homicide, immediately expressed his opinion during the investigation that the focus on Messrs. Henning and Birch was misguided and that they were not involved. Lillis Depo. at 47:12 – 50:4 (Attachment E). After he expressed his opinion, he was removed from the investigation. *Id*. at 50:5 – 51:4.

antiques and cash left at residence), Deposition Exhibit 64 (crime scene video revealing easily transportable items left at scene).[2]

Because the evidence did not support Ocif's theory of a "botched burglary," the investigation stalled. Mr. Carr's wife pressured law enforcement to make an arrest, but they lacked probable cause to do so. Depo Exs. 3, 5 & 12 (Attachments F, G, H) (Mrs. Carr expressing frustration and stating that she would bring adverse media attention on law enforcement (Depo. Ex. 5 at BIRCH000002-04); State's Attorney Santore communicating Mrs. Carr's frustration to Dr. Lee (*id.* at BIRCH000001); state police commander advising Mrs. Carr that they did not have probable cause to make an arrest (Depo. Ex. 12); Major Crime Squad Commander seeking a reward because "all conventional investigative leads and processes have been exhausted" and "[s]imply stated, there is not enough Probable Cause for an arrest or prosecution." (Depo. Ex. 3)). The lack of probable cause included the fact that there was no forensic connection to Messrs. Henning or Birch from this incredibly bloody crime scene. *See* Depo. Exs. 5 & 12; Ocif Depo. at 154:10-22, 293:24 – 294:2 (Attachment D); Deposition of Dr. Henry Lee, March 1, 2022 ("Lee 1") at 179:5-13, 273:5-19 (Attachment I). There was no forensic trace of Messrs. Henning or Birch at the crime scene and no forensic trace from Mr. Carr or the scene on Messrs. Henning or Birch or any of the dozens of their personal items that the police seized, including items from a car in which they had been living. *See id.*; Deposition Exhibits 16 & 19 (Attachment J & K) (listing more than 100 personal items seized from Mr.

---

[2] In the interest of judicial efficiency, Messrs. Henning and Birch have not attached to this memorandum these deposition exhibits. Messrs. Henning and Birch do not believe that Dr. Lee can or will dispute the facts that the deposition exhibits support, and the facts and exhibits are not essential to the court's resolution of their fabrication claim. They are discussed to give the court the context of the misguided "botched burglary" theory and as evidence of motive to fabricate as the misguided theory caused the investigation to stall—neither of which are essential elements of the fabrication claim. All of the exhibits are in the possession of Dr. Lee's counsel. To the extent that Dr. Lee tries to challenge any of these facts, Messrs. Henning and Birch may attach them to their reply memorandum.

Henning and the car in which he and Mr. Birch had been living—and supposedly used to flee from the bloody crime scene immediately after the homicide).[3]

With no probable cause, the investigation at a dead end and the victim's family putting pressure on law enforcement, the defendants in this case, including the state's lead criminalist, Dr. Henry Lee, began fabricating evidence to "solve" the "botched burglary" homicide. They fabricated evidence to fit the "botched burglary" theory so the implausible became plausible. Dr. Lee falsely told the prosecutor that he had tested a bathroom towel at the crime scene and that the test was positive for blood. Deposition of Former Assistant State's Attorney David Shepack at 151:17 – 152:12 (Attachment L). The prosecutor then elicited Dr. Lee's fabrication at Messrs. Henning and Birch's trials and he argued in Mr. Henning's trial that the positively tested towel was "significant" and that it showed that Mr. Henning had cleaned blood off of himself from the gruesome homicide and dried off with the towel—thereby explaining the absence of forensic evidence. *Id*. at 145:4 – 146:18 (discussing Birch argument); 227:5 – 228:24 (discussing Henning argument). Former ASA Shepack used Dr. Lee's fabrication at the criminal trials to explain the gaping forensic hole in the state's case, arguing: "Remember also the bloody towel in the upstairs bathroom. It gave them an opportunity to wash or have some access to that sink." *Id*. at 227:5 – 228:24 (Henning argument); *see also* 145:4-19 (Birch argument: "There was testimony that there was blood by the sink in the bathroom upstairs."); *Henning,* 334 Conn. at 15,

---

[3] The supreme court's *Henning* opinion provides a good summary of the criminal trial evidence, which the court described as "hardly overwhelming." *Henning*, 334 Conn. at 29. The opinion also describes the substantial incriminating evidence regarding Mr. Carr's daughter and one of her lovers that Mr. Henning's criminal trial counsel failed to investigate or offer at trial. *Id*. at n.10 & n.11. The opinion also describes DNA testing that was not available at the time of the criminal trial, which revealed that Mr. Henning and Mr. Birch were excluded from all evidence tested and that the DNA of an unknown person, likely a female, was located on four pieces of evidence that were central to the homicide. *Id*. at 18 & n.13. In addition, it was disclosed at the *habeas* trial that the true assailant left a bloody shoeprint on the floor next to the victim, which is way too small to have been left by either Mr. Birch or Mr. Henning--a fact the Connecticut Supreme Court called "highly exculpatory."

28; *Birch*, 334 Conn. at 52, 64.  Former ASA Shepack acknowledged that "the absence of forensic evidence putting [Messrs. Henning and Birch] at the scene was a significant challenge" to the state's case.  Shepack Depo. at 140:9-17 (Attachment L).

In separate trials, Messrs. Henning and Birch were convicted with Dr. Lee's "significant," fabricated evidence.  As a result of their convictions, Mr. Henning was sentenced to fifty years in prison and Mr. Birch was sentenced to fifty-five years—and each served more than thirty years. *See Henning*, 334 Conn. at 16; *Birch*, 334 Conn. at 54.

In vacating Messrs. Henning and Birch's convictions, the Connecticut Supreme Court concluded that Lee's false testimony was the state's "sole evidentiary basis" to explain the "dearth of forensic evidence," which was the prosecutor's "greatest challenge at trial." *Henning,* 334 Conn. at 32; *Birch*, 334 Conn at 68.  The supreme court vacated Messrs. Henning and Birch's convictions based, *inter alia*, on the state's concession during the *habeas* proceedings that Dr. Lee had not performed a positive blood test on the towel. *Henning*, 334 Conn. at 4 n.3; *Birch*, 334 Conn at 50.

### B. Dr. Lee doubles down on his fabrication

After the vacatur of Messrs. Henning and Birch's convictions, the state concluded that it did not have evidence to prove guilt beyond a reasonable doubt and the court dismissed the charges against both men.  Dismissal Hearing as to Shawn Henning, July 10, 2020 at 4-5 (Attachment M); Dismissal Hearing as to Ralph Birch, July 10, 2020 at 3-5 (Attachment N). Messrs. Henning and Birch then brought this civil rights action and, among other law enforcement misconduct, both allege that Dr. Lee fabricated the evidence that he performed a positive, presumptive blood test on a towel in the upstairs bathroom at the scene of Everett

7

Carr's homicide. Henning Complaint, Count I [ECF 1 in 20-CV-1792 (VAB)]; Birch Amended Complaint, Count I [ECF 54 in 20-CV-1790 (VAB)].

During his first deposition, Dr. Lee doggedly claimed that he performed a tetramethylbenzidine (TMB) test on the towel found in the upstairs bathroom of the crime scene and that the test resulted in a positive, blue reaction. *See, e.g*., Lee 1 at 120:12 – 121: 4 (Attachment I). Dr. Lee explained that "heme" in hemoglobin reacts with tetramethylbenzidine and creates a blue stain. *Id*. at 186:21 – 188:5. When asked if there were any notes, reports or other written documentation of the test, Dr. Lee admitted there were not. *Id*. at 122:19 – 123:6. Dr. Lee's own crime scene textbook discusses the importance of a written documentary record of forensic tests performed at a crime scene. Lee 1 Depo. at 229:18 - 230:17. Dr. Lee's own expert, Dr. Brooke Kammrath, also discusses in her textbook the importance of accurate crime scene testing documentation and she found it "surprising" that none of the numerous forms of documentation that were standard practice in 1985 were used if there had been testing on the towel. Deposition of Dr. Brooke Kammrath at 67:21 – 72:17 (Attachment O) (listing forms of documentation that were standard practice in 1985 and observing that *none* were prepared for supposed testing in the upstairs bathroom).

Facing the reality that no documentation existed for his claimed test, Dr. Lee came up with a new fabrication—he claimed in deposition that crime scene slides taken of the towel on the towel rack in the bathroom somehow provided proof of his supposed positive TMB test on the towel. *See* Lee 1 at 123:2-6. Indeed, some of the slides taken during Dr. Lee's testing of evidence at the crime scene show the telltale blue reaction of the TMB test on surfaces *other than* the towel. *See, e.g.,* Deposition Exhibit 154 BIRCH000885 (Attachment P); Lee 1 at 189:17 – 190:8 (Attachment I) (discussing Deposition Exhibit 154 BIRCH000885); Deposition

Exhibit 180 (Attachment Q). But *none* of the images of the towel show the blue, positive TMB reaction.

Plaintiff's counsel confronted Dr. Lee with Deposition Exhibit 149, which is a set of printed images of the slides that Dr. Lee claimed were taken at the crime scene during his "testing" and that includes the towel as the last image in the exhibit. Lee 1 at 135:18 – 136:9. Plaintiff's counsel placed the last image of Exhibit 149 in front of Dr. Lee and asked him, "Is there anything in that picture that depicts the test that you say you performed on that towel?" *Id*. at 182:20-22. He responded, "Yes. You see all the blue spot on the towel, on the sink, on the toilet bowl and toilet paper, all those little blue spot, it shows positive." *Id*. at 182:23 – 183:1. Counsel then asked Dr. Lee to circle on Deposition Exhibit 149A everywhere that he claimed there was a blue TMB reaction, which he did. Deposition Exhibit 149A (Attachment R). As the court can see, despite Dr. Lee having circled some portions of the image of the towel, there plainly is no blue on the towel in Exhibit 149A.

Apparently recognizing the falsehood of his claim that the towel in Exhibit 149A had blue on it, Dr. Lee tried a new approach. He testified that he had in his personal custody "a slide that's in much better quality." Lee 1 at 192:22 – 93:2 (Attachment I). Despite prior discovery responses in which Dr. Lee asserted that he did not possess any crime scene photographs, *id*. at 209:14 – 211:19, Dr. Lee revealed that he had this "much better quality" slide at his home because, notwithstanding that the slide was taken while he was serving as a state employee for a murder investigation that was subject to post-conviction proceedings, he considered the slide his "personal material" and he took it home when he retired. *Id*. at 242:19 – 243:3.

After Dr. Lee belatedly provided his 140 "personal" slides of the Carr murder scene to the attorney general's office, the attorney general's office converted them to electronic images,

9

produced the images and made the original slides available for inspection and deposition use. The original slides were marked as Deposition Exhibit 170. Kammrath Depo. at 33:23 – 34:20 (Attachment O). A printout of the electronic image that corresponds to what is shown in Exhibits 149 and 149A was marked as Deposition Exhibit 170A and Dr. Lee was once again asked to circle any part of the image that he claimed showed a positive, blue TMB reaction, which he did. Lee Deposition Day 2 ("Lee 2") at 297:15 – 298:14 (Attachment S). As the court and any reasonable juror can see, there is no blue on the towel in Exhibit 170A (Attachment T).[4]

Dr. Lee once again tried to evade, claiming that in his "original photo there is much more [blue] than this." Lee 2 at 298:11-16. Dr. Lee confirmed that the "original photo" he referred to in this answer was the "much better quality" slide that he referred to in his first deposition—and that that is the only slide that he had that depicted "the toilet, the sink and the towels." Lee 2 at 298:17 – 300:16.

Plaintiff's counsel then confronted Dr. Lee with his original "much better quality" slide through a commercially available Kodak 3x, backlight slide viewer that is sold for the precise purpose of viewing slides. Counsel asked Dr. Lee, "Do you see any indication of a positive result from a Tetramethylbenzidine test on that slide?" *Id*. at 295:12-13. Trapped in his web of lies, and despite the fact that he produced the slide as his "much better quality" evidence that he performed a TMB test, Dr. Lee said, "You have to project it. My eyesight is no longer not good anymore." *Id*. at 295:14-15. Counsel persisted, "You're not able to look into that view finder where it's backlit --" and Dr. Lee interrupted, "It's too small." *Id*. at 295:16-18.

---

[4] The court will notice that the images in Exhibits 149/149A and 170A are mirror images. Dr. Lee testified that Exhibit 149/149A was "reversed," but that it fairly reflected the Carr murder scene. Lee 1 at 135:9 - 136:2 (Attachment I). Presumably, because the source material for Exhibit 149 was a slide that could be viewed from either side, whoever created the image that is Exhibit 149 created the image from the back side of the slide.

The court can conclude from these exhibits alone that Dr. Lee fabricated his "positive" TMB test result on the towel and that his deposition testimony that he conducted such a positive test also was false.[5] But it gets even worse for Dr. Lee.

Dr. Lee disclosed two expert witnesses: Dr. Brooke Kammrath and Assistant State's Attorney Michael Proto. Dr. Kammrath is an expert in "criminalistics or crime scene investigation presumptive blood testing" and is the Assistant Director of the Henry C. Lee Institute of Forensic Science. Kammrath Deposition at 11:13-20; 76:19-23 (Attachment O). Curiously, Dr. Lee disclosed her to opine as to "whether or not the use of TMB was common practice at the time." *Id*. at 45:20 – 46:11. Messrs. Henning and Birch never have disputed in this litigation or any prior proceedings that Dr. Lee conducted TMB tests on items *other than* the towel. Printed images of those items show the positive, blue reaction to blood, thereby reinforcing their fabrication claims with respect to the towel for which there are *no* images with blue on them. *See* Deposition Exhibits 154 at BIRCH000885 and 180 (both clearly showing a blue, TMB reaction) (Attachments P and Q).

In her analysis, Dr. Kammrath examined the electronic images of the 140 slides that Dr. Lee kept at home as part of his "personal materials." Kammrath Depo. at 33:13 – 34:21 (Attachment O). Those are the same electronic images from which Deposition Exhibit 170A was printed and on which printed image Dr. Lee circled what he claimed was a blue TMB reaction. *See* Lee 2 at 297:15-24 (Attachment S). None of the 140 electronic images and other materials that Dr. Kammrath reviewed provided "written documentation or photographic" evidence that Dr. Lee performed the TMB blood test. Kammrath Depo. at 26:15 – 27:7

---

[5] The Plaintiffs have requested oral argument and will bring to the hearing the original deposition exhibits and they will have the attorney general's office bring the original slides so the court can ensure itself that Dr. Lee's fabricated evidence and that his deposition testimony was false. The attorney general's office has insisted that it maintain custody of the original slides.

(Attachment O). Dr. Kammrath also reviewed in deposition Dr. Lee's *original* "much better quality" slide that he said showed "much more" blue TMB reaction than the printed image of Deposition Exhibit 170A. When she was asked if she saw any blue on the slide, Dr. Kammrath testified, "No." *Id*. at 53:22 – 55:1.

Finally, for reasons that still are not apparent to the Plaintiffs, Dr. Lee disclosed Assistant State's Attorney Michael Proto as an expert. Attorney Proto tried the *habeas* cases and handled the appeal for the State. Prior to the Connecticut Supreme Court argument in the *habeas* proceedings, Dr. Lee had tried to convince Attorney Proto that he had performed a test on the towel and that Attorney Proto should not concede during his argument that Dr. Lee had not performed the test. *See* Deposition of Michael Proto at 54:10 – 55:9. (Attachment U). After speaking with Dr. Lee, Attorney Proto consulted with Chief State's Attorney Kevin Kane and then conceded on the record that Dr. Lee had not tested the towel because "there just wasn't anything" to support Dr. Lee's claim that he did perform a test on the towel. Proto Depo. at 74:18 – 75:7; *see also Henning*, 334 Conn. at 4 n.3; *Birch*, 334 Conn at 50.

### III. ARGUMENT

#### A. The Summary Judgment Standard

When there is no genuine issue of material fact as to a claim or a part of a claim, a party is entitled to summary judgment. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If no reasonable jury could find in favor of the opposing party because 'the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.'" *Dixon v. Metropolitan Dist. Comm'n*, No. 3:14-cv-01468 (VAB), 2017 WL 4247051, at *4 (D. Conn. Sept. 25, 2017) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). "A dispute is genuine 'if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party cannot avoid summary judgment by raising "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party also cannot defeat summary judgment by proffering testimony that is "unsubstantiated by any other direct evidence" and is "'replete with inconsistencies and improbabilities.'" *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005). "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* at 554 (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "[U]ncorroborated claims that . . . are not supported by any evidence" cannot defeat summary judgment. *Adilovic v. County of Westchester*, No. 08 Civ. 10971 (PGG), 2011 WL 2983101, at * 7 (S.D.N.Y. July 14, 2011); *Beauvior v. Falco*, 345 F. Supp. 3d 350, 368 (S.D.N.Y. 2018) (summary judgment proper where "testimony is uncorroborated by any evidence" and "it is belied by the video evidence").

Further, when a party's "inconsistent and contradictory statements transcend credibility," summary judgment is appropriate against that party. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F. 3d 98, 106 (2d Cir. 2011); *see also In re Fosamax Products Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) ("inescapable and unequivocal" contradictions by an expert cannot defeat summary judgment). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

13

## B. Messrs. Henning and Birch Are Entitled to Summary Judgment as to Liability on Their Fabrication of Evidence Claim Against Dr. Lee

The elements of a civil rights violation under 42 U.S.C. § 1983 for fabricating evidence and denying a person of a fair trial are well-settled. A plaintiff must establish that "'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'" *Harasz v. Katz*, 239 F. Supp. 3d 461, 491 (D. Conn. 2017) (citation omitted). There can be no genuine dispute as to any of these elements and Messrs. Henning and Birch are entitled to summary judgment.

As to the first element, there can be no dispute that Dr. Lee, as the head of the Connecticut Forensic Laboratory and an on-scene investigator, was an "investigating official" in this matter. *See, e.g*. Depo. Ex. 5 (Attachment G) (letter from State's Attorney Dennis Santore to Dr. Henry Lee regarding his investigative work on this matter). As to the third and fourth elements, there can be no dispute that Dr. Lee (1) told Assistant State's Attorney Shepack that he had tested the towel, (2) that the test revealed a positive result for blood and (3) that Attorney Shepack called the information "significant" and he used the information to influence the jury and overcome the "significant challenge" of a lack of any forensic connection to Messrs. Henning and Birch. Shepack Depo. at 140:9-17; 145:4 – 146:18; 151:17 – 152:12; 227:5 – 228:24 (Attachment L); *Henning,* 334 Conn. at 15, 28; *Birch*, 334 Conn. at 50-53. Further, as to the third element, there is no dispute that the Connecticut Supreme Court vacated Messrs. Henning and Birch's convictions when it concluded that Dr. Lee's claim that he had tested the towel was false and its admission resulted in unfair trials. *Henning*, 334 Conn. at 33; *Birch*, 334 Conn. at 69. As to the fifth element, there can be no dispute that Messrs. Henning and Birch were incarcerated for more than thirty years based on trials that the Connecticut Supreme Court

14

determined were unfair due to Dr. Lee's "false or misleading" testimony. *Henning*, 334 Conn. at 4 n.3 & 33; *Birch*, 334 Conn. at 40 n. 4 & 69.

The only issue that Dr. Lee apparently tries to dispute is whether his claim that he conducted a test on the towel was fabricated. As discussed above, Dr. Lee's only evidence is his unsubstantiated testimony that is inconsistent with the physical evidence that he cites as support. Further, his own experts contradict his testimony.

Dr. Lee's "inconsistent and contradictory statements transcend credibility" and do not even create a "metaphysical doubt" as to whether he conducted a blood test on the towel at the Carr murder scene—they are convincingly false based on the evidence that he incredibly claims corroborates the "test." *Rojas*, 660 F. 3d 98 at 106; *Matsushita*, 475 U.S. at 587. False testimony is not even a "mere 'scintilla' of evidence" and is insufficient to show "that the jury could reasonably find for that party." *Anderson*, 477 U.S. at 252. Dr. Lee has testified that the printed towel images and his "better quality slide" show a positive, blue TMB reaction when the court can see that they do not. *See* Depo. Exs. 149A (Attachment R), 170, 170A (Attachment T).[6] Dr. Lee disclosed two experts, both of whom contradict his deposition testimony that he performed the blood test. Dr. Lee's deposition testimony is "belied by the [photographic] evidence," is clearly false and cannot defeat summary judgment. *Beauvior*, 345 F. Supp. 3d at 368.

There is no credible evidence that Dr. Lee performed a TMB test on the towel and no reasonable jury could conclude otherwise. Dr. Lee's statement to former ASA Shepack that he had performed such a test was a fabrication and the state unfairly used that fabrication to convict Messrs. Henning and Birch, which resulted in more than thirty years of wrongful incarceration.

---

[6] Messrs. Henning and Birch will make the "much better quality" slide, Exhibit 170, available for the court's inspection at oral argument.

Messrs. Henning and Birch are entitled to summary judgment against Dr. Lee as to liability on this fabrication claim. The jury can then consider appropriate damages for this fabrication claim at trial.

## IV. CONCLUSION

For the foregoing reasons, the court should grant summary judgment as to liability against Dr. Henry Lee and in favor of the Mr. Henning on Count One in his Complaint and in favor of Mr. Birch in Count One of his Amended Complaint.

Respectfully submitted.

| | |
|---|---|
| By: */s/ Craig A. Raabe* | By: */s/ David A. Lebowitz* |
| IZARD, KINDALL & RAABE LLP | KAUFMAN LIEB LEBOWITZ |
| Craig A. Raabe (ct04116) |   & FRICK LLP |
| Seth R. Klein (ct18121) | David A. Lebowitz, *pro hac vice* |
| 29 South Main Street, Suite 305 | Douglas E. Lieb, (ct31164) |
| West Hartford, Connecticut 06107 | 18 E. 48thStreet, Suite 802 |
| (860) 513-2939 | New York, NY 10017 |
| craabe@ikrlaw.com | (212) 660-2332 |
| sklein@ikrlaw.com | dlebowitz@kllflaw.com |
| | dlieb@kllflaw.com |
| W. JAMES COUSINS, P.C. | |
| W. James Cousins (ct06382) | KIRSCHBAUM LAW GROUP, LLC |
| 54 Danbury Road, Suite 413 | Damon A. R. Kirschbaum (ct21216) |
| Ridgefield, Connecticut 06877 | 433 South Main Street, Suite 101 |
| (203) 205-0622 | West Hartford, CT 06110 |
| jcousins@wjcousinslaw.com | (860) 522-7000 |
| | damon@kirschbaumlaw.com |
| LAW OFFICES OF PAUL CASTELEIRO | |
| Paul Casteleiro (ct31177) | ***Counsel for Plaintiff Ralph Birch*** |
| 1000 Herrontown Road | |
| Princeton, NJ 08540 | |
| (914) 714-0543 | |
| paul@casteleirolaw.com | |

***Counsel for Plaintiff Shawn Henning***