photograph relates to this area here. The corridor leading into the northwest bedroom was smudged, again, having been smudged at or about the time his attainment of the footwear was impressed.

He testified further that in the other bedroom, northeast bedroom, there was a lug type footwear impression underneath the contents of the drawers that were scattered and the significance he attached to that, ladies and gentlemen, was, obviously, the footprints impressed and the items are dumped on top of it, just simple, common sense.

Through that testimony, Doctor Lee was able to conclude -- and I submit that you reasonably can do so as well -- that the burglary continued after the bloodletting.

There is additional evidence, obviously, on that point as well. You will recall the testimony of Detective Bates, Detective Graham, Elaine Pagliaro as to the bloodied items that were found in the dresser, depicted here in the northwest bedroom.

You will recall Ms. Pagliaro testified

about a girdle, a wood chip that Detective Graham testified came from this dresser, too of the decedent, with Mr. Carr's blood on it.

In addition, with respect to the burglary, Diana Columbo testified about the upstairs TV room, where the VCR was missing.

That, ladies and gentlemen, pretty much sets the scene.

Significant, also, is what Doctor Lee testified to about the upstairs bathroom and the towel with the blood on it.

I think the next logical step would be to go to the injuries of the victim. You have seen a number of pictures. They are extensive and brutal.

Doctor Shah testified that he had a number of stab wounds in his back. He testified that he had some stab wounds in his side. He testified that he had a small number of defensive wounds on his hands.

He testified also, ladies and gentlemen, that there was an absence of stab marks in the gentleman's chest.

She testified further that the knife, the

Certainly, there were no fingerprints introduced. There was testimony that the defendant had access to gloves. There is a stipulation. There was testimony by Doctor Lee that there were smears, hand prints, finger marks on the walls in this corridor, and he testified and explained to you, ladies and gentlemen, why he couldn't take an identification from them, because there was simply too much blood.

Remember also, in the car, they had all kinds of clothing. They had outer garments, had footwear. They had jeans. I submit to you, ladies and gentlemen, that during that period, between twelve-thirty and sometime after two o'clock, he can't account for his whereabouts, but that during that time they disposed of their clothes, changed into the clothes they had in the car, disposed of the murder weapon.

What puts the defendant in the house is the defendant. You don't need anything more. Common sense tells you, if he saw the old man getting killed and saw the dog,

common sense tells you he was there. There is no question there are two separate and distinct footprints which could have been only done by two individuals.

I submit to you, ladies and gentlemen, that the State has proven beyond a reasonable doubt that there was a burglary that occurred at that residence, that it occurred between twelve ten and twelve thirty or shortly thereafter, in the early morning hours of December 2nd; that subsequent to the killing, the perpetrators ransacked this bedroom, northeast bedroom and entered the dresser in the northwest bedroom.

Clearly, at twelve-ten, twelve-thirty, it's at night, the middle of the nighttime.

Remember also the bloody towel in the upstairs bathroom. It gave them an opportunity to wash or have some access to that sink.

I submit to you, ladies and gentlemen, taking into account the defendant's own admissions, taking into account the defendant's subsequent lies, admitted lies, taking into account the inconsistencies in his testimony,