Caution
As of: November 5, 2022 12:53 AM Z

# State v. Birch

Supreme Court of Connecticut

June 5, 1991, Argued ; July 30, 1991, Decided ; July 30, 1991, Released

No. 13751

**Reporter**
219 Conn. 743 *; 594 A.2d 972 **; 1991 Conn. LEXIS 372 ***

### State of Connecticut v. Ralph Birch

**Subsequent History:** Related proceeding at *State v. Henning, 220 Conn. 417, 599 A.2d 1065, 1991 Conn. LEXIS 483 (Nov. 19, 1991)*

Petition dismissed by *Birch v. Warden, 1998 Conn. Super. LEXIS 1824 (Conn. Super. Ct., June 25, 1998)*

Writ of habeas corpus granted, Remanded by *Birch v. Comm'r of Corr., 2019 Conn. LEXIS 158 (Conn., June 14, 2019)*

Related proceeding at *Birch v. State, 2019 Conn. LEXIS 159 (Conn., June 14, 2019)*

**Prior History:** [***1]   Substitute information charging the defendant with the crime of felony murder, brought to the Superior Court in the judicial district of Litchfield and tried to the jury before Moraghan, J.; verdict and judgment of guilty, from which the defendant appealed to this court.

**Disposition:** Affirmed.

## Core Terms

right to counsel, interrogation, arraignment, burglary, invoking, offense-specific, initiated, responses, unrelated, murder, rights, custodial interrogation, charges

## Case Summary

**Procedural Posture**

Defendant sought review of a judgment of the Superior Court in the Judicial District of Litchfield (Connecticut), which convicted him of felony murder in violation of *Conn. Gen. Stat. § 53a-54c*.

**Overview**
While incarcerated for other larceny and burglary charges, police officers investigating the victim's death arrived at the correctional center to execute a search warrant authorizing the taking of blood and hair samples from defendant. After the blood and hair samples had been obtained from defendant, two officers took defendant to an interview room at the correctional center for questioning. Before questioning defendant was advised of his Miranda rights and waived his right to counsel. Defendant was later arrested and convicted for felony murder, which was a stabbing in the course of a burglary. Defendant sought review. On appeal, the court affirmed the conviction. The court held that defendant's right to counsel had not been violated because the Sixth Amendment right to counsel was offense-specific and commenced only at or after the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. The court ruled that incriminating statements pertaining to other crimes, as to which the Sixth Amendment right had not yet attached, were admissible at a trial of those offenses.

**Outcome**
The court affirmed the judgment of the trial court.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Inchoate Crimes > Solicitation > Elements

Robin Schwartz

Contracts Law > ... > Discharge & Payment > Defenses > General Overview

Criminal Law & Procedure > ... > Murder > Felony Murder > General Overview

Criminal Law & Procedure > ... > Murder > Felony Murder > Elements

Criminal Law & Procedure > Defenses > General Overview

HN1[ ]  **Solicitation, Elements**

Conn. Gen. Stat. § 53a-54c states that: Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under § 53a-54c, in which defendant is not the only participant in the underlying crime, it shall be an affirmative defense that defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) is not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant is armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious injury.

Criminal Law & Procedure > ... > Miranda Rights > Self-Incrimination Privilege > Custodial Interrogation

Constitutional Law > ... > Fundamental Rights > Criminal Process > General Overview

Constitutional Law > ... > Fundamental Rights > Criminal Process > Assistance of Counsel

Criminal Law & Procedure > ... > Miranda Rights > Self-Incrimination Privilege > Right to Counsel During Questioning

Criminal Law & Procedure > ... > Accusatory Instruments > Indictments > General Overview

Criminal Law & Procedure > Preliminary Proceedings > Arraignments > Procedural Matters

Criminal Law & Procedure > Preliminary Proceedings > Preliminary Hearings > General Overview

Criminal Law & Procedure > Counsel > Right to Counsel > General Overview

HN2[ ]  **Self-Incrimination Privilege, Custodial Interrogation**

The sixth amendment right to counsel is "offense-specific" and commences only at or after the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

Constitutional Law > ... > Fundamental Rights > Criminal Process > Assistance of Counsel

Criminal Law & Procedure > Counsel > Right to Counsel > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Exclusion & Preservation by Prosecutors

HN3[ ]  **Criminal Process, Assistance of Counsel**

Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.

**Counsel:** John J. Davenport, with whom, on the brief, was Timothy C. Moynahan, for the appellant (defendant).

Michael E. O'Hare, deputy assistant state's attorney, with whom, on the brief, were Frank Maco, state's attorney, and David Shepack, assistant state's attorney, for the appellee (state).

**Judges:** Peters, C. J., Shea, Callahan, Covello and Borden, Js.

**Opinion by:** CALLAHAN

# Opinion

 **[\*744] [\*\*973]** The defendant, Ralph Birch, was charged in a substitute information with the crime of felony murder in violation of General Statutes § 53a-54c. [1] **[\*\*\*3]** After a trial to a jury, he was found guilty of the crime charged and was sentenced to a term of imprisonment of fifty-five years. The felony murder charge arose out of the burglary of a house in New Milford committed on December 2, 1985. In the course of the burglary, Everett Carr, a sixty-five year old man living in the house, was stabbed to death. **[\*\*\*2]** [2]

On appeal, the defendant argues that his conviction should be vacated and a new trial ordered because the trial court incorrectly denied his motion to suppress his responses to police questioning and erroneously allowed those responses into evidence at his trial.

The relevant facts are undisputed. On December 5, 1985, the defendant was arrested and charged with larceny and burglary. The larceny charge pertained to the theft of a 1973 Buick that had been stolen in Brookfield on November 29, 1985, while **[\*\*974]** the burglary charge **[\*745]** concerned a crime unrelated to the burglary during which Carr was murdered. On December 6, 1985, the defendant was arraigned in the Superior Court, geographical area eighteen, on those charges. At his arraignment, the defendant applied for and was granted a public defender on the charges for which he was being arraigned. The defendant was then taken to the Litchfield community correctional center and held there in lieu of bond.

 **[\*\*\*4]** On December 9, 1985, police officers investigating Carr's death arrived at the correctional center to execute a search warrant authorizing the taking of blood and hair samples from the defendant. Those officers were accompanied by Detective Scott O'Mara and Sergeant John Mucherino of the Connecticut state police, who were also investigating Carr's death. After the blood and hair samples had been obtained from the defendant, O'Mara and Mucherino took the defendant to an interview room at the correctional center for questioning.

Before questioning the defendant, O'Mara advised him of his Miranda [3] rights by reading verbatim from a preprinted Connecticut state police form containing the required warnings. O'Mara then had the defendant read the form aloud and write his initials next to each section on the form to indicate that he had understood what he had read. When the defendant had finished reading the entire form, he placed his signature after the section of the form that stated: "I am willing to answer questions and make statements knowing that I have these rights. I do not want a lawyer, I know and understand what I am doing. I do this freely and voluntarily. No threats **[\*\*\*5]** or promises have been made **[\*746]** to me." O'Mara then asked the defendant if he understood his rights and was willing to discuss the Carr case. The defendant replied affirmatively. O'Mara and Mucherino then interrogated the defendant concerning his possible involvement in Carr's death.

The defendant was subsequently arrested and charged with felony murder on January 25, 1989. At his felony murder trial, the defendant moved to suppress his responses to O'Mara's and Mucherino's inquiries because his responses were allegedly obtained in violation of both his federal and state constitutional rights to counsel. [4] **[\*\*\*6]** The court denied the defendant's

---

[1] "[General Statutes] Sec. 53a-54c. **HN1**[ ] Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious injury."

[2] Shawn Henning, a coparticipant in the December 2 burglary, was tried separately and was also convicted of felony murder.

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Although the defendant invoked both the federal constitution and article first, § 8 of the Connecticut constitution, "he has proffered no argument that the rights afforded to him by the federal and the state constitutions are in any way

motion to suppress. [5]

[***7] The defendant contends that his motion to suppress should have been granted by the trial court because his [*747] invocation of his sixth amendment right to counsel at his arraignment on the unrelated burglary and larceny charges constituted an invocation of his fifth and sixth amendment rights to counsel for all purposes while he remained continuously in custody. He claims, therefore, that the police were prohibited from initiating any discussion with him concerning not only the crimes for which he had [**975] been arrested and arraigned but also any other uncharged crimes.

When this case was argued, there existed a split of authority as to whether a defendant who requests the appointment of an attorney at his arraignment, thereby invoking his sixth amendment right to counsel, also invokes his fifth amendment right to counsel for subsequent custodial interrogations concerning other unrelated, uncharged crimes. Compare *United States v. Roberts, 869 F.2d 70 (2d Cir. 1989)*; *People v. Bryant, 202 Ill. App. 3d 291, 559 N.E.2d 930 (1990)*; *People v. Crusoe, 433 Mich. 666, 449 N.W.2d 641 (1989)*; *State v. Sparklin, 296 Or. 85, 672 P.2d 1182 [***8] (1983)*; *State v. Stewart, 113 Wash. 2d 462, 780 P.2d 844 (1989)*, cert. denied, *494 U.S. 1020, 110 S. Ct. 1327, 108 L. Ed. 2d 502 (1990)*; with *United States v. Wolf, 879 F.2d 1320 (6th Cir. 1989)*; *United States ex rel. Espinoza v. Fairman, 813 F.2d 117* (7th Cir.), cert. denied, *483 U.S. 1010, 107 S. Ct. 3240, 97 L. Ed. 2d 745 (1987)*; *People v. Perry, 205 Ill. App. 3d 655, 563 N.E.2d 1144 (1990)*, appeal granted,   Ill. 2d  , 567 N.E.2d 339 (1991). Subsequently in *McNeil v. Wisconsin, 501 U.S.   , 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991)*, on indistinguishable facts, the United States Supreme Court resolved that disagreement when it held that the sixth amendment right to counsel is "offense-specific."

In *McNeil,* the court noted that in *Michigan v. Jackson, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986)*, it had held that once the sixth amendment right [*748] to counsel had attached and been invoked, any subsequent waiver of that right during police-initiated custodial interrogation would be ineffective. *McNeil v. Wisconsin, supra, 2207*. The court noted further, however, that HN2[⬆] the sixth amendment [***9] right to counsel is "offense-specific" and commences only "''at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Gouveia, 467 U.S. 180, 188 [104 S. Ct. 2292, 81 L. Ed. 2d 146]* (1984) (quoting *Kirby v. Illinois, 406 U.S. 682, 689 [92 S. Ct. 1877, 32 L. Ed. 2d 411]* (1972) (plurality opinion)). And just as the right is offense-specific, so also its *Michigan* v. *Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense-specific." *McNeil* v. *Wisconsin,* supra.

The court reasoned that "'[t]he police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime.] . . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. . . .' *Maine v. Moulton, 474 U.S. 159, 179-80 [106 [***10] S. Ct. 477, 88 L. Ed. 2d 481]* (1985)." *McNeil v. Wisconsin, supra, 2207-2208*. "HN3[⬆] 'Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.' [*Maine v. Moulton, supra,*] 180 n.16." *McNeil v. Wisconsin, supra, 2208*; see also *Moran v. Burbine, 475 U.S. 412, 431, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)*. The court noted, therefore, that because McNeil had provided the statements at issue before his [*749] sixth amendment right to counsel had been, or could have

---

distinguishable with respect to the substantive issue that he has raised. We see no reason, on the facts of this case, independently to undertake such an analysis." *State v. Braxton, 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985)*.

[5] The responses to questioning that are sought to be suppressed relate to a photograph of the bloodied body of the victim that was shown to the defendant. The police officers testified that the defendant visibly "spasmed" when shown the photograph and then asked if an area not shown in the photograph, but just beyond the frame, was the bathroom (which, in fact, it was). When questioned further as to his means of knowledge of the location of the bathroom, the defendant threatened to "punch in the face" of Sergeant Mucherino.

The defendant also argues in his brief that certain statements he made to Sergeant Joseph Samoska of the New Milford police department in a telephone call from the Litchfield community correctional center on December 7, 1985, should have been suppressed. The call was initiated by Shawn Henning who put the defendant on the line with Samoska. The record indicates, however, that no statements made by the defendant during that telephone conversation were ever admitted into evidence before the jury. Error cannot be predicated on the trial court's failure to order the suppression of statements that were not ultimately used at trial.

been, invoked with respect to the offenses to which the statements he had given related, the sixth amendment did not constitute a bar to the admission of his statements. Similarly, the sixth amendment creates no obstacle to the admission of the defendant's responses to police interrogation in this case.

In *McNeil,* the court also disposed of the defendant's claim of a right to counsel under the fifth amendment, which provides that '"[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' In *Miranda v. Arizona, 384 U.S. 436 [86 [***11] S. Ct. 1602, 16 L. Ed. 2d 694]* (1966) [the United States Supreme Court] established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, [**976] including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect 'knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.'" *McNeil v. Wisconsin, supra, 2208*.

In *Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378*, reh. denied, *452 U.S. 973, 101 S. Ct. 3128, 69 L. Ed. 2d 984 (1981)*, the court, however, established a second layer of protection for the *Miranda* right to counsel. In *Edwards,* the court held that once a suspect being interrogated asserts a fifth amendment right to counsel, "not only must the current interrogation cease, but [the suspect] may not be approached for further interrogation 'until counsel has been made available [***12] to him,' [*id., 484-85*] . . . ." *McNeil v. Wisconsin, supra, 2208*. That means, as the court has recently held, "that counsel must be present, [*750] *Minnick v. Mississippi, 498 U.S. [111 S. Ct. 486, 112 L. Ed. 2d 489]* (1990)." *McNeil* v. *Wisconsin,* supra. "If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody) the suspect's statements are . . . inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. This is 'designed to prevent the police from badgering a defendant into waiving his previously asserted *Miranda* rights,' *Michigan v. Harvey, 494 U.S. 344, 350 [110 S. Ct. 1176, 108 L. Ed. 2d 293]* (1990).

The *Edwards* rule, moreover, is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson, 486 U.S. 675 [108 S. Ct. 2093, 100 L. Ed. 2d 704]* (1988)." (Emphasis in original.) [***13] *McNeil* v. *Wisconsin,* supra.

As did McNeil, the defendant here seeks to prevail by combining his sixth amendment right to counsel and his *Miranda-Edwards* fifth amendment right to counsel. He argues that even though he expressly waived his *Miranda* right to counsel [6] when he was interrogated concerning the Carr murder, his waiver was obtained as a result of an interrogation that was impermissibly initiated by the police. He contends, therefore, that any responses to that interrogation were inadmissible. He maintains that his prior assertion of his "offense-specific" sixth amendment right to counsel with respect to the unrelated theft of the automobile and the unrelated burglary was also an assertion of his "nonoffense-specific" *Miranda-Edwards* right to counsel. The court in *McNeil* considered and rejected the same argument.

 [***14] [*751] In *McNeil,* the court stated that "[t]he purpose of the Sixth Amendment counsel guarantee -- and hence the purpose of invoking it -- is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime. [*United States v. Gouveia, supra,*] 189. The purpose of the *Miranda-Edwards* guarantee, on the other hand -- and hence the purpose of invoking it -- is to protect a quite different interest: the suspect's 'desire to deal with the police only through counsel,' [*United States v. Edwards, supra,*] 484. This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches whether or not the 'adversarial relationship' produced by a pending prosecution has yet arisen)." (Emphasis in original.) *McNeil v. Wisconsin, supra, 2208-2209*.

 [**977] The court went on to determine that the result [***15] urged by McNeil was not compelled by *Michigan v. Jackson, supra*, or *Edwards v. Arizona, supra.* It concluded, rather, that the invocation by McNeil

---

[6] The defendant in his brief or in oral argument did not present any arguments to contest the voluntariness and validity of the waiver of his *Miranda* rights if, in fact, the police could constitutionally have initiated interrogation concerning the Carr murder.

of his sixth amendment right to counsel at his arraignment did not trigger his *Miranda* right to counsel so as to prohibit subsequent police initiated interrogation concerning unrelated, uncharged crimes. *McNeil v. Wisconsin, supra, 2209-10*. *McNeil* controls this case.

The judgment is affirmed.

In this opinion the other justices concurred.

---

**End of Document**

Robin Schwartz