# EXHIBIT A

# Jordan Deposition Excerpts

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____

Ralph Birch                    )
                               )  No. 3:20-cv-1790(VAB)
        Plaintiff,     )  Consolidated with No.
                               )  No. 3:20-cv-1792(VAB)
VS                             )
                               )
Town of New Milford, et. al.)  October 8, 2021
            Defendants.    )
_____

            DEPOSITION OF: STEVEN JORDAN
            DATE: October 8, 2021
            HELD VIA: New Miford Town Hall
                      10 Main Street
                      New Milford, Connecticut


            Reporter:  Emily Collette, CSR #502

1 about what is filled out on here and I would suggest
2 that we look at the third page, which to me, is the
3 most legible.
4      This is, whoever completed this document,
5 was documenting a seizure of property that occurred
6 on December 3 of 1985?
7   A   Can you repeat that?
8   Q   Do you see the box that says date of
9 seizure?  In the top, top left sort of, you see the
10 little rectangle that has a check box for stolen
11 evidence, lost?
12   A   Yes.
13   Q   Okay.  Just to the left of that you see
14 date of seizure?
15   A   No.
16   Q   You see the box that's called date of
17 seizure?
18   A   Do you?
19      MR. SPECTOR:  Right here.
20      THE WITNESS:  Oh, yes.  Yes.  I got it.
21 Thank you.
22 BY MR. LEBOWITZ:
23   Q   You see on this form it's filled out as
24 December 3 of '85?
25   A   Yes.

1   Q   Okay.  It's checked off as being owned by
2 Everett Russell Carr of 74 Aspetuck Avenue in New
3 Milford?
4   A   What do you mean checked off?
5   Q   I'm sorry, I should have said it's listed
6 as being -- as the owner being Everett Russel Carr
7 of 74 Aspetuck Avenue New Milford?
8      MR. KLEIN:  Dave, they lost the zoom
9 again.
10      (Whereupon, Off the record at 3:22 p.m.)
11      (Whereupon, Back on the record at 3:24
12 p.m.)
13 BY MR. LEBOWITZ:
14   Q   We were just looking at Plaintiff's
15 Exhibit 35.  Taking a look Mr. Jordan at Plaintiff's
16 35, you see that this is listing the name and
17 address of the owner as Everett Russel Carr of 74
18 Aspetuck Avenue in New Milford?
19   A   Yes.
20   Q   Okay.  And it's indicated that the type of
21 property is lost/found?
22   A   Yes.
23   Q   What is the significance of that
24 categorization as opposed to stolen evidence or
25 something else?

1   A   It tells me it's not evidence.
2   Q   Okay.
3   A   The stuff wasn't stolen.  And they don't
4 even check investigations, so they just found it,
5 and I'm looking at it, and it's cash and it could
6 very well be what I was speaking of.  They see
7 $1,000 floating round the house, they don't want to
8 just leave it there, they bring it in for
9 safekeeping.
10   Q   Okay.  How would the determination be made
11 that something like this is not evidence?
12   A   You have to speak to the officers doing
13 it.  I have no idea.
14   Q   If you found cash at a burglary scene how
15 would you go about, you know, if you were filling
16 out this form determining whether it was evidence or
17 just lost property?
18   A   Well, I can pretty much assume by talking
19 to the owner and say hey, did the burglary drop your
20 $1,000 here or is this yours and the owners are
21 going to tell you that it's mine and I'll say okay.
22   Q   Meaning did the -- when you say did the
23 burglar drop -- you said did the burglary drop your
24 $1,000 --
25   A   No, a $1,000.  Is this yours or is this

1 the burglars?  I mean, why is this $1,000 here and
2 have them explain it to me.  I mean, I have had
3 burglars break into houses and drop personal items
4 before, but generally I have never had a situation
5 where they left money behind.  So you talk to the
6 owners to see, okay, who's property is this?  If
7 there's no owners available, we take it and let's
8 just say, you know, bring it in for safekeeping and
9 find out, okay, is this yours and go from there.
10   Q   Would you consider it significant or
11 potentially significant to the investigation if a
12 burglary left behind $1,000 in cash?
13   A   I have never seen it, in all my years,
14 them leaving money behind.
15   Q   Okay.  This is a receipt for $1,000
16 consisting of eight, $100 bills and four $50?
17   A   I believe so, yes.
18   Q   At the bottom you see that there is a --
19 on line thirteen it has handwritten in there,
20 "witnessed:" and then a signature on a line?
21   A   Yes.
22   Q   Okay.  Next to that does it appear to you
23 to say number 632?  Right next to that signature in
24 handwriting?
25   A   It could.

47 (Pages 182 - 185)

1    Q   Okay.
2    A   Now, I don't know if I have possession of
3  this form.  I don't know if I'd get a copy of it.  I
4  don't know, but I would have forms.  If I put it in
5  the evidence room, I would have forms that myself
6  generated, that means I put in the evidence room.
7  And those forms would go in my case and I would
8  probably ask the records secretary to make sure the
9  State Police had a copy of them because at some
10  point they're copying papers back and forth.
11          Whether this particular form went in, I
12  couldn't tell you because it's not generated by me.
13  It's a State Police form.
14    Q   Okay.  The overall meaning of this form is
15  that $1,000 in cash was seized from the Carr
16  residence at 74 Aspetuck Avenue on December 3 of
17  1985, correct?
18    A   The overall meaning?
19    Q   This form indicates that that's what
20  happened, right?
21    A   Yes.
22    Q   And you testified that you have no
23  recollection of coming into possession of this
24  money?
25    A   I still don't.

1    Q   Okay.  Do you know where in the house it
2  was?
3    A   I didn't do the processing, I have no
4  idea.  I didn't search the house for evidence, that
5  was the State Police.  So I don't know.  May be I
6  heard I think somebody might have mentioned where
7  they found it in my talks to my attorneys or you,
8  but I don't -- I even forgot that so I just don't
9  know.
10    Q   Do you recall we looked at a form, a
11  report earlier that Sergeant Roma had completed
12  about the crime scene indicating that he had gone
13  and taken photos of different areas of investigative
14  significance with your assistance?
15    A   Yes.
16    Q   Okay.
17    A   That wasn't at the crime scene that was --
18  was that -- I don't remember.  Yes, I know the form
19  you're talking about, yes.
20    Q   Do you recall that it mentioned you taking
21  photographs of the bloody footprints and some other
22  items?
23    A   No.
24    Q   Okay.  As you sit here today do you recall
25  that you assisted Sergeant Roma in photographing --

1    A   I assisted.  You said before I took.  I
2  didn't take the pictures, I assisted.
3    Q   I understand.  But you recall that you
4  assisted Sergeant Roma in photographing the crime
5  scene the morning the body was discovered?
6    A   I recall the paperwork, I don't recall
7  doing it.
8    Q   Got it.  Would you have -- Withdrawn.
9          Why would the State Police have been
10  giving you this $1,000 on December 4 the day after
11  seizing it?
12    A   You'd have to ask them.  I don't know.
13    Q   I'm going to show you what's previously
14  been marked as Plaintiff's 36.
15    A   I see it.
16    Q   Do you recognize that?
17    A   Yeah, I see it in front of me.  I know
18  what it is, yes.
19    Q   This is a New Milford possessed property
20  receipt, correct?
21    A   Yes.  Yes, it is.
22    Q   It's completed by you?
23    A   It is apparently, yes.
24    Q   It's dated December 4, 1985?
25    A   Yes.

1    Q   It says that you gave Diana Columbo $1,000
2  consisting of eight, $100 and four $50 bills that
3  day?
4    A   It doesn't $1,000 it just says eight
5  hundred dollar bills and four fifty dollar bills,
6  yes.
7    Q   Do you have an understanding of a
8  different amount that that might add up to?
9    A   No.
10    Q   Okay.  You signed this as having released
11  those items to Mrs. Columbo, correct?
12    A   Yes.
13    Q   Okay.  It's your testimony you don't
14  recall doing that?
15    A   Yes.
16    Q   Okay.  It's your testimony you don't
17  recall ever discussing with any one why the police
18  had this money?
19    A   Yes.
20    Q   You don't recall ever discussing with any
21  one why it was being returned to her the next day?
22    A   Yes.
23    Q   And you don't recall any one ever telling
24  you or discussing with you anything about the
25  potential significance, if any, of the money?

49 (Pages 190 - 193)

1    A    Yes.
2    Q    And you don't recall asking any one where
3 it came from?
4    A    Yes.
5    Q    You don't recall asking any one why it was
6 being returned to Ms. Columbo?
7    A    Yes.
8    Q    The meeting you had with Mr. Barrett was
9 the day before you returned this money, right,
10 December 3?
11    A    I have to go back and check, but we can --
12 whatever date it is, it is.
13    Q    Okay.  By the time you had that
14 conversation you knew that this was being
15 investigated as potentially an interrupted burglary,
16 right?
17    A    I couldn't say that.  I don't know.
18    Q    You don't recall testifying to that effect
19 earlier?
20    A    I don't remember, no.
21    Q    Okay.  You were asking Mr. Barrett as we
22 discussed this morning who might be doing home
23 invasion burglaries in the area, right?
24    A    Who was doing burglaries in the area.
25    Q    And who might be ripping off homes for

1 VCRs?
2    A    Yes, that's what the report said I
3 believe.
4    Q    And who might be doing that while carrying
5 a knife?
6    A    I'd have to go back and look.  I don't
7 know how I put it.
8    Q    Okay.  Assuming that at the time you were
9 returning this $1,000 to Ms. Columbo on December 4
10 you were already aware that the working theory of
11 the case was that it was an interrupted burglary,
12 would the presence of $1,000 in cash at the house
13 have had any significance to you?
14    A    Not really.
15    Q    Why not?
16    A    Why would it?
17    Q    Well I believe you testified a few moments
18 ago that you never in your entire clear have you
19 seen a burglar leave $1,000 in cash behind at a
20 scene?
21    A    You're correct.
22    Q    So would that have stood out to you as
23 something unusual if in fact this was $1,000 being
24 left at the scene after a burglary by the burglar?
25    A    Not at all.  It's very natural.

1    Q    How so?
2    A    Because every burglar I know hits a house
3 based on ease of use.  Sometimes they scope it
4 beforehand.  They don't want to get caught, they
5 want an easy mark.  They want to go in, they want to
6 get out.  Nobody knows, nobody catches.  You got
7 to -- every one of them that I have talked to, and I
8 have got a lot of confessions from them, they all
9 get nervous, the adrenaline is bumping, fight or
10 flight is kicked in, once they're caught the only
11 thing they think of is escape.  Now in this instance
12 if it was a burglary they got to fight.  That fight
13 put up a hell of a racket.  There was furniture
14 breaking, there had to be screaming.  Any burglar
15 that I ever dealt with the only thing they would be
16 thinking of is get the hell out with whatever he
17 had.
18    Q    Do you ever recall discussing with the
19 prosecutor or any one from the State Police the
20 theory that the burglar continued ransacking the
21 house and stealing items after the murder?
22    A    No.
23    Q    Okay.  Do you -- is that something -- is
24 that a possibility that would have occurred to you?
25    A    Well yeah, everything is possible.  If it

1 was my case everything is on the table.
2    Q    Including that they might have been
3 looking for items to steal after killing Mr. Carr?
4    A    Every -- in my case I would always look to
5 see what else is going on.  Because the bottom line
6 is you want to get to the facts.  So no matter what
7 your instincts are, your first impressions, you let
8 the evidence lead the way.
9    Q    Okay.  So let's say that you are -- this
10 is your case, you're responding to a burglary scene
11 or a break in scene where the resident/homeowner has
12 been violently assaulted, as was the case here,
13 you're trying to determine whether the perpetrator
14 fled immediately after the confrontation where they
15 killed Mr. Carr or if they stayed in the house
16 afterwards to steal more items.
17    A    Uh-huh.
18    Q    Would finding $1,000 in cash in the house
19 lead you in one direction or the other as between
20 whether they likely left immediately or not?
21    A    It would led me to think they left
22 immediately or left shortly thereafter or they
23 didn't check that room because most burglars
24 wouldn't leave that much money behind.
25    Q    Do you recall that we looked --

1    A    Again, depends on where the money was. I
2  have no idea. Was it out or was it hidden? You
3  know, I don't -- if you're saying it's out in the
4  middle of a bedroom or on a dining room table or
5  something like that, that's one thing. Compared to
6  was the money in the drawer? Was -- I don't know.
7    Q    Do you recall we looked earlier at a
8  report where you had seized some empty coin tubes
9  and some filled rolls of quarters from the house?
10   A    I seized it.
11   Q    Do you recall that?
12   A    I seized it? I don't recall that I seized
13  it.
14   Q    Okay. Let's take a look at that document.
15  We may still have that.
16   A    Yeah, I remember the document we are
17  talking about, but I don't remember what it says.
18  Do you know the number?
19   Q    That's a great question. Probably...
20       MR. YALE: I think 40.
21       THE WITNESS: No, I think this is a State
22  Police form.
23  BY MR. LEBOWITZ:
24   Q    I apologize. My was question imprecise.
25  This says in the by whom column for all these items

1  it says Jordan, right?
2    A    Yes.
3    Q    And you signed the form?
4    A    Yes.
5    Q    And it says the items were seized by this
6  officer?
7    A    Yes.
8    Q    So who is that?
9    A    Let me see the form again, please? The by
10  whom is me and I signed it which lends me to believe
11  I was putting it into the evidence room, took it
12  from the State Police to put it into our evidence
13  room.
14   Q    It says, "The below list of items were
15  seized by this officer at Ms. Columbo's residence."
16   A    Okay.
17   Q    See that?
18   A    Oh, yes, there is. I see. But the
19  State -- yeah, I don't understand this. This looks
20  like a State Police form. Now whether I took it --
21  is this the only -- where is -- so those are the
22  only exhibits that's for? What about the 1 through
23  48, that wasn't involved in this?
24   Q    This is the complete form that you signed.
25   A    Okay.

1    Q    Would you have signed a form that said
2  that you seized these items at Ms. Columbo's
3  residence if you had not done that?
4    A    No. I must have seized these there. On
5  12/5 too, okay, that would explain it.
6    Q    Okay. So this is the day after you
7  returned the $1,000 in cash?
8    A    Yes.
9    Q    Now you're taking some empty and some
10  rolled tubes of quarters from the house as evidence?
11   A    I don't know why I took them. I don't
12  know if I assumed it's evidence, but -- who is the
13  sergeant that signed off on this? Again, this looks
14  like a State Police form, so it was probably me
15  because it would go into the evidence room, I
16  probably went up there with him and the other things
17  I don't understand, the date I signed it, you see
18  that? 1/23/86.
19   Q    What's strange about that?
20   A    Huh?
21   Q    What is strange about that?
22   A    Well it says I seized it on 12/5/85 and my
23  signature is dated 1/23/86. So I mean if I just --
24  that's a long way between -- I don't understand it.
25  I don't remember it.

1    Q    What's unusual to you about taking almost
2  two months to fill out a report about seizing
3  evidence?
4    A    Because if it's evidence you seize, you
5  sign. I mean you look at every other property
6  signed it's almost instantaneously. So there's
7  something about this that I don't understand. I
8  can't explain it.
9    Q    If you seized does make -- Withdrawn.
10       Does it strike you as odd that the day
11  before this you returned $1,000 in cash to the same
12  person and characterized it as lost property that
13  was not evidence and then the next day you seized
14  quarters from a dresser in the bedroom and those
15  were evidence when this is supposed to have been an
16  interrupted burglary of this house?
17       MR. SPECTOR: Objection to the form. It
18       says on the bed.
19       THE WITNESS: Yeah, it's not in the
20       dresser.
21  BY MR. LEBOWITZ:
22   Q    Okay. The empty coins were from a
23  dresser, right? Number 50?
24   A    Oh, left side, top dresser drawer.
25       MR. SPECTOR: The empty paper coins, yeah.

51 (Pages 198 - 201)