# EXHIBIT C

# Graham Deposition Excerpts

```
UNITED STATES DISTRICT COURT
CONNECTICUT DISTRICT OF NEW YORK
------------------------------------X
RALPH BIRCH,

                          PLAINTIFF,


       -against-        Case No.:
                        3:20:CV-1790(VAB)


TOWN OF NEW MILFORD, ET AL.,

                          DEFENDANTS.
------------------------------------X
```

           DATE: October 13, 2021

           TIME: 10:04 a.m.



       DEPOSITION of MICHAEL GRAHAM,

taken by the Plaintiff, pursuant to a

Subpoena and to the Federal Rules of Civil

Procedure, held via video conference,

before ToniAnn Lucatorto, a Notary Public

of the State of New York.

Page 122
1                M. GRAHAM
2       A.   Yes.
3            MS. PROSCINO:  Objection to
4       form.
5       Q.   You see that the date is
6  December 4th?
7       A.   Yes.
8       Q.   So the date of seizure that we
9  looked at at the top the document was
10 December 3, 1985, right?
11      A.   Yes.
12      Q.   That was the day that you would
13 have seized this item?
14      A.   Yes.
15      Q.   And December 4th, is that the
16 date that it was received by Mr. Jordan?
17      A.   Yes.
18      Q.   And the time you see it says
19 2:20 P.M.
20      A.   Yes.
21      Q.   Are you able to tell whose
22 signature is at the very bottom here on the
23 left?
24      A.   That's mine.
25      Q.   Are you the person that filled

Page 123
1                M. GRAHAM
2  in this date, December 4, 1985?
3       A.   Yes.
4       Q.   Does this form indicate to you
5  that you turned over $1,000 in cash seized
6  from 74 Aspetuck Avenue on December 3rd, to
7  Mr. Jordan at 2:20 P.M. on December 4th?
8       A.   Yes.
9       Q.   I'm going go back for a moment
10 to another exhibit that we looked at
11 earlier.  But before I do that, let me just
12 ask you.
13           What were the circumstances
14 under which this $1,000 in cash was found?
15      A.   It's a little confusing to me
16 there because I was told they had received
17 that and it was seized without a warrant
18 and we had to make a receipt out for it.
19 And I was doing the evidence at that time,
20 so I took it made out the form and then I
21 turned it over to New Milford.
22      Q.   Whoever --
23      A.   I don't recall who it was.  The
24 Sergeant was.
25      Q.   You don't recall personally

Page 124
1                M. GRAHAM
2  finding or seizing the envelope with the
3  cash in it?
4       A.   No.  It was handed to me.
5       Q.   It was handed to you by a
6  Sergeant, you think?
7       A.   Yes.
8       Q.   Whoever handed it to you told
9  you to document it as lost and found
10 property and not as evidence?
11      A.   That's correct.
12      Q.   I'm going to direct your
13 attention back for a moment to Plaintiff's
14 Exhibit 63, which we looked at earlier.  Do
15 you see that, sir?
16      A.   63, yes.
17      Q.   And do you recall discussing
18 this document earlier and you identified it
19 as being an evidence flow sheets for items
20 that were seized from the Mr. Carr home on
21 December 3rd of 1985?
22      A.   Yes.
23      Q.   And these items were documented
24 on your 302 as having been seized from the
25 home on that date?

Page 125
1                M. GRAHAM
2       A.   Yes.
3       Q.   You see that the first item in
4  the flow of evidence showing that you
5  turned these items over to Mr. Jordan at
6  2:20 P.M. on December 4th of 1985?
7       A.   Yes.
8       Q.   And that's the same date and
9  time that we just saw on that when you
10 turned over the $1,000 to him, right?
11      A.   Yes.
12      Q.   So at that time you were
13 turning over some items of evidence from
14 the home to him, and those were documented
15 on your report and on the evidence log
16 sheets, right?
17      A.   Yes.
18      Q.   At the same time, you gave him
19 $1,000 from cash in the home, but that was
20 documented as lost property and not logged
21 as evidence or put on your 302 report,
22 right?
23      A.   I didn't know whether -- I
24 didn't know it came from the home.  There
25 was no mention of it coming from the home.

Page 126

M. GRAHAM

It's unknown to me where it came from. It was not seized as evidence, and they wanted to make sure that it was accounted for and that's why we made out the form for seized without a warrant to account for the $1,000 and then I turned that over to New Milford police officer. Where it went after that, what they did with it after that, I don't know.

Q. Well, did you have any understanding at the time of why the $1,000 was not evidence?

A. I believe it was -- it had nothing to do with the scene. It was not there at the scene. It was it came from the outside somewhere. Someone came --

Q. Someone --

A. Yeah. Someone turned it in. Whatever the case may be. I don't have that information.

Q. Did someone tell you at the time that it came from somewhere at the crime scene?

A. It just appeared and they

Page 127

M. GRAHAM

wanted to account for it, and therefore, it may be seized without a search warrant form to document it that we received it and we turned it over to New Milford.

Q. You never learned where it came from?

A. No.

Q. But you documented on the JDCR18 that it was seized --

A. Without a search warrant.

Q. -- from that address on December 3, 1985, correct?

A. Because that's where I was standing, correct.

Q. You didn't document anywhere on that form where it came from, why you were taking possession of it, or why it was not considered evidence?

A. That's correct.

MS. PROSCINO: Objection.

Q. Do you recall testified earlier when we were looking at the operations manual that you were required any time you took possession of property, whether or not

Page 128

M. GRAHAM

it was evidence, your obligation was to document that on a 302?

A. Yes.

Q. Why is the $1,000 in cash not on your 302 form that discusses the items that you see?

A. I did what I was told to do with the property seized without warrant form. I turned the item over, and that was the last I had any contact with it.

Q. Did someone tell you not to document --

A. No.

Q. -- the seizure of the $1,000 on your 302 form?

A. No.

Q. You signed the 302 form on December 5th, do you remember that?

A. Yes.

Q. So that would have been the day after you turned this money over to Mr. Jordan?

A. Yes.

Q. You remember testifying that

Page 129

M. GRAHAM

you would have reviewed that 302 for completeness and accuracy on December 5th prior to signing it?

A. Yes.

Q. Did it escape your notice that it didn't include $1,000 in cash?

A. No.

Q. So then why didn't you include did on the report then?

A. It was told that the property seized without a warrant form would suffice as a receipt, and evidence that the money was turned over and subsequently transferred to New Milford.

Q. Who told you that the JD -- that the CR18 form would suffice as documentation?

A. One of the Sergeants, one of our Sergeants there. I don't remember who it was.

Q. That person told you all you needed to do was fill out a JDCR18 form and mark it as lost and found property?

A. I was told this was found

Page 130
1　　　　　　　　　　M. GRAHAM
2　property.  As far as I can recall, it was
3　found property.  It had to be accounted
4　for.  It was not sized under the search
5　warrant so they got a JD seized without
6　search warrant form, and New Milford was
7　going to -- we were going to turn it over
8　to New Milford Police Department.  Which is
9　what we did.
10　　　Q.　Did it strike you as unusual at
11　the time that you we're being told to
12　deviate from the normal practice, which was
13　to document a property seizure on a 302 in
14　addition to the -- on the JCR18?
15　　　A.　At that time, no.
16　　　　　MR. PROSCINO:  Objection --
17　　　A.　At that time, no.
18　　　Q.　Why not?
19　　　A.　Because we had been processing
20　the crime scene and I had no indication at
21　that time that this money came from the
22　crime scene.
23　　　Q.　But no one told you not to
24　include it on the 302 that you signed the
25　day after you handed it over to Mr.

Page 131
1　　　　　　　　　　M. GRAHAM
2　Jordan, right?
3　　　A.　Nope.  I don't believe so.  No.
4　　　Q.　That was a decision you made?
5　　　A.　I didn't submit a 302 on it,
6　what can I say?
7　　　Q.　Well, you submitted a 302 about
8　all of the other items that you seized,
9　right?
10　　　A.　Yes, I did.
11　　　Q.　And it was your decision not to
12　include the $1,000 on that report?
13　　　A.　No.  It was not my decision.
14　　　Q.　Whose decision was it?
15　　　A.　Whoever the Sergeant was that
16　gave me the money to give to New Milford.
17　　　Q.　They told you not to put it on
18　a 302?
19　　　A.　They did not tell me not to put
20　it on the 302.  They told me to make out a
21　property seized without a search warrant
22　form and turn it over to New Milford police
23　department.  Which is what I did.
24　　　Q.　And you interpreted that to
25　mean that it wasn't necessary to include it

Page 132
1　　　　　　　　　　M. GRAHAM
2　on your 302?
3　　　　　MS. PROSCINO:  Objection to
4　　　form.
5　　　A.　That's correct.
6　　　Q.　Your testimony is even though,
7　typically, you were required to make out a
8　302 any time you seized property and
9　documented it on a CRJD18, in this case you
10　interpreted a supervisors instructions to
11　mean that was unnecessary, and you didn't
12　find that unusual?
13　　　A.　No.
14　　　　　MS. PROSCINO:  Objection.
15　　　A.　I did as I was told to.
16　　　Q.　But you don't remember who told
17　you?
18　　　A.　No, I don't.
19　　　Q.　Did you retain a copy of the
20　lost and found property form, the JDCR18
21　that we looked at?
22　　　A.　Did I retain it?
23　　　Q.　After you and Mr. Jordan signed
24　the document, what did you do with it?
25　　　A.　That would have been submitted

Page 133
1　　　　　　　　　　M. GRAHAM
2　to the case officer to be returned to the
3　court receipt go to the Court.
4　　　Q.　Who was the case officer that
5　you turned it over to?
6　　　A.　I don't recall.  It was from
7　the western district.
8　　　Q.　To your knowledge, is this
9　document documenting the $1,000 in cash
10　something that the state's attorney
11　responsible for this case should have seen
12　and been made aware of?
13　　　A.　I would have thought that he
14　would have seen it because there was that
15　property seized without a search warrant
16　form made out, which is included -- which
17　would have been included in the case file.
18　And included in the case book that he would
19　have received.
20　　　Q.　You testified this morning that
21　you learned shortly after your arrival at
22　the scene that the working theory of this
23　case was that it was a burglary that
24　resulted in a homicide, right?
25　　　A.　Yes.

Page 134
M. GRAHAM

Q. Would you agree that if $1,000 was left at the scene, that might tend to undermine the theory that this was a burglary?

MS. PROSCINO: Objection to form.

A. I'm not sure.

Q. What more would you need to know to answer that question?

A. I don't know. I can't answer that question.

Q. You can't answer whether $1,000 being left in a house has --

A. I'm not sure it came from the house. I don't know where it came from.

Q. Let's assume for present purposes that it did come from the house. Would that make you think that the theory was less likely if the perpetrators left $1,000 cash in an envelope at the house?

MS. PROSCINO: Objection to form.

A. I would like --

Q. I'm sorry?

Page 135
M. GRAHAM

A. I don't know.

Q. You don't know whether someone leaving behind $1,000 in a house makes it less likely that they burglarized that house?

MS. PROSCINO: Objection to form.

A. Could have walked in, it could have been hidden somewhere. I didn't find it. I don't know where it was. Where it came from.

Q. Did you meet with prosecutors before Mr. Birch and Mr. Henning's trials that you recall?

A. I don't recall.

Q. Do you have any recollection of discussing anything about this case or your work at the time with anyone from the state's attorney office?

A. No.

Q. When did you learn that these convictions had been over turned?

A. When I had process served on me in December, this past December.

Page 136
M. GRAHAM

Q. You mentioned earlier that you have in front of you a copy of some interrogatories and requests for documents. Do you remember that?

A. Yes.

Q. Have you reviewed those?

A. Yes, I have.

Q. Have you undertaken any kind of search for documents that are responsive to those requests?

A. Can you repeat that?

Q. Have you looked for documents that were called for?

A. I don't have any documents.

Q. Do you have any documents in your personal possession relating to when you were a state police officer?

A. No.

Q. And I believe you testified earlier that you have never texted, or e-mailed with anyone about anything to do with this case; is that right?

A. That's correct.

MR. LEBOWITZ: I think we're

Page 137
M. GRAHAM

just about wrapped up, but let's take a quick break and I will confer with my colleagues and we'll be right back.

THE VIDEOGRAPHER: We're off the record. The time is 1:15 P.M. eastern.

(Whereupon, a recess was taken at this time.)

THE VIDEOGRAPHER: We are now back on the record. The time is 1:21 P.M. eastern.

MR. LEBOWITZ: Mr. Graham, thank you for you time today. I have no further questions for you. I'm going to turn the deposition over to Jim Cousins, who represents Mr. Henning. I believe he may have a few questions for you. Thank you very much.

EXAMINATION BY
MR. COUSINS:

Q. Good afternoon, Mr. Graham. How are you today?