RALPH BIRCH and SHAWN HENNING,

               Plaintiffs,

-against-

TOWN OF NEW MILFORD et al.,

               Defendants.

No. 3:20-CV-1790 (VAB)
[*rel.* No. 3:20-CV-1792]

September 25, 2024

## JOINT TRIAL MEMORANDUM

**1.**     **TRIAL COUNSEL**

    For Ralph "Ricky" Birch:  David A. Lebowitz and Douglas E. Lieb

    For Shawn Henning:  W. James Cousins, Craig A. Raabe, Paul Casteleiro and Seth Klein

    For the New Milford Defendants:  Eliott B. Spector, Jeffrey O. McDonald and Forrest Noirot

**2.**     **JURISDICTION**

    The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) and 28 U.S.C. § 1367(a).

**3.**     **JURY/NON-JURY**

    This is a jury case.

**4.**     **NATURE OF CASE**

    This is a civil rights case under 42 U.S.C. § 1983 with supplemental state law claims. Both Plaintiffs have asserted § 1983 causes of action for suppression of material favorable evidence, and Mr. Birch asserts one for failure to intervene to prevent the deprivation of liberty based upon fabricated evidence.  They have also asserted state law causes of action for (1)

negligence, (2) negligent infliction of emotional distress, (3) indemnification pursuant to Conn. Gen. Stat. § 7-465 and (4) liability against New Milford pursuant to Conn. Gen. Stat. § 52-557n.

5.    **STIPULATIONS OF FACT AND LAW**

   a.   At all times from December 1, 1985, until his retirement in 1999, David Shortt was employed by the Town of New Milford as a member of its police department, first as a police officer and then as a detective.

   b.   David Shortt died on November 10, 2019.

   c.   Former Detective H. Patrick McCafferty of the Connecticut State Police died on September 11, 2021.

   d.   PX215 bears the signature of former State Police Detective H. Patrick McCafferty in the "Investigating Tpr's Signature" field.

   e.   Former Detective Charles Squires of the Norfolk, Virginia, Police Department died on October 2, 2017.

   f.   At all times from December 1, 1985 until the present, Connecticut General Statute 54-86c(c) has provided: "Each peace officer, as defined in subdivision (9) of section 53a-3, shall disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case."

   g.   While he was a member of the New Milford Police Department, Steven Jordan was a peace officer as defined in subdivision (9) of section 53a-3 of the Connecticut General Statutes.

   h.   The photograph marked as PX46g is a true and accurate depiction of a portion of the "casebook" (PX211).

i. On July 10, 2020, the charges against Ralph Birch and Shawn Henning for the murder of Everett Carr were dismissed after the State's Attorney chose not to retry the cases against Mr. Birch and Mr. Henning.

## 6. PLAINTIFFS' CONTENTIONS

Each Plaintiff served approximately thirty years in state prison for a homicide of which they are innocent. Everett Carr was brutally murdered in December of 1985. He was stabbed twenty-seven times and repeatedly hit with a blunt object. His neck was severed from side-to-side. Almost immediately, law enforcement concluded that the homicide was the result of a "burglary gone bad" in which Mr. Carr interrupted the burglary and the burglars butchered him.

Within hours of the murder, Defendant Steven Jordan interviewed an informant and asked him who was conducting burglaries in the area. The informant identified Shawn Henning and Ralph "Ricky" Birch. From that moment on, law enforcement singularly focused on the Plaintiffs to the exclusion of obvious, likely suspects, including the victim's daughter (who made bizarre and incriminating statements) and her lover (who had an antagonistic relationship with Mr. Carr). When New Milford Police Captain Norbert Lillis expressed his firm view that law enforcement was wrongfully pursuing the Plaintiffs as suspects, the New Milford Police Chief removed him from the investigation.

As a result of the misconduct of these Defendants, and other misconduct by former state-employee co-Defendants, the Plaintiffs were wrongly convicted of felony murder in 1989. Mr. Henning was sentenced to fifty years of imprisonment and Mr. Birch was sentenced to fifty-five years. The Connecticut Supreme Court vacated their convictions in 2019 and the state did not retry them due to a lack of evidence.

The Plaintiffs' causes of action revolve around two constitutional violations. Both Plaintiffs have a claim that Defendant Jordan denied their rights to a fair trial by failing to

disclose to the prosecutor, and thus to the defense, the fact that law enforcement seized a bank envelope containing $1,000 in cash at the crime scene. Jordon logged the cash as lost property, rather than as evidence, and he gave the cash to Mr. Carr's daughter. The forms documenting the cash were not provided to the prosecutor or made available to the defense. The exculpatory nature of finding $1,000 of cash at the scene of a supposed burglary is self-evident. Indeed, Jordan testified in deposition that "I have never seen it, in all my years, [burglars] leaving money behind" and that "most burglars wouldn't leave that much money behind."

Plaintiff Birch also has a separate claim that New Milford Detective David Shortt violated his constitutional rights by failing to intervene when former co-Defendant Andrew Ocif wrongfully fed information to and manipulated a supposed witness, Todd Cocchia. As a result of the manipulation, Cocchia falsely implicated Plaintiff Birch in the Carr murder and he later testified falsely at Mr. Birch's trial. Detective Shortt, who is deceased, failed to intervene while he was at the interview in which Ocif engaged in the misconduct and Shortt failed to report or rectify the manipulated interview and the subsequent false testimony.

During the time that the Plaintiffs were wrongfully incarcerated, they suffered terribly. They entered the Connecticut prison system as teenagers during an incredibly violent period. As just one example of the evidence that will be presented at trial, early in his incarceration, Mr. Henning tried to intervene when another young and vulnerable inmate was being abused. Another inmate then stabbed Mr. Henning with a prison shank, collapsing his lung in the near fatal attack.

Despite their enduring trauma, the Plaintiffs were model inmates. They went decades without any disciplinary incidents and they gained the respect of the correctional staff and leaders.

Dr. Jessica Pearson diagnosed Mr. Henning with Post-Traumatic Stress Disorder ("PTSD"). The defendants did not evaluate Mr. Henning and have no expert to counter Dr. Pearson's experienced and well-reasoned opinion. Dr. Steven Shapiro determined that Mr. Henning lost earnings of $1,162,803. The defendants did not disclose a countering expert.

Kristin K. Kucsma determined that Mr. Birch had present-value lost earnings of $815,338. The defendants did not disclose a countering expert.

Each Plaintiff seeks compensatory damages and interest for decades of wrongful imprisonment. Each Plaintiff filed under seal an offer of compromise on October 25, 2021, within eighteen months of the commencement of these consolidated actions.

## 7.    DEFENDANT'S CONTENTIONS

Defendants, Steven Jordan, Robert Santoro as Administrator of the Estate of David Shortt, and the Town of New Milford, deny Plaintiffs' claims.

On the night of December 1-2, 1985, Everett Carr was murdered in his house at 74 Aspetuck Avenue in New Milford, CT. The New Milford police department ("NMPD") originally responded to the scene of the murder. Thereafter, the Connecticut State Police ("CSP") took responsibility for the processing of the crime scene and the investigation of the murder. The NMPD assisted the CSP in their investigation as needed. Plaintiffs' claims against Steven Jordan and David Shortt stem from their roles assisting the CSP investigation.

Steven Jordan did not commit any wrongdoing during the investigation of Mr. Carr's death. At that time, he was a detective working for the NMPD. On or about December 4, 1985, CSP Detective Michael Graham gave Detective Jordan $1,000 in cash with instructions to the return the $1,000 to Diane Columbo, who resided at 74 Aspetuck Ave. Detective Graham documented the $1,000 cash on an "Inventory of Property Seized Without a Search Warrant JD-

CR-18 REV 10-81" noting that the $1,000 was "Lost/Found", rather than noting it as "Stolen," "Evidence," or "Investigation." Detective Graham does not know where the cash was found or who gave him the $1,000. Detective Jordan, who had no idea where the $1,000 was found, signed Detective Graham's inventory form indicating that he received the $1,000. On December 4, 1985, Jordan returned the $1,000 to Diane Columbo, as instructed, and prepared a "Possessed Property Receipt" documenting that the $1,000 was returned to Ms. Columbo. The $1,000 was never designated as evidence in the investigation of Mr. Carr's death and was neither material to the investigation of Mr. Carr's death nor exculpatory evidence. Detective Jordan did not engage in any wrongdoing and is not liable to Plaintiffs.

David Shortt, who was also a detective working with the NMPD at the time of Mr. Carr's death, did not commit any constitutional violations or engage in any wrongdoing related to the homicide investigation. The claims against Detective Shortt relate solely to Detective Shortt's observations of CSP Detective Ocif's interview of witness, Todd Cocchia. On July 6, 1988, Todd Cocchia informed Det. Charles Squires of the Norfolk, Virginia Police Department that Cocchia had information about a murder that involved Ralph Birch. Prior to this date, Detective Shortt had no knowledge that Mr. Cocchia had any knowledge of Birch's involvement in Mr. Carr's death. Six days later, on July 12, 1988, CSP Detective Ocif, in the presence of Detective Shortt, interviewed Mr. Cocchia at the Norfolk Police Department, which interview was recorded. In that interview Mr. Cocchia told Detective Ocif that that Plaintiff, Ricky Birch, stated that he had stabbed and killed a man in New Milford, Connecticut during a burglary. At the time of the interview, neither Detective Ocif, nor Detective Shortt, had any reason to doubt the truthfulness of Mr. Cocchia. At no time did Defendant Shortt have a duty to intervene to

address the manner in which the interview was being conduct.  Defendant Shortt did not commit any wrongdoing related to the 1988 interview of Todd Cocchia.

In addition to contesting the factual and legal basis for Plaintiffs' claims, Defendants are protected by qualified immunity and governmental immunity.  To the extent that Plaintiffs allege that they did not receive a fair trial and were otherwise falsely convicted, such claims rest with other settled-out State actors, and not with Detectives Jordan or Shortt.

## 8.    LEGAL ISSUES

### § 1983 Suppression of Material Favorable Evidence (*Henning* 3rd Count, *Birch* 3rd Count)

> To establish a *Brady* violation, "[the accused] must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the [accused]; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018). As to the first element, the Second Circuit has "suggested, though without so concluding, that a civil *Brady* claim requires a showing that the non-disclosure was intentional." *Bellamy v. City of New York*, 914 F.3d 727, 751 n.23 (2d Cir. 2019). With respect to the second element, "[e]vidence that is not disclosed is suppressed for Brady purposes even when it is 'known only to the police investigators and not to the prosecutor.' " *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). Evidence is "material" if "there is a 'reasonable probability' that disclosure would have changed the outcome of the case, or where the suppressed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Kirk Tang Yuk*, 885 F.3d at 86.

*Henning v. Town of New Milford,* No, 20-cv-1790 (VAB), 2021 WL 4940970, at *13 (D. Conn. Sept. 24, 2021).

**Failure to Intervene / Fabrication of Evidence (*Birch* 1st Count)**

> To maintain a claim of fabrication of evidence under § 1983, a plaintiff must show that an (1) investigating official (2) fabricated evidence (3) that is likely to influence a jury's decision, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of liberty as a result . . . . The affirmative duty to intervene in a constitutional violation is triggered when the observing officer knows or has reason to know" that a constitutional violation is afoot, and the officer has a realistic opportunity to intervene but fails to do so.

*Birch v. Town of New Milford*, No. 3:20-CV-1790 (VAB), 2023 WL 4684720, at *21 (D. Conn. July 21, 2023) (internal quotation marks, citations, and alterations omitted).

**Negligence (*Henning* 6th Count, *Birch* 4th Count)**

> Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *McDermott v. State*, 316 Conn. 601, 609 (2015) (citing *LePage v. Horne*, 262 Conn. 116, 123 (2002)). Within the duty, "there are two distinct considerations." *LePage*, 262 Conn. at 123 (internal quotation marks omitted). "First it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty." *Id.* And, "[t]he issue of whether a duty exists is a question of law." *Id.*

*Henning,* 2021 WL 4940970, at *13.

**Negligent Infliction of Emotional Distress (*Henning* 7th Count, *Birch* 5th Count)**

> For a successful negligent infliction of emotional distress claim, a plaintiff must prove that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff

emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress

was severe enough that it might result in illness or bodily harm; and (4) the defendant's

conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn.

433, 444 (2003). In such cases, the "fear or distress experienced by the plaintiffs [must]

be reasonable in light of the conduct of defendants." *Id.* at 447 (*citing Barrett v. Danbury

Hosp.*, 232 Conn. 242, 261–262 (1995)).

*Henning,* 2021 WL 4940970, at *18.

## Indemnification by New Milford under Conn. Gen. Stat. § 7-465 (*Henning* 9th Count, *Birch* 6th Count)

(1) Liability has been imposed by law upon a municipal employee (2) for damages for

infringement of any person's civil rights or for physical damages to person or property,

where (3) the employee at the time of the occurrence, accident, physical injury or

damages complained of was acting in the performance of his duties and within the scope

of his employment, and that (4) the  occurrence, accident physical injury or damages

were not the result of any willful or wanton act of such employee in the discharge of such

duty.

*See* Conn. Gen. Stat. § 7-465.

"Connecticut General Statute § 7-465 allows a plaintiff to seek indemnity from a

municipality based upon the actions of a municipal employee within the scope of his

municipal employment," *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 190 (D. Conn.

2003), so long as "the injury 'was not the result of any willful or wanton act,' "*Carey v.

Maloney*, 480 F. Supp. 2d 548, 567 (D. Conn. 2007) (quoting Conn. Gen. Stat. § 7-465).

*Henning,* 2021 WL 4940970, at *25.

## **Direct action against New Milford under Conn. Gen. Stat. § 52-557n (*Henning* 10th Count, *Birch* 7th Count)**

The (1) negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties (2) caused damages to person or property. However, a municipality is not liable for (A) acts or omissions of any employee which constitute criminal conduct, fraud, actual malice or willful misconduct, or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

*See* Conn. Gen. Stat. § 52-557n(a).

Connecticut General Statutes § 52-557n imposes liability on a municipality for the negligence of municipal employees. Conn. Gen. Stat. § 52-557n. As relevant here, the statute provides that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable to damages for person or property caused by ... [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties...." *Id.* § 52-557n(a)(1)(A).

*Henning,* 2021 WL 4940970, at *25.

## 9. *VOIR DIRE* QUESTIONS

**For Plaintiffs:**

1. Have you or anyone in your immediate family or a close friend ever been accused of a crime?

2. Have you or anyone in your immediate family or a close friend ever been convicted of a crime?

3. Have you or anyone in your immediate family or a close friend ever been incarcerated?

4. Have you or anyone in your immediate family or a close friend worked for law enforcement?

5. Do you or anyone in your immediate family or a close friend have experience with forensic science or DNA testing or analysis?

6. Have you or anyone in your immediate family or a close friend worked for the state of Connecticut or a municipality?

7. Have you or anyone in your immediate family or a close friend ever been homeless?

8. Have you or anyone in your immediate family or a close friend ever had to deal with drug use?

9. Have you or anyone in your immediate family or a close friend ever had to deal with severe emotional distress?

10. Have you or anyone in your immediate family or a close friend ever been diagnosed with Post Traumatic Stress Disorder?

11. Have you or anyone in your immediate family or a close friend ever been the victim of a crime?

12. Do you have views about law enforcement that would make it difficult to serve as juror where law enforcement officials are accused of misconduct?

**For Defendants:**

1. Have you or anyone you know ever worked for the Town of New Milford?

2. Have you or anyone you know ever worked for a municipality?

3. Have you, any member(s) of your family or any close friends ever sued or made a claim for damages against any police or law enforcement officer?

4. Have you, any member(s) of your family or any close friends made any formal complaint against any police or law enforcement officer?

5. Have you, any member(s) of your family or any close friends been involved in what you would consider to be a negative or unpleasant situation with the police or law enforcement officer?

6. Have you, any member(s) of your family or any close friends ever been involved in a police investigation?  If so, how were you involved in the investigation?

7. Have you, any member(s) of your family or any close friends ever been questioned by a police officer?

8. Do you feel that your previous involvement in any of these situations is likely to affect your ability to be completely objective and impartial in this case?

9. Have any of you ever served on a jury which heard claims of police misconduct or violation of constitutional rights?

10. Have any of you heard, read or seen any news articles, videos or stories about this case, related in any way to Plaintiffs' claims?  If so, please describe what you have heard, read or seen.

11. Did any of you know anything about the claims or the parties involved in this case before you entered the courtroom today.  If so, please describe what you already know about this case?

12. Have any of you heard or read anything about New Milford Police Department police officers Steven Jordan or David Shortt, or heard or read anything about police officers in

general, which would in any way interfere with your ability to be completely objective and impartial concerning the evidence of this case?

13. Do any of you have any strong opinions, ideas or thoughts about claims of deprivation of constitutional rights and alleged police misconduct, such as I have outlined to you? If so, would you please describe?

14. Would any of your feelings or ideas concerning claims similar to the ones before us today as I have described them to you prevent you from being absolutely fair and impartial in considering this case solely on the basis of the evidence and the law as the court will give it to you?

15. If the court were to instruct you that the law applicable to this case could result in your having the duty to send the plaintiff away with no recovery, would you have any difficulty in making that decision?

16. In considering this case, would you be able to put aside any feeling of sympathy you may have for the plaintiffs, and decide this case solely on the basis of the evidence and the law as the Court will give it to you?[1]

17. Have you or any one you know sustained injuries or damages in any type of incident involving police officers or other public service employee? Do you feel that your involvement in or knowledge of these situations would likely affect your ability to be completely objective and impartial in this case?

18. Have you heard or read any media accounts or commentaries related to alleged police conduct that would likely affect your ability to be completely objective and impartial in this case?

---

[1] Plaintiffs object to Defendants' proposed questions #15 and #16.

**10.  LIST OF WITNESSES**

**For Plaintiffs:**

Witnesses Plaintiffs Expect to Call

1.  Ralph Birch: Mr. Birch will testify concerning the facts and circumstances of his arrest, prosecution, and incarceration, including his emotional distress and other damages.

2.  Shawn Henning: Mr. Henning will testify concerning the facts and circumstances of his arrest, prosecution, and incarceration, including his emotional distress and other damages.

3.  Brian Acker (by deposition): Mr. Acker will testify concerning his role supervising the CSP investigation of Everett Carr's murder, including practices and procedures for the transmittal of evidence to the State's Attorney's Office.

4.  Michael Graham: Mr. Graham will testify about the processing of the Carr crime scene, including how crime scene evidence was collected and documented, and about the discovery of the $1,000 cash and how it came to be in the possession of Defendant Steven Jordan.

5.  Steven Jordan: Mr. Jordan is expected to testify about his actions with respect to the $1,000 cash found at the Carr crime scene.

6.  Andrew Ocif: Mr. Ocif is expected to testify about the facts and circumstances of the interview of Todd Cocchia he and David Shortt conducted on July 12, 1988, and the state of his and Shortt's knowledge at the time.

7.  Norbert Lillis: Mr. Lillis is expected to testify concerning his role in the early days of the NMPD investigation into the Carr homicide.

8.  John Roma (by deposition): Mr. Roma will testify concerning his role in the early portion of the NMPD investigation into the Carr homicide and the actions of the victim's daughter.

9.  Joseph Quartiero: Mr. Quartiero is expected to testify about police efforts to investigate items allegedly stolen from Everett Carr's home on the night of the murder.

10. Todd Cocchia: Mr. Cocchia will testify concerning his role as a witness in the investigation and prosecution of Ralph Birch.

11. William Bodziak: Mr. Bodziak will testify as a retained expert concerning his analysis of footwear impressions from the Everett Carr crime scene.

12. Greg Hampikian: Mr. Hampikian will testify as a retained expert concerning probabilistic genotyping he performed with respect to DNA evidence from the Everett Carr crime scene.

13. Jessica Pearson: Ms. Pearson will testify as a retained expert concerning the findings of her forensic psychological evaluation of Shawn Henning.

<u>Witnesses Plaintiffs May Call</u>

14. James Hiltz: Mr. Hiltz is expected to testify concerning his supervision of the CSP investigation into the Carr homicide.

15. Jerome Dombrowski: Mr. Dombrowski is expected to testify concerning the actions of Diana Colombo at the murder scene.

16. Judge Karen Goodrow: Judge Goodrow is expected to testify about the Connecticut Innocence Project's reinvestigation of the Everett Carr murder.

17. Tim Saathoff: Mr. Saathoff will testify concerning the statements made to him by Shawn Henning and by Andrew Ocif and the reasons for his recantation of his trial testimony.

18. Steven Shapiro: Mr. Shapiro will testify as a retained expert concerning Shawn Henning's lost earnings.

19. Kristin K. Kucsma: Ms. Kucsma will testify as a retained expert concerning Ralph Birch's lost earnings.

20. Lucinda Lopes-Phelan: Ms. Lopes-Phelan is expected to testify as a non-retained expert concerning analysis she conducted of forensic evidence from the Everett Carr case.

21. Christine Roy: Ms. Roy is expected to testify as a non-retained expert concerning analysis she conducted of DNA evidence from the Everett Carr case.

22. Anita (Bagot) Brearton: Ms. Brearton will testify concerning the actions of Diana Colombo and statements she made to Ms. Brearton at the crime scene

23. Keeper of the Records for the Connecticut Department of Corrections

24. Keeper of the Records for the New Milford Police Department

25. Keeper of the Records for the State of Connecticut Forensic Science Laboratory

26. Keeper of the Records for the State of Connecticut Division of Public Defender Services

27. Keeper of the Records for the State of Connecticut Division of Criminal Justice

28. Keeper of the Records for the Office of the Clerk for the Judicial District of Litchfield

29. Keeper of the Records for the Office of the Clerk for the Judicial District of Tolland

30. Keeper of the Records for the Superior Court Records Center

31. A summary witness who will testify as to the contents of PX211.[2]

**For Defendants:**

<u>Witnesses Defendants expect to call:</u>

1. Steven Jordan:  Will testify as to his participation in the investigation of the murder Mr. Carr and his knowledge and actions related to the thousand dollars allegedly found in the victim's home.

2. Former State Police Detective Ocif:  Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death, his knowledge of and participation in the interview of Todd Cocchia and the belief that the underlying offense may have been related to a burglary.

3. Todd Cocchia:  Will testify regarding the Norfolk Virginia interview and his conversations with Plaintiff, Ricky Birch.

4. Former State Police Detective Michael Graham: Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death, the discovery of a thousand dollars and the basis for the belief that the underlying offense may have been related to a burglary.

5. Former State Police Detective Joseph Quartiero:  Will testify as to his involvement and knowledge of the investigation of Mr. Carr's death including his knowledge of the discovery of the thousand dollars.

6. Former State Police Sergeant Brian Acker:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars and interview of Todd Cocchia in Norfolk Virginia.

7. Former New Milford Police Department Detective John Roma:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

<u>Witnesses Defendants may call:</u>

8. Former State Police Detective George Heg:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

---

[2]     Plaintiffs reserve the right to call designated defense witnesses and reserve the right to call rebuttal witnesses who cannot be identified until cross-examination of Plaintiffs' witnesses and/or presentation of the defense case.

9. Attorney Alfred Mencuccini:  Will testify regarding his representation of Ricky Birch in the criminal trial, the evidence submitted at that trial and the impact that allegedly suppressed evidence may have had at the criminal trial.

10. Former New Milford Police Department patrolman Jerome Dombrowski:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

11. Attorney David Shepack:  Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death and the prosecution of Plaintiffs.

12. Keeper of the Records for the New Milford Police Department

13. Keeper of the Records for the State of Connecticut Division of Criminal Justice

14. Keeper of the Records for the Office of the Clerk for the Judicial District of Litchfield

15. Keeper of the Records for the Office of the Clerk for the Judicial District of Tolland

16. Keeper of the Records for the Superior Court Records Center

Defendants will cross examine each of Plaintiffs' witnesses and also reserve the right to all Plaintiffs' own witnesses in Defendants case in chief.  Also, Defendants reserve the right toc all other witnesses for purposes of rebuttal or impeachment.

## 11.    EXHIBITS[3]

### For Plaintiffs:[4]

| Exhibit | Description | Objection |
|---------|-------------|-----------|
| PX2 | 12/2/85 NMPD Dombrowski Report re Crime Scene | |
| PX3 | 9/9/86 Letter from Hiltz to Santore | |
| PX5 | 2/17/87 Letter from Santore to Lee | |
| PX6 | 3/19/87 Letter from Hiltz to Hazen (FBI) | |
| PX7 | 3/19/87 Letter from Hiltz to Nimmich (FBI) | |

[3] The parties have agreed to work cooperatively to try to resolve objections to exhibits by the deadline for replies to motions *in limine*, which is October 11, 2024. The parties will provide the Court with updated lists reflecting unresolved objections at or around that time.

[4] Plaintiffs' exhibits are not numbered sequentially because they have designated some, but not all, of the deposition exhibits and they are using the same exhibit numbers so as to avoid confusing jurors with exhibits that have two exhibit number stickers.

| | | |
|---|---|---|
| PX8 | 5/5/87 O'Mara Report re Birch 12/9/85 Interrogation | |
| PX9 | 5/22/86 Roberts Report re Anonymous Tip | |
| PX10 | 6/10/86 Ocif Report re Burkhart Interview | |
| PX11 | 6/16/86 Acker Report re Burkhart Interview | |
| PX12 | 3/5/87 Letter from Watson to Evelyn Carr | |
| PX15 | Three photos of stolen Buick | |
| PX16 | 12/7/85 Zarzeski Report re Buick recovery | |
| PX17 | CGS 54-86c | |
| PX18 | 12/9/85 O'Mara Report re Birch Interrogation | |
| PX19 | 12/9/85 Samoska Report re Warrant Execution | |
| PX28 | Town of New Milford Police Operations Manual 1985 | |
| PX29 | Department General Order D.2 Order 87-2 2/1/87 | |
| PX30 | Department Order 89-02 6/8/89 | |
| PX31 | Carr House Warrant Seizure Inventory Form | |
| PX32 | Graham 12/5/85 Report re Carr House Seizure | |
| PX33 | Graham Receipt of Seized Property | |
| PX34 | 4/3/87 Ocif Report re Shortt Return of $67 to Evelyn Carr | |
| PX35 | JD-CR-18 re Seizure of $1000 | |
| PX36 | Possessed Property Receipt for $1,000 | |
| PX37 | 12/4/85 Jordan Report re Interview with Peter Barrett | |
| PX38 | 12/4/85 Zarzeski Report re Laurel Gardens surveillance | |
| PX39 | 12/5/85 Roma Report re Breen interview | |
| PX40 | 1/23/86 report re 12/5/85 seizure | |
| PX41 | 1/4/89 report re 12/2/85 Roma/Jordan photos | |
| PX42 | 12/8/85 Zarzeski report re shoes | |
| PX43 | 1/23/86 Jordan report re 12/8/85 seizure | |
| PX44 | 6/27/86 Ocif report re search for blood | |
| PX45 | 6/27/86 Ocif report re search for blood | |
| PX46a-h | Photographs of NMPD Homicide Box | |
| PX47 | Evidence flow sheets | |
| PX50 | CSP Administrative Operations Manual | |
| PX51 | 12/2/85 McMahon report of 12/2/85 Columbo interview | |

| | | |
|---|---|---|
| PX52 | Photo of victim | |
| PX53 | 12/4/85 Quartiero report of 12/3/85 Columbo interview | |
| PX54 | 12/6/85 Quartiero report re Donna Dacey + statement | |
| PX55 | Quartiero handwritten notes | |
| PX59 | Quartiero handwritten notes | |
| PX60 | Quartiero 12/11/85 report of 12/7/85 Columbo interview | |
| PX62 | *Henning v. Commissioner* Conn. Sup. Ct. decision | |
| PX63 | Evidence flow sheets for items 27 and 18 | |
| PX66 | CSP Manual Chapter 20 - Field reporting | |
| PX67 | CSP Manual Chapter 21 - Property | |
| PX68 | 2/17/89 Memo re Open File Policy | |
| PX70 | Offer of Reward | |
| PX73 | Cocchia interview transcript | |
| PX74 | Shepack notes on Cocchia interview transcript | |
| PX78 | 12/9/85 O'Mara report re divers | |
| PX79 | 12/11/85 McCafferty report re canine search | |
| PX82 | Photograph of Everett Carr | |
| PX86 | 12/2 application for 74 Aspetuck search warrant | |
| PX87 | 12/2/85 report re Roma interview of Bill Smith | |
| PX88 | Philip Espitee witness statement | |
| PX92 | Handwritten notes of 2/5/86 CSP-Lab Meeting | |
| PX93 | 5/16/86 Ocif report of interview of Mark Kulesza | |
| PX94 | 6/9/86 Ocif report of interview of Edward Chaffee | |
| PX95 | 12/28/87 Ocif report of second Perugini interview | |
| PX96 | 12/8/87 Ocif report of first Perugini interview | |
| PX98 | Acker 1/2/86 request for examination of physical evidence | |
| PX99 | Ocif 7/14/88 report of first Cocchia interview | |
| PX101 | 12/11/85 report and statement re Mark Morsey | |
| PX102 | Acker 6/16/86 report re 4/4/86 Diana Columbo follow-up | |

| PX103 | 12/4/85 report re interview of George Burkhart | |
|---|---|---|
| PX104 | 12/4/85 report re Robert Wassong interview | |
| PX105 | 12/5/85 Quartiero report re 12/2/85 Richard Burkhart interview | |
| PX108 | Dombrowski 12/3/85 crime scene report (duplicates PX2) | |
| PX109 | 6/11/86 Ocif report re recordings of Lillis interviews | |
| PX110 | Transcript of Lillis interview of Henning | |
| PX111 | 12/4/85 Lillis memo re fresh cuts and quarters | |
| PX113 | Ocif Memo re Retrial | |
| PX116 | 3-24-86 Ocif Report re VCR | |
| PX118 | 3-5-87 Ocif Report re Reward | |
| PX119 | 7-14-88 Ocif Report re Cocchia Interview | |
| PX122 | 5-24-88 Ocif Report re McKinley Interview | |
| PX128 | Crime Scene Photo Log | |
| PX130 | 1-21-86 Ocif Report re VCR | |
| PX131 | 1-5-88 Carey Report re VOP Arrest | |
| PX144 | Division of State Police Criminalistics Lab Report, 2/7/86 | |
| PX149 | Crime Scene Photos, BIRCH000875 | |
| PX155 | Lucinda Lopes-Phelan, Direct Examination, Transcript p.51-108 | |
| PX179 | All images | |
| PX180 | Saathoff Interview Video | |
| PX181 | Transcript of State v. Henning (1989), with nonjury portions removed | |
| PX182 | Transcript of State v. Birch (1989), with nonjury portions removed | |
| PX183 | Pony Sneakers (Habeas Ex. 26) | |
| PX184 | Subzero Work Boots (Habeas Ex. 28) | |
| PX185 | Texas Steer Work Shoes (Habeas Ex. 29) | |
| PX186 | Photo of bloody chevron footprint (Habeas Ex. 152) | |
| PX187 | Photos of 3 bloody footprints (Habeas Ex. 153) | |
| PX188 | Photo of bloody Vibram heel footprint (Habeas Ex. 154) | |
| PX189 | Photo of bloody Vibram full footprint (Habeas Ex. 155) | |
| PX190 | Known impressions of Vibram footprints (Habeas Ex. 156) | |

| | | |
|---|---|---|
| PX191 | Photo of bloody Vibram full footprint (Habeas Ex. 157) | |
| PX192 | Heel exemplar (Habeas Ex. 158a) | |
| PX193 | Heel exemplar (Habeas Ex. 158b) | |
| PX194 | Heel exemplar (Habeas Ex. 158c) | |
| PX195 | Heel exemplar (Habeas Ex. 158d) | |
| PX196 | Heel exemplar (Habeas Ex. 158e) | |
| PX197 | Lab Report 7-1-08 (Habeas Ex. 34) | |
| PX198 | Lab Report 3-31-10 (Habeas Ex.35) | |
| PX199 | Lab Report 6-29-11 (Habeas Ex. 36) | |
| PX200 | Lab Report 5-7-12 (Habeas Ex. 37) | |
| PX201 | Lab Report 7-30-12 (Habeas Ex. 38) | |
| PX202 | Lab Report 8-27-12 (Habeas Ex. 39) | |
| PX203 | Lab Report 3-13-13 (Habeas Ex. 40) | |
| PX204 | Lab Report 7-31-13 (Habeas Ex. 41) | |
| PX205 | Lab Report 11-27-13 (Habeas Ex. 42) | |
| PX206 | Lab Report 4-7-14 (Habeas Ex. 43) | |
| PX207 | Lab Report 1-2-15 (Habeas Ex. 44) | |
| PX208 | Lab Report 10-29-15 (Habeas Ex. 45) | |
| PX209 | TrueAllele Report 11-9-15 (Habeas Ex. 159) | |
| PX210 | TrueAllele Validation Study (Habeas Ex. 221) | |
| PX211 | Connecticut State Police Casebook | |
| PX212 | Audio recording of 7/12/88 interview of Todd Cocchia | |
| PX213 | Ocif report of 1/31/89 interview of Todd Cocchia | |
| PX214 | Ocif report of 1/25/89 arrest of Ralph Birch | |
| PX215 | McCafferty report of 1/18/89 interview of Todd Cocchia | |
| PX216 | Ocif report of 7/6/88 interview of Ralph Birch | |
| PX217 | December 21, 1988 letter from Assistant State's Attorney David Shepack | |
| PX218 | Transcript of proceedings of July 10, 2020, *State v. Ralph Birch* | |
| PX219 | Transcript of proceedings of July 10, 2020, *State v. Shawn Henning* | |
| PX220 | Ralph Birch Medical Records | |

**For Defendants**

| Exhibit | Description | Objection |
|---|---|---|

| | | |
|---|---|---|
| DX A | Cocchia interview audio recording | |
| DX B | Cocchia interview transcript, CSP007195 - 007208 | |
| DX C | Continuation of Investigation Report, 7/14/88, SAO122498 - 122498 | |
| DX D | State's Attorney's Agreement with Cocchia | |
| DX E | Officer Quartiero handwritten notes | |
| DX F | Inventory of Property Seized without a Seach Warrant, 12/4/85 | |
| DX G | Possessed Property Receipt, 12/4/85, BIRCH001877 | |
| DX H | Photograph of Possessed Property Receipt in NMPD case file | |
| DX I | Receipt for Seized Property, 12/2/85, 3-16 Initial Disclosures – 000204 | |
| DX J | Continuation of Investigation Report, Evidence Report, 12/2/85, 3-16 Initial Disclosures – 000236 | |
| DX K | Return for And Inventory Property Seized on Search and Seizure Warrant, 12/2/85, 3-16 Initial Disclosures – 000013 | |
| DX L | NMPD Department General Order D.2 Order 87-2, dated 1/1/1987, 001351 | |
| DX M | Crime scene video (Ex. E to Jordan MSJ) | |
| DX N | Crime scene photographs | |
| DX O | Continuation of Investigation Report, Photo Report, 1/9/86 | |
| DX P | 1985 new articles, CSP005770 – CSP005797<br>    a.  The New Milford Times, 12/5/1985, "Murder shocks New Milford" – CSP005773<br>    b.  The News-Times, 12/3/1985, "Police probing death of man" – CSP005784, CSP005779<br>    c.  Waterbury Republic, 12/3/1985, "Death Seen as Possible Homicide" – CSP005791, CSP005778<br>    d.  Waterbury Republic, 12/5/1985, "Police Comb Murder Site; burglary possible motive" – CSP005795<br>    e.  The News-Times, 12/5/1985, "Police widen hunt for leads in stabbing" – CSP005775 | |

| | | |
|---|---|---|
| | f. Waterbury American, 12/4/1985, "New Milford Slaying Linked to Burglary" – CSP005797 <br> g. Waterbury American, 12/6/1985, "Probe widening in Carr slaying" – CSP005787 <br> h. The New Milford Times, 12/12/1985, "Divers" – CSP005785 | |
| DX Q | Mildred Henning statement | |
| DX R | Arrest Warrant – Ralph Birch | |
| DX S | Arrest Warrant – Shawn Henning | |
| DX T | Continuation of investigation report, 12/4/85 (Ex. 13) | |
| DX U | Continuation of investigation report, 12/16/25 (Ex. 14) | |
| DX V | Continuation of investigation report, 12/6/85 (Ex. 24) | |
| DX W | Continuation of investigation report, 1/14/16 (Ex. 57) | |
| DX X | 2/17/89 Memo re Open File Policy (Ex. 68) | |
| DX Y | 3/5/87 Letter from Watson to Evelyn Carr (Ex. 12) | |
| DX Z | *Ralph Birch v. Commissioner of Correction*, 334 Conn. 37 (2019) | |
| DX AA | *Shawn Henning v. Commissioner of Corrections,* 334 Conn. 1 (2019) | |
| | | |

## 12.  DEPOSITION TESTIMONY

**For Plaintiffs:**

1.      John Roma: 8:6-13 (oath), 14:10-18:6, 30:16-31:21, 32:5-38:22, 40:15-43:4, 43:16-46:1, 50:12-51:2, 86-18-89:8.

2.      Brian Acker: 4:1-4 (oath), 9:4-21; 10:21-11:4; 12:15-18; 14:23-15:5; 15:20-24;20:24-21:9; 57:11-58:2; 58:5-59:22; 62:10-63:24; 65:25-66:11; 86:25-89:4; 101:6-109:4; 111:20-112:11; 129:17-137:25; 139:9-140:22;142:1-149:13; 154:2-159:2; 205:12-209:4.

Plaintiffs object to Defendants' designations of the following portions of Mr. Acker's deposition: 122:4 – 124:25 (hearsay, relevance); 140:22-141:12 (relevance, speculation, impermissible opinion under Fed. R. Evid. 701); 209:22-210:23 (relevance, speculation, impermissible opinion testimony under Fed. R. Evid. 701); 217:25-218:17 (relevance, speculation, impermissible opinion testimony under Fed. R. Evid. 701).

**For Defendants:**

Defendants object to the introduction of deposition testimony in lieu of live testimony. To the extent that deposition transcripts are allowed, Defendants object to the Plaintiffs' designated portions as follows and identify the following sections for submission along with those portions to which Defendants do not object.

1. John Roma

   Objections: 34:20 – 38:22; 87:18 – 89:8

   Inclusions: 30:22 – 31:24; 44:13 – 45:5

2. Brian Acker

   Objections: 101:6 – 103-23; 137:12-25; 143:25 – 144:3; 144:23 – 145:5; 145:24 – 146:8; 147:7 – 148:9; 148:20-25; 149:8-13; 158:15-18; 158:23 – 159:2; 206:11-17; 108:22 – 209:4

   Inclusions: 9:4 – 15:14; 59:22 – 61:5; 63:24 – 65:24; 66:11 – 67:25; 70:15 – 71:21; 112:3-6; 122:4 – 124:25; 140:22 – 141:12; 209:22 – 210:23; 217:25 – 218:17

## 13. REQUESTS FOR JURY INSTRUCTIONS

See separate filings.

## 14. ANTICIPATED EVIDENTIARY PROBLEMS

For Plaintiffs:  See motions *in limine*.

For Defendants:  See motions *in limine*.

15.     **PROPOSED FINDINGS AND CONCLUSIONS**

N/A

16.     **TRIAL TIME**

Plaintiffs anticipate 5-7 trial days for their case-in-chief.

Defendants will cross examine Plaintiffs' witnesses and anticipate another 4-5 trial days

for their case.

17.     **COURTROOM TECHNOLOGY**

Plaintiffs and Defendants will use the existing courtroom technology and possibly will

use a slide projector and screen that they will provide.

18.     **FURTHER PROCEEDINGS**

Plaintiffs and Defendants have filed a number of *in limine* motions.

19.     **ELECTION FOR TRIAL BY MAGISTRATE JUDGE**

The parties prefer a trial before Judge Bolden.

Dated: September 25, 2024

Respectfully submitted,

    */s/ Craig A. Raabe*

IZARD, KINDALL & RAABE, LLP
Craig A. Raabe (ct04116)
Seth R. Klein (ct18121)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 513-2939

W. JAMES COUSINS, P.C.
W. James Cousins (ct06382)
54 Danbury Road, Suite 413
Ridgefield, CT 06877
(203) 205-0622

LAW OFFICES OF PAUL CASTELEIRO
Paul Casteleiro (ct31177)
204 Radcliff Drive
Nyack, NY 10960
(914) 714-0543

*Counsel for Plaintiff Shawn Henning*

By: /s/ Douglas E. Lieb
KAUFMAN LIEB LEBOWITZ
& FRICK LLP
David A. Lebowitz, pro hac vice
Douglas E. Lieb (ct31164)
18 E. 48th Street, Suite 802
New York, NY 10017
(212) 660-2332

KIRSCHBAUM LAW GROUP,
LLC
Damon A. R. Kirschbaum (ct21216)
935 Main Street, Level A
Manchester, CT 06040
(860) 522-7000

*Counsel for Plaintiff Ralph Birch*

TOWN OF NEW MILFORD,
STEVEN JORDAN, and ROBERT
SANTORO AS ADMINISTRATOR
OF THE ESTATE OF DAVID
SHORTT, DEFENDANTS

    */s/ Elliot B. Spector*
Elliot B. Spector (ct05278)
Jeffrey O. McDonald (ct28195)
Forrest Noirot
Hassett & George, P.C.
945 Hopmeadow Drive
Simsbury, CT 06070
Tel. No.: (860) 651-1333