# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RALPH BIRCH and SHAWN HENNING, *Plaintiffs* | : : : | 3:20-cv-01790-VAB |
| v. | : : | |
| TOWN OF NEW MILFORD et al., *Defendants* | : : : : | SEPTEMBER 25, 2024 |

## MOTION IN LIMINE TO BIFURCATE TRIAL

The Defendants, Town of New Milford; Steven Jordan; and Robert Santoro, as Administrator of the Estate of David Shortt (collectively, the "Defendants"), respectfully move in limine for an order bifurcating the above captioned matter into separate trials on the issues of liability and damages. Once liability is determined, the issue of damages, if necessary, can be tried immediately after. The Defendants represent that a danger exists that due to the nature and extent of the claimed damages of the Plaintiffs, the jury may be so prejudiced that it cannot, or will not, fairly decide the issue of liability. Bifurcation of the trial additionally serves judicial economy, and convenience, as the expected witnesses and evidence as to each issue do not significantly overlap.

**I.  FACTS AND BACKGROUND**

Shawn Henning ("Henning") and Ralph Birch ("Birch") (together, the "Plaintiffs") allege that the Defendants violated the Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983,

1

and violated various Connecticut state laws, related to the investigation of the murder of Everett Carr, which occurred on the night of December 1-2, 1985. In particular, the Plaintiffs have asserted § 1983 causes of action for suppression of material favorable evidence (as to Detective Jordan), and fabrication of evidence in violation of the right to a fair trial (as to Detective Shortt). The Plaintiffs' state law claims encompass negligence, negligent infliction of emotional distress, indemnification pursuant to Conn. Gen. Stat. § 7-465, and liability against New Milford pursuant to Conn. Gen. Stat. § 52-577n.

Plaintiffs claim that because of the alleged constitutional violations, they were wrongfully incarcerated for decades. It is anticipated that each Plaintiff will spend significant time detailing their losses, which accumulated over the thirty years that they were incarcerated. Plaintiff Birch's Complaint includes a section entitled "Thirty Years Lost", which includes eighteen (18) paragraph detailing his alleges losses. Examples from the Birch Complaint include:

1. Ricky suffered severe emotional pain and suffering as a result of being punished for a crime he did not commit. He continues to suffer mental anguish and distress to this day.

2. While in prison, Ricky was exposed to horrific violence and trauma that will haunt him for the rest of his life. He witnessed grisly violence between inmates and vicious assaults on inmates by staff. Friends attempted and committed suicide. He lived through riots and brawls, saw his cell and belongings set on fire, and had his possessions stolen.

3. In one incident, Ricky narrowly escaped an attempted stabbing by another inmate who was in the midst of a mental health crisis. A week later, Ricky watched in horror when that same inmate smeared himself with feces and attacked another prisoner with two improvised blades, stabbing the man dozens of times while guards looked on.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

4.      In another incident, an inmate impaled Shawn Henning with an improvised blade—plunging the weapon so deeply into Shawn's chest that it exited out of his back—while Ricky was standing next to him. Ricky, who had tried unsuccessfully to intercede to stop the attack, watched the gruesome stabbing from inches away as his friend was nearly killed.

5.      In or around 2000, Ricky was one of almost 500 Connecticut prisoners who were transferred to the notorious Wallens Ridge State Prison in Virginia as part of an attempt to ease prison overcrowding in Connecticut.[4] When he arrived at Wallens Ridge, he was strip-searched in a group with approximately 20 other prisoners, handcuffed, shackled, and led across the prison grounds on a leash with a Taser pressed against his neck. The officer charged with orienting him to his new environment repeatedly warned that guards were armed and would not hesitate to "fire upon" inmates.

6.      During his time at Wallens Ridge, Ricky routinely witnessed and endured horrific violence. Guards frequently fired plastic ammunition from shotguns to quell perceived disturbances among inmates. In one incident, Ricky watched in horror as guards carried a fellow inmate on a stretcher as he appeared to be suffering a seizure. After his convulsions caused the inmate to involuntarily kick an officer, the guard transporting him began tasing the inmate repeatedly until he died in front of Ricky's eyes.

7.      Ricky's time at Wallens Ridge was dehumanizing and traumatic. He was forced to bathe in completely open showers with no privacy whatsoever, including from female guards who frequently observed him nude.

8.      Although his experience at Wallens Ridge and other prisons was traumatizing and deeply scarring, Ricky feared seeking mental health treatment while in prison because accessing such care could disqualify prisoners from eligibility for certain programs and jobs. As a result, Ricky never obtained any meaningful mental health treatment while incarcerated.

9.      As a result of the trauma he experienced in prison, Ricky continued to suffer from anxiety and mental anguish after his release. He was fearful of being approached from behind, even in church. By force of habit, he continued engaging in behaviors he had learned in prison to ensure his safety, such as maintaining a line of sight to the nearest exit from any enclosed space at all times and examining the hands of anyone he met to see if they might be secreting a weapon.

10.     Ricky's physical health also suffered during his time in prison. For instance, although the Connecticut Department of Corrections apparently learned from a blood test in or

Hassett & George, P.C.
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

around 1992 that Ricky had hepatitis C, he was never informed of this diagnosis or offered treatment until 2007. By the time Ricky discovered learned of his illness 15 years later, he had already sustained significant liver damage. He was forced to undergo approximately a year of grueling treatment, which caused debilitating side effects and thyroid damage that lingers to this day.

11. Ricky was also denied adequate dental care while in prison. Officials refused for years to provide inmates with dental floss, and Ricky was not permitted to see a dentist for approximately 20 years while incarcerated. He suffered frequent pain and bleeding and developed gum disease as a result.

12. Ricky's wrongful incarceration also denied him the opportunity to pursue normal relationships with, and enjoy the companionship of, his family and friends.

13. For example, throughout his life, Ricky has been very close with his mother, who was in her mid-50s when Ricky was convicted. She is now in her late 80s and in ailing health. Ricky's unjust incarceration deprived him of the opportunity to care for and support his mother as she aged, including during multiple heart surgeries that she underwent while he was in prison.

14. Ricky was also deprived of the opportunity to maintain close relationships with his siblings and their children. Ricky's sister, with whom he was particularly close, died while he was incarcerated. He was robbed of the opportunity to say goodbye and spend time with her in her final days. One of Ricky's brothers also died while he was in prison. His relationships with his two surviving brothers were strained by the long-term separation caused by his incarceration. As a result, Ricky's relationships with his siblings, nieces and nephews has been permanently damaged.

15. Ricky was denied years of gainful employment and income as a result of his incarceration. His earning power and ability to support himself have been permanently hampered as a result of losing years of productive work experience.

16. Ricky has been publicly shamed, disgraced and humiliated because of the ordeal of being falsely accused and convicted of a gruesome murder. Nothing can undo the reputational damage he has sustained.
Birch Complaint, ¶¶ 362 – 378

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

Plaintiff Henning likewise alleges various losses under the same title "30 Years Lost." Henning Complaint, ¶¶ 326 – 329. Undoubtedly, Plaintiffs' testimony of thirty years of losses will be comprehensive and time consuming. In addition to Plaintiffs' testimony, it is anticipated that Plaintiff will call expert witnesses in support of their damages claim, including Dr. Jessica Pearson regarding Plaintiff Henning's PTSD; Dr. Shapiro regarding Plaintiff Hennings lost earning; and Kristin Kucsma regarding Plaintiff Birch's present-value lost earnings.

Not only will the damage portion of this trial be extensive, but it will also undoubtedly pull at the jury's sympathies. The jury will hear testimony from two individuals who were convicted of murder and served thirty years in prison before their convictions were overturned. The jury will hear about the horrible experiences in prison, transfers among different prisons, the families that were torn or lost, and the moments that Plaintiffs will never experience or get back. This testimony will likely be powerful. It will be almost unimaginable to ask a jury to clearly separate liability and damages, when the damage piece is so involved. Allowing liability and damages to be tried together will present the jury with a nearly impossible task. Given Plaintiffs' extremely unique damage claim, liability and damage ought to be bifurcated. That is especially so because the liability issues related to the two Plaintiffs clearly overlap, whereas the damage issues will require two separate, comprehensive presentations.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

## II. LEGAL STANDARD

Courts have explained that "[u]nder Federal Rule of Civil Procedure 42(b), a district court has broad discretion to try issues and claims separately in order to 'further convenience, avoid prejudice, or promote efficiency.'" *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). Further:

> "In particular, 'bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue . . . or where one party will be prejudiced by evidence presented against another party[.]' *Id.* (citations omitted). *See also Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466 (2d Cir.1996) (holding bifurcation to be 'appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue'). 9A Wright & Miller, *Federal Practice & Procedure* § 2388 (3d ed. 2009) ('[i]f a single issue could be dispositive of the case . . . and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties'). The interests of judicial economy are particularly served when trial of the determinative issues is likely to be much shorter than the trial of the remaining issues. *See Reines Distributors, Inc. v. Admiral Corp.*, 257 F. Supp. 619, 622 (S.D.N.Y. 1965)."

*Doe v. Knights of Columbus*, 930 F. Supp. 2d 337, 378 (D. Conn. 2013). "[W]here there is a significant overlap in the evidence pertaining to the claims to be separated, bifurcation will not serve judicial economy." *ABB Indus. Systems, Inc. v. Prime Technology, Inc.*, 32 F. Supp.2d 38, 43 (D. Conn. 1998) (citing *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.1984)).

Bifurcation is a matter within the sound discretion of the trial court, and decided on a case-by-case basis. *See Mineo v. City of New York,* 2013 U.S. Dist. LEXIS 46953, 3 (E.D.N.Y.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

2013); *See also Doe v. Knights of Columbus,* 930 F. Supp. 2d 337, 378-79 (D. Conn. 2013) (further noting, in part, that a district court has broad discretion as it relates to this issue and that Rule 42(b) "simply does not give rise to a bright-line test."). "In establishing that bifurcation is warranted, the burden falls squarely on the party seeking bifurcation." *Doe v. United States Twirling Ass'n, Inc.,* 2024 U.S. Dist. LEXIS 76980, 3 (E.D.N.Y. 2024). The moving party must justify bifurcation on the basis of the substantial benefits that it can be expected to produce. *Id*. Moreover, while bifurcation is not unusual, bifurcation is "the exception rather than the rule." *See Nnodimele v. Derienzo,* 2016 U.S. Dist. LEXIS 83357, 4 (E.D.N.Y. 2016). "Cases in which bifurcation has been granted or denied can be informative but are not decisive in a Rule 42(b) analysis, since '[b]y its very nature, discretion yields differing outcomes.'" *Rutherford v. City of Mount Vernon,* 2023 U.S. Dist. LEXIS 225224, 5-6 (S.D.N.Y. 2023). Regarding the bifurcation of liability and damages phases of a trial, courts have noted:

> . . . concerns relating to prejudice and judicial economy augur in favor of bifurcation. Bifurcation is warranted "when the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Helminski v. Ayerst laboratories* 766 F.2d 208, 212 (6th Cir. 1985), *cert. denied*, 474 U.S. 981, 106 S. Ct. 386, 88 L. Ed. 2d 339 (1985). "Evidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault." *Buscemi v. Pepsico, Inc*., 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990). Here, plaintiff's demand includes compensatory and punitive damages, based on, *inter alia*, emotional distress including proposed evidence of post-traumatic stress disorder. . . . Heaping on additional evidence related to damages will only heighten the prejudice to defendant . . . and may result in a jury verdict that is based on considerations wholly separate and apart from issues of liability. This is

7

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

particularly the case where a plaintiff seeks punitive damages as well. *See Smith v. Lightning Bolt Productions*, 861 F.2d 363, 373-74 (2d Cir. 1988).

Bifurcating liability and damages on the individual claim will also conserve resources. Once again, a jury verdict in favor of [defendant] will obviate the need to try the issue of damages. A verdict in favor of plaintiff will be followed immediately by a trial on damages, before the same jury. Moreover, there is likely little overlap between witnesses on liability and those necessary to prove the complicated, expert-based claims relating to post-traumatic stress and other damages issues. Though some witnesses may need to be called twice, plaintiff being one of them, bifurcation is, on balance, "conducive to expedition and economy" in the words of Rule 42(b) and sacrifices little, particularly when balanced against the potential for prejudice by trying both issues simultaneously.

Thus, weighing all of these factors, and in the exercise of its discretion, the Court will bifurcate the liability and damages phases of any trial on the individual claim against [defendant].

*Mineo v. City of New York*, Docket No. 09-CV-2261 (RRM)(MDG), 2013 U.S. Dist. LEXIS 46953, at *5-6 (E.D.N.Y. Mar. 29, 2013).

### III. ARGUMENT

The Defendants seek bifurcation for two reasons: (1) determination of liability is potentially dispositive, and the jury's determination on that issue will determine whether damages need to be addressed at all, and has the potential to save the Court and the parties, valuable resources and time; and (2) if the jury were charged with determining the liability of the Defendants, and damages at the same time, the Defendants would suffer unnecessary and undue prejudice.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

### A. Bifurcating Liability And Damages Serves Judicial Economy

In terms of judicial economy, bifurcation will result in minimal evidentiary overlap and benefit the Court, Jury, and Parties. The majority of facts pertaining to liability are separate and distinct from the facts relevant to the Plaintiffs damages claims. *See Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466 (2d Cir.1996) (holding bifurcation to be 'appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue'). Likewise, the witnesses expected to be called for the issue of liability are distinct from those expected to be called to establish the Plaintiffs' damages, and are not expected to overlap. Additionally, a jury verdict in favor of the Defendants on questions of liability would eliminate the need for witnesses and evidence related to damages. In such a case, this would shorten the trial and conserve the Court's time and resources, thereby promoting efficiency.

On the other hand, if liability is found, the damages phase can proceed with the same jury immediately thereafter with little to no effect on the Plaintiffs' case. Moreover, there is not a significant overlap in the witnesses necessary for each phase, most witnesses will not have to be recalled if liability is found, and the damages phase becomes necessary. Apart from Plaintiffs testifying individually as to both issues, other witnesses expected to be called by the Plaintiffs fit neatly into either category, and bifurcating the trial will not prejudice the Plaintiffs. It appears the Plaintiffs intend to call the following experts to address their claimed damages: (1) Jessica

9

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

Pearson, regarding her psychological evaluation of Henning; (2) Steven Shapiro regarding Henning's lost earnings; and (3) Kristin K. Kucsma regarding Birch's lost earnings. The remaining witnesses[1] all appear to be relevant to issues regarding the alleged liability of the Defendants and the investigation into the murder of Carr. Likewise, the evidence the Plaintiffs intend to offer at trial also fits discreetly into either liability or damages, and bifurcating the trial will not result in overlap while either are being tried. Meaning, bifurcation of the trial will ensure that multiple witnesses are not recalled, nor will evidence be presented repeatedly. Bifurcating the trial will thus promote judicial economy.

**B. If The Trial Is Not Bifurcated, The Evidence And Testimony Related To The Plaintiffs' Alleged Damages Will Have A Prejudicial Impact On The Jury**

If the trial is not bifurcated, the Defendants will be prejudiced by the voluminous evidence regarding Plaintiffs' alleged damages. Such overwhelming testimony and evidence creates a significant risk of influencing the jury to reach a verdict regarding the liability of Defendants based on sympathy, rather than fact. Likewise, the presentation of witnesses and evidence unrelated to liability may create jury confusion; bifurcating the trial would alleviate potential confusion. Bifurcating liability and damages addresses these real, and sizable, risks.

---

[1] The Plaintiffs have disclosed, in addition to the witnesses above, the following witnesses related to the question of Defendants' liability: Brian Acker, Michael Graham, Andrew Ocif, Norbert Lillis, John Roma, Joseph Quartiero, Todd Cocchia, William Bodziak, Greg Hampikian, James Hiltz, Jerome Dombrowski, Judge Karen Goodrow, Tim Saathoff, Lucinda Lopes-Phelan, Christine Roy, and Anita Bagot.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

The Plaintiffs intend to offer testimony and evidence related to the time they spent in prison, and their specific experiences while incarcerated. Such an offering poses a great risk of prejudicing the jury and could "result in a jury verdict that is based on considerations wholly separate and apart from issues of liability." *Mineo v. City of New York*, Docket No. 09-CV-2261 (RRM)(MDG), 2013 U.S. Dist. LEXIS 46953, at *5-6 (E.D.N.Y. Mar. 29, 2013). Indeed, in the Joint Trial Memorandum, the Plaintiffs alluded to the type of damages evidence they intend to introduce: "[a]s just one example of the evidence that will be presented at trial, early in his incarceration, Mr. Henning tried to intervene when another young and vulnerable inmate was being abused. Another inmate then stabbed Mr. Henning with a prison shank, collapsing his lung in the near fatal attack." Moreover, Plaintiff Birch's Complaint is replete with examples of the type of losses alleged and the testimony to be presented (Birch Complaint, ¶¶ 362-379). One way or another, the jury will be impacted by the evidence of damages.

As stated above, "[e]vidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault." *Mineo v. City of New York*, Docket No. 09-CV-2261 (RRM)(MDG), 2013 U.S. Dist. LEXIS 46953, at *6 (E.D.N.Y. Mar. 29, 2013). If evidence of harm, in and of itself, may result in sympathetic jurors, how will a jury be impacted by two different Plaintiffs detailing 30 years of losses as described above? The impact on the jury may be substantial. This jury will be tasked with deciding liability with a cool, unbiased temperament. However, if the jury is

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

allowed to hear days of testimony regarding the alleged horrors and losses sustained by both Plaintiffs over the course of 30 years (each), the jury's ability to render an impartial and unbiased verdict may be lost.

Bifurcation presents not only an opportunity for the efficient use of judicial resources and the jury's time, but also shields the jury from rendering a decision on liability that is improperly impacted by Plaintiffs' claimed damages. The possibility of undue prejudice weighs in favor of bifurcating the trial.

## IV.    CONCLUSION

For reasons of judicial economy, and avoiding prejudice to the Defendants, the issues regarding liability in this case should be tried first. The bifurcation of this case will not delay trial as the damages portion of the case, if required, can immediately follow the resolution of liability surrounding the Plaintiffs' claims. In fact, determining liability first may shorten the trial, and preserve judicial economy. Most importantly, bifurcating the trial will eliminate the prejudicial effect that the Plaintiffs' claimed damages may have on the jury.  Wherefore, Defendants respectfully request that liability and damages be bifurcated.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

DEFENDANTS
TOWN OF NEW MILFORD, STEVEN JORDAN, ROBERT SANTORO AS ADMINISTRATOR OF THE ESTATE OF DAVID SHORTT

BY /s/ Jeffrey O. McDonald
Jeffrey O. McDonald (ct28195)
Elliot B. Spector (ct05278)
Forrest Noirot
Hassett & George, P.C.
628 Hebron Avenue Suite 212
Glastonbury, CT 06033
T: (860)651-1333
F: (860)651-1888
ebspector87@gmail.com
jmcdonald@hgesq.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date first above a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

BY /s/ Jeffrey O. McDonald
Federal Bar No.: ct28195

13

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894