UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RALPH BIRCH,<br><br>                    Plaintiff,<br><br>-against-<br><br>TOWN OF NEW MILFORD et al.,<br><br>                    Defendants. | No. 3:20-CV-1790 (VAB)<br><br><br>February 5, 2025 |

**REVISED JOINT TRIAL MEMORANDUM**

**1.    TRIAL COUNSEL**

For Ralph "Ricky" Birch:  David A. Lebowitz, Douglas E. Lieb, and Alyssa Isidoridy

For the New Milford Defendants:  Elliot B. Spector, Jeffrey O. McDonald, and Forrest

Noirot

**2.    JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) and 28

U.S.C. § 1367(a).

**3.    JURY/NON-JURY**

This is a jury case.

**4.    NATURE OF CASE**

This is a civil rights case under 42 U.S.C. § 1983 with supplemental state law claims.

Mr. Birch asserts § 1983 causes of action for suppression of material favorable evidence and

failure to intervene to prevent the deprivation of liberty based upon fabricated evidence.  He also

asserts state law causes of action for (1) negligence, (2) negligent infliction of emotional distress,

1

(3) indemnification pursuant to Conn. Gen. Stat. § 7-465 and (4) liability against New Milford pursuant to Conn. Gen. Stat. § 52-557n.

**5.      STIPULATIONS OF FACT AND LAW**

    a.   Everett Carr was stabbed approximately 27 times, including a deep five-inch gash across his neck. His jugular vein was severed. He sustained approximately seven instances of blunt force trauma to the head.

    b.   At all times from December 1, 1985, until his retirement in 1999, David Shortt was employed by the Town of New Milford as a member of its police department, first as a police offir and then as a detective.

    c.   David Shortt died on November 10, 2019.

    d.   Former Detective H. Patrick McCafferty of the Connecticut State Police died on September 11, 2021.

    e.   PX215 bears the signature of former State Police Detective H. Patrick McCafferty in the "Investigating Tpr's Signature" field.

    f.   Former Detective Charles Squires of the Norfolk, Virginia Police Department died on October 2, 2017.

    g.   At all times from December 1, 1985 until the present, Connecticut General Statute 54-86c(c) has provided: "Each peace officer, as defined in subdivision (9) of section 53a-3, shall disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case."

h. While he was a member of the New Milford Police Department, Steven Jordan was a peace officer as defined in subdivision (9) of section 53a-3 of the Connecticut General Statutes.

i. The photograph marked as PX46g is a true and accurate depiction of a portion of the "casebook" (PX211).

j. On July 10, 2020, the charges against Ralph Birch for the murder of Everett Carr were dismissed after the State's Attorney chose not to retry him.

6. **PLAINTIFFS' CONTENTIONS**

Plaintiff served approximately thirty years in state prison for a homicide of which he was innocent. Everett Carr was brutally murdered in December of 1985. He was stabbed twenty-seven times and repeatedly hit with a blunt object. His neck was severed from side-to-side. Almost immediately, law enforcement concluded that the homicide was the result of a "burglary gone bad" in which Mr. Carr interrupted the burglary and the burglars butchered him.

Within hours of the murder, Defendant Steven Jordan interviewed an informant and asked him who was conducting burglaries in the area. The informant identified Shawn Henning and Ralph "Ricky" Birch. From that moment on, law enforcement singularly focused on Plaintiff and Mr. Henning to the exclusion of obvious, likely suspects, including the victim's daughter (who made bizarre and incriminating statements) and her lover (who had an antagonistic relationship with Mr. Carr). When New Milford Police Captain Norbert Lillis expressed his firm view that law enforcement was wrongfully pursuing Mr. Birch and Mr. Henning as suspects, the New Milford Police Chief removed him from the investigation.

As a result of the misconduct of these Defendants, and other misconduct by former state-employee co-Defendants, Plaintiff was wrongly convicted of felony murder in 1989 and

sentenced to fifty-five years.  The Connecticut Supreme Court vacated his conviction in 2019, and the state did not retry him due to a lack of evidence.

Plaintiff's causes of action revolve around two constitutional violations.

First, Plaintiff Birch claims that New Milford Detective David Shortt violated his constitutional rights by failing to intervene when former co-Defendant Andrew Ocif wrongfully fed information to and manipulated a supposed witness, Todd Cocchia.  As a result of the manipulation, Cocchia falsely implicated Plaintiff in the Carr murder and he later testified falsely at Mr. Birch's trial.  Detective Shortt, who is deceased, failed to intervene while he was at the interview in which Ocif engaged in the misconduct, and Shortt failed to report or rectify the manipulated interview and the subsequent false testimony.

 Second, Plaintiff claims that Defendant Jordan denied his right to a fair trial by failing to disclose to the prosecutor, and thus to the defense, the fact that law enforcement seized a bank envelope containing $1,000 in cash at the crime scene.  Jordan logged the cash as lost property, rather than as evidence, and he gave the cash to Mr. Carr's daughter.  The forms documenting the cash were not provided to the prosecutor or made available to the defense.  The exculpatory nature of finding $1,000 of cash at the scene of a supposed burglary is self-evident.  Indeed, Jordan testified in deposition that "I have never seen it, in all my years, [burglars] leaving money behind" and that "most burglars wouldn't leave that much money behind."

During the time that Plaintiff was wrongfully incarcerated, he suffered terribly. He entered the Connecticut prison system as a young man during an incredibly violent period. Despite his enduring trauma, Plaintiff was a model inmate.  He went decades without any disciplinary incidents and gained the respect of the correctional staff and leaders.

Plaintiff seeks compensatory damages and interest for decades of wrongful imprisonment, as well as attorneys' fees and costs to the fullest extent permitted by law. Each Plaintiff filed under seal an offer of compromise on October 25, 2021, within eighteen months of the commencement of these consolidated actions.

## 7.    DEFENDANT'S CONTENTIONS

Defendants, Steven Jordan, Robert Santoro as Administrator of the Estate of David Shortt, and the Town of New Milford, deny Plaintiff's claims.

On the night of December 1-2, 1985, Everett Carr was murdered in his house at 74 Aspetuck Avenue in New Milford, CT. The New Milford police department ("NMPD") originally responded to the scene of the murder. Thereafter, the Connecticut State Police ("CSP") took responsibility for the processing of the crime scene and the investigation of the murder. The NMPD assisted the CSP in their investigation as needed. Plaintiff's claims against Steven Jordan and David Shortt stem from their roles assisting the CSP investigation.

Steven Jordan did not commit any wrongdoing during the investigation of Mr. Carr's death. At that time, he was a detective working for the NMPD. On or about December 4, 1985, CSP Detective Michael Graham gave Detective Jordan $1,000 in cash with instructions to the return the $1,000 to Diane Columbo, who resided at 74 Aspetuck Ave. Detective Graham documented the $1,000 cash on an "Inventory of Property Seized Without a Search Warrant JD-CR-18 REV 10-81" noting that the $1,000 was "Lost/Found", rather than noting it as "Stolen," "Evidence," or "Investigation." Detective Graham does not know where the cash was found or who gave him the $1,000. Detective Jordan, who had no idea where the $1,000 was found, signed Detective Graham's inventory form indicating that he received the $1,000. On December 4, 1985, Jordan returned the $1,000 to Diane Columbo, as instructed, and prepared a "Possessed Property

Receipt" documenting that the $1,000 was returned to Ms. Columbo. The $1,000 was never designated as evidence in the investigation of Mr. Carr's death and was neither material to the investigation of Mr. Carr's death nor exculpatory evidence. Detective Jordan did not engage in any wrongdoing and is not liable to Plaintiff.

David Shortt, who was also a detective working with the NMPD at the time of Mr. Carr's death, did not commit any constitutional violations or engage in any wrongdoing related to the homicide investigation. The claims against Detective Shortt relate solely to Detective Shortt's observations of CSP Detective Ocif's interview of witness, Todd Cocchia. On July 6, 1988, Todd Cocchia informed Det. Charles Squires of the Norfolk, Virginia Police Department that Cocchia had information about a murder that involved Ralph Birch. Prior to this date, Detective Shortt had no knowledge that Mr. Cocchia had any knowledge of Birch's involvement in Mr. Carr's death. Six days later, on July 12, 1988, CSP Detective Ocif, in the presence of Detective Shortt, interviewed Mr. Cocchia at the Norfolk Police Department, which interview was recorded. In that interview Mr. Cocchia told Detective Ocif that that Plaintiff, Ricky Birch, stated that he had stabbed and killed a man in New Milford, Connecticut during a burglary. At the time of the interview, neither Detective Ocif, nor Detective Shortt, had any reason to doubt the truthfulness of Mr. Cocchia. At no time did Defendant Shortt have a duty to intervene to address the manner in which the interview was being conduct. Defendant Shortt did not commit any wrongdoing related to the 1988 interview of Todd Cocchia.

In addition to contesting the factual and legal basis for Plaintiff's claims, Defendants are protected by qualified immunity and governmental immunity. To the extent that Plaintiff alleges that he did not receive a fair trial and was otherwise falsely convicted, such claims rest with other settled-out State actors, and not with Detectives Jordan or Shortt.

8.    **LEGAL ISSUES**

**§ 1983 Failure to Intervene / Fabrication of Evidence (1st Count)**

> To maintain a claim of fabrication of evidence under § 1983, a plaintiff must show that
>
> an (1) investigating official (2) fabricated evidence (3) that is likely to influence a jury's
>
> decision, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a
>
> deprivation of liberty as a result . . . . The affirmative duty to intervene in a constitutional
>
> violation is triggered when the observing officer knows or has reason to know" that a
>
> constitutional violation is afoot, and the officer has a realistic opportunity to intervene but
>
> fails to do so.

*Birch v. Town of New Milford*, No. 3:20-CV-1790 (VAB), 2023 WL 4684720, at *21 (D. Conn.

July 21, 2023) (internal quotation marks, citations, and alterations omitted).

**§ 1983 Suppression of Material Favorable Evidence (3rd Count)**

> To establish a *Brady* violation, "[the accused] must show that: (1) the government, either
>
> willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to
>
> the [accused]; and (3) the failure to disclose this evidence resulted in prejudice." *United*
>
> *States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018). As to the first element, the
>
> Second Circuit has "suggested, though without so concluding, that a civil *Brady* claim
>
> requires a showing that the non-disclosure was intentional." *Bellamy v. City of New York*,
>
> 914 F.3d 727, 751 n.23 (2d Cir. 2019). With respect to the second element, "[e]vidence
>
> that is not disclosed is suppressed for Brady purposes even when it is 'known only to the
>
> police investigators and not to the prosecutor.' " *United States v. Triumph Cap. Grp.,*
>
> *Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). Evidence is "material" if "there is a 'reasonable
>
> probability' that disclosure would have changed the outcome of the case, or where the

suppressed evidence 'could reasonably be taken to put the whole case in such a different

light as to undermine confidence in the verdict.' " *Kirk Tang Yuk*, 885 F.3d at 86...

*Henning v. Town of New Milford,* No, 20-cv-1790 (VAB), 2021 WL 4940970, at *13 (D. Conn.

Sept. 24, 2021).

**Negligence (4th Count)**

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are

well established: duty; breach of that duty; causation; and actual injury." *McDermott v.

State*, 316 Conn. 601, 609 (2015) (citing *LePage v. Horne*, 262 Conn. 116, 123 (2002)).

Within the duty, "there are two distinct considerations." *LePage*, 262 Conn. at

123 (internal quotation marks omitted). "First it is necessary to determine the existence of

a duty, and [second], if one is found, it is necessary to evaluate the scope of that

duty." *Id.* And, "[t]he issue of whether a duty exists is a question of law." *Id.*

*Henning,* 2021 WL 4940970, at *13.

**Negligent Infliction of Emotional Distress (5th Count)**

For a successful negligent infliction of emotional distress claim, a plaintiff must prove

that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff

emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress

was severe enough that it might result in illness or bodily harm; and (4) the defendant's

conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn.

433, 444 (2003). In such cases, the "fear or distress experienced by the plaintiffs [must]

be reasonable in light of the conduct of defendants." *Id.* at 447 (*citing Barrett v. Danbury

Hosp.*, 232 Conn. 242, 261–262 (1995)).

*Henning,* 2021 WL 4940970, at *18.

### Indemnification by New Milford under Conn. Gen. Stat. § 7-465 (6th Count)

(1) Liability has been imposed by law upon a municipal employee (2) for damages for infringement of any person's civil rights or for physical damages to person or property, where (3) the employee at the time of the occurrence, accident, physical injury or damages complained of was acting in the performance of his duties and within the scope of his employment, and that (4) the occurrence, accident physical injury or damages were not the result of any willful or wanton act of such employee in the discharge of such duty.

*See* Conn. Gen. Stat. § 7-465.

"Connecticut General Statute § 7-465 allows a plaintiff to seek indemnity from a municipality based upon the actions of a municipal employee within the scope of his municipal employment," *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 190 (D. Conn. 2003), so long as "the injury 'was not the result of any willful or wanton act,' "*Carey v. Maloney*, 480 F. Supp. 2d 548, 567 (D. Conn. 2007) (quoting Conn. Gen. Stat. § 7-465).

*Henning,* 2021 WL 4940970, at *25.

### Direct action against New Milford under Conn. Gen. Stat. § 52-557n (7th Count)

The (1) negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties (2) caused damages to person or property. However, a municipality is not liable for (A) acts or omissions of any employee which constitute criminal conduct, fraud, actual malice or

willful misconduct, or (B) negligent acts or omissions which require the exercise of

judgment or discretion as an official function of the authority expressly or impliedly

granted by law.

*See* Conn. Gen. Stat. § 52-557n(a).

Connecticut General Statutes § 52-557n imposes liability on a municipality for the

negligence of municipal employees. Conn. Gen. Stat. § 52-557n. As relevant here, the

statute provides that "[e]xcept as otherwise provided by law, a political subdivision of the

state shall be liable to damages for person or property caused by ... [t]he negligent acts or

omissions of such political subdivision or any employee, officer or agent thereof acting

within the scope of his employment or official duties...." *Id.* § 52-557n(a)(1)(A).

*Henning,* 2021 WL 4940970, at *25.

### 9.    *VOIR DIRE* QUESTIONS

**For Plaintiffs:**

1. Have you or anyone in your immediate family ever been accused of a crime?

2. Have you or anyone in your immediate family ever been convicted of a crime?

3. Have you or anyone in your immediate family ever been incarcerated?

4. Have you or anyone in your immediate family worked for law enforcement?

5. Do you or anyone in your immediate family have experience with forensic science or
   DNA testing or analysis?

6. Have you or anyone in your immediate family worked for the state of Connecticut or a
   municipality?

7. Have you or anyone in your immediate family ever been homeless?

8. Have you or anyone in your immediate family ever had to deal with drug use?

9. Have you or anyone in your immediate family ever had to deal with severe emotional distress?

10. Have you or anyone in your immediate family ever been the victim of a crime?

11. Do you have views about law enforcement that would make it difficult to serve as juror where law enforcement officials are accused of misconduct?

**For Defendants:**

1. Have you or anyone you know ever worked for the Town of New Milford?

2. Have you or anyone you know ever worked for a municipality?

3. Have you, any member(s) of your family or any close friends ever sued or made a claim for damages against any police or law enforcement officer?

4. Have you, any member(s) of your family or any close friends made any formal complaint against any police or law enforcement officer?

5. Have you, any member(s) of your family or any close friends been involved in what you would consider to be a negative or unpleasant situation with the police or law enforcement officer?

6. Have you, any member(s) of your family or any close friends ever been involved in a police investigation?  If so, how were you involved in the investigation?

7. Have you, any member(s) of your family or any close friends ever been questioned by a police officer?

8. Do you feel that your previous involvement in any of these situations is likely to affect your ability to be completely objective and impartial in this case?

9.  Have any of you ever served on a jury which heard claims of police misconduct or violation of constitutional rights?

10. Have any of you heard, read or seen any news articles, videos or stories about this case, related in any way to Plaintiffs' claims?  If so, please describe what you have heard, read or seen.

11. Did any of you know anything about the claims or the parties involved in this case before you entered the courtroom today.  If so, please describe what you already know about this case?

12. Have any of you heard or read anything about New Milford Police Department police officers Steven Jordan or David Shortt, or heard or read anything about police officers in general, which would in any way interfere with your ability to be completely objective and impartial concerning the evidence of this case?

13. Do any of you have any strong opinions, ideas or thoughts about claims of deprivation of constitutional rights and alleged police misconduct, such as I have outlined to you?  If so, would you please describe those opinions?

14. Would any of your feelings or ideas concerning claims similar to the ones before us today as I have described them to you prevent you from being absolutely fair and impartial in considering this case solely on the basis of the evidence and the law as the court will give it to you?

15. If the court were to instruct you that the law applicable to this case could result in your having the duty to send the plaintiff away with no recovery, would you have any difficulty in making that decision?[1]

---

[1]    Plaintiff objects to Defendants' proposed questions No. 15 and 16.

16. In considering this case, would you be able to put aside any feeling of sympathy you may have for the plaintiffs, and decide this case solely on the basis of the evidence and the law as the Court will give it to you?

17. Have you or any one you know sustained injuries or damages in any type of incident involving police officers or other public service employee?  Do you feel that your involvement in or knowledge of these situations would likely affect your ability to be completely objective and impartial in this case?

18. Have you heard or read any media accounts or commentaries related to alleged police conduct that would likely affect your ability to be completely objective and impartial in this case?

**10.    LIST OF WITNESSES**

**For Plaintiffs:**

<u>Witnesses Plaintiffs Expect to Call</u>

1. Ralph Birch: Mr. Birch will testify concerning the facts and circumstances of his arrest, prosecution, and incarceration, including his emotional distress and other damages.

2. Shawn Henning: Mr. Henning will testify concerning the facts and circumstances of his arrest and prosecution and, to the extent his experience overlaps with Mr. Birch's, his incarceration.

3. Brian Acker (by deposition): Mr. Acker will testify concerning his role supervising the CSP investigation of Everett Carr's murder, including practices and procedures for the transmittal of evidence to the State's Attorney's Office.

4. Michael Graham: Mr. Graham will testify about the processing of the Carr crime scene, including how crime scene evidence was collected and documented, and about the discovery of the $1,000 cash and how it came to be in the possession of Defendant Steven Jordan.

5. Steven Jordan: Mr. Jordan is expected to testify about his actions with respect to the $1,000 cash found at the Carr crime scene.

6. Andrew Ocif: Mr. Ocif is expected to testify about the facts and circumstances of the interview of Todd Cocchia he and David Shortt conducted on July 12, 1988, and the state

of his and Shortt's knowledge at the time.

7. Norbert Lillis: Mr. Lillis is expected to testify concerning his role in the early days of the NMPD investigation into the Carr homicide and the knowledge and state of mind of his subordinates.

8. John Roma (by deposition): Mr. Roma will testify concerning his role in the early portion of the NMPD investigation into the Carr homicide, the actions of the victim's daughter, and the knowledge and state of mind of members of the NMPD detective bureau.

9. Joseph Quartiero: Mr. Quartiero is expected to testify about police efforts to investigate items allegedly stolen from Everett Carr's home on the night of the murder.

10. Todd Cocchia: Mr. Cocchia will testify concerning his role as a witness in the investigation and prosecution of Ralph Birch.

11. William Bodziak: Mr. Bodziak will testify as a retained expert concerning his analysis of footwear impressions from the Everett Carr crime scene.

12. Lucinda Lopes-Phelan: Ms. Lopes-Phelan is expected to testify as a non-retained expert concerning analysis she conducted of forensic evidence from the Everett Carr case.

13. Greg Hampikian: Mr. Hampikian will testify as a retained expert concerning probabilistic genotyping he performed with respect to DNA evidence from the Everett Carr crime scene.


Witnesses Plaintiffs May Call

14. James Hiltz: Mr. Hiltz is expected to testify concerning his supervision of the CSP investigation into the Carr homicide.

15. Jerome Dombrowski: Mr. Dombrowski is expected to testify concerning the actions of Diana Colombo at the murder scene.

16. Judge Karen Goodrow: Judge Goodrow is expected to testify about the Connecticut Innocence Project's reinvestigation of the Everett Carr murder.

17. Christine Roy: Ms. Roy is expected to testify as a non-retained expert concerning analysis she conducted of DNA evidence from the Everett Carr case.

18. Anita (Bagot) Brearton: Ms. Brearton will testify concerning the actions of Diana Colombo and statements she made to Ms. Brearton at the crime scene

19. Keeper of the Records for the Connecticut Department of Corrections

20. Keeper of the Records for the New Milford Police Department

21. Keeper of the Records for the State of Connecticut Forensic Science Laboratory

22. Keeper of the Records for the State of Connecticut Division of Public Defender Services

23. Keeper of the Records for the State of Connecticut Division of Criminal Justice

24. Keeper of the Records for the Office of the Clerk for the Judicial District of Litchfield

25. Keeper of the Records for the Office of the Clerk for the Judicial District of Tolland

26. Keeper of the Records for the Superior Court Records Center

27. A summary witness who will testify as to the contents of PX211, the casebook.

28. A summary witness who will testify as to the contents of PX182, the jury portions of the criminal trial transcript.


Plaintiff reserves the right to cross-examine Defendants' witnesses, to call any witness on Defendants' witness list, and to call additional witnesses for impeachment or rebuttal of Defendants' witnesses.


**For Defendants:**

<u>Witnesses Defendants expect to call:</u>

1. Steven Jordan:  Will testify as to his participation in the investigation of the murder Mr. Carr and his knowledge and actions related to the thousand dollars allegedly found in the victim's home.

2. Former State Police Detective Ocif:  Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death, his knowledge of and participation in the interview of Todd Cocchia and the belief that the underlying offense may have been related to a burglary.

3. Todd Cocchia:  Will testify regarding the Norfolk Virginia interview and his conversations with Plaintiff, Ricky Birch.

4. Former State Police Detective Michael Graham: Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death, the discovery of a thousand dollars and the basis for the belief that the underlying offense may have been related to a burglary.

5.  Former State Police Detective Joseph Quartiero:  Will testify as to his involvement and knowledge of the investigation of Mr. Carr's death including his knowledge of the discovery of the thousand dollars.

6.  Former State Police Sergeant Brian Acker:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars and interview of Todd Cocchia in Norfolk Virginia.

7.  Former New Milford Police Department Detective John Roma:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

    Witnesses Defendants may call:

8.  Former State Police Detective George Heg:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

9.  Attorney Alfred Mencuccini:  Will testify regarding his representation of Ricky Birch in the criminal trial, the evidence submitted at that trial and the impact that allegedly suppressed evidence may have had at the criminal trial.

10. Former New Milford Police Department patrolman Jerome Dombrowski:  Will testify as to his actions and knowledge of the investigation of Mr. Carr's death, including his actions and knowledge related to the discovery of the thousand dollars.

11. Attorney David Shepack:  Will testify regarding his actions and knowledge of the investigation of Mr. Carr's death and the prosecution of Plaintiffs.

12. Keeper of the Records for the New Milford Police Department

13. Keeper of the Records for the State of Connecticut Division of Criminal Justice

14. Keeper of the Records for the Office of the Clerk for the Judicial District of Litchfield

15. Keeper of the Records for the Office of the Clerk for the Judicial District of Tolland

16. Keeper of the Records for the Superior Court Records Center

Defendants will cross examine each of Plaintiffs' witnesses and also reserve the right to all Plaintiffs' own witnesses in Defendants' case in chief.  Also, Defendants reserve the right to call other witnesses for purposes of rebuttal or impeachment.


**11.    EXHIBITS**

**For Plaintiffs:**[2]

| Exhibit | Description | Objection |
|---|---|---|
| PX2 | 12/2/85 NMPD Dombrowski Report re Crime Scene | None |
| PX3 | 9/9/86 Letter from Hiltz to Santore | Hearsay |
| PX8 | 5/5/87 O'Mara Report re Birch 12/9/85 Interrogation | None |
| PX9 | 5/22/86 Roberts Report re Anonymous Tip | Hearsay, relevance, prejudice |
| PX10 | 6/10/86 Ocif Report re Burkhart Interview | Hearsay, relevance, prejudice |
| PX11 | 6/16/86 Acker Report re Burkhart Interview | Hearsay, relevance, prejudice |
| PX12 | 3/5/87 Letter from Watson to Evelyn Carr | None |
| PX15 | Three photos of stolen Buick | None |
| PX16 | 12/7/85 Zarzeski Report re Buick recovery | None |
| PX17 | CGS 54-86c | None |
| PX18 | 12/9/85 O'Mara Report re Birch Interrogation | None |
| PX19 | 12/9/85 Samoska Report re Warrant Execution | None |
| PX28 | Town of New Milford Police Operations Manual 1985 | None |
| PX29 | Department General Order D.2 Order 87-2 2/1/87 | None |
| PX32 | Graham 12/5/85 Report re Carr House Seizure | None |
| PX33 | Graham Receipt of Seized Property | None |
| PX34 | 4/3/87 Ocif Report re Shortt Return of $67 to Evelyn Carr | None |
| PX35 | JD-CR-18 re Seizure of $1000 | None |
| PX36 | Possessed Property Receipt for $1,000 | None |
| PX37 | 12/4/85 Jordan Report re Interview with Peter Barrett | none |
| PX38 | 12/4/85 Zarzeski Report re Laurel Gardens surveillance | None |
| PX40 | 1/23/86 report re 12/5/85 seizure | None |

---

[2] Plaintiff's exhibits are not numbered sequentially because he has designated some, but not all, of the deposition exhibits and is preserving the same exhibit numbering to avoid confusion.

| | | |
|---|---|---|
| PX41 | 1/4/89 report re 12/2/85 Roma/Jordan photos | None |
| PX43 | 1/23/86 Jordan report re 12/8/85 seizure | None |
| PX46a-h | Photographs of NMPD Homicide Box and contents | None |
| PX50 | CSP Administrative Operations Manual Chapter 18 - Criminal investigation | Relevance, prejudice |
| PX51 | 12/2/85 McMahon report of 12/2/85 Columbo interview | Hearsay, prejudice |
| PX52 | Photo of victim (Crime Scene Photo No. 31) | None |
| PX53 | 12/4/85 Quartiero report of 12/3/85 Columbo interview | Hearsay, prejudice |
| PX54 | 12/6/85 Quartiero report re Donna Dacey + statement | Hearsay, prejudice |
| PX55 | Quartiero handwritten notes | None |
| PX59 | Quartiero handwritten notes | None |
| PX60 | Quartiero 12/11/85 report of 12/7/85 Columbo interview | None |
| PX63 | Evidence flow sheets for items 27 and 18 | None |
| PX66 | CSP Manual Chapter 20 - Field reporting | Relevance, prejudice |
| PX67 | CSP Manual Chapter 21 - Property | Relevance, prejudice |
| PX68 | 2/17/89 Memo re Open File Policy | None |
| PX73 | Cocchia interview transcript | None |
| PX74 | Shepack notes on Cocchia interview transcript | None |
| PX78 | 12/9/85 O'Mara report re divers | None |
| PX93 | 5/16/86 Ocif report of interview of Mark Kulesza | Relevance, hearsay |
| PX94 | 6/9/86 Ocif report of interview of Edward Chaffee | Relevance, hearsay |
| PX95 | 12/28/87 Ocif report of second Perugini interview | Hearsay, relevance, prejudice |
| PX96 | 12/8/87 Ocif report of first Perugini interview | Hearsay, relevance, prejudice |

| PX103 | 12/4/85 report re interview of George Burkhart | Hearsay |
|---|---|---|
| PX104 | 12/4/85 report re Robert Wassong interview | Hearsay |
| PX111 | 12/4/85 Lillis memo re fresh cuts and quarters | None |
| PX116 | 3-24-86 Ocif Report re VCR | None |
| PX119 | 7-14-88 Ocif Report re Cocchia Interview | None |
| PX128 | Crime Scene Photo Log | None |
| PX130 | 1-21-86 Ocif Report re VCR | None |
| PX144 | Division of State Police Criminalistics Lab Report, 2/7/86 | Relevance |
| PX179-01 through 179-81 | 81 crime scene photos listed in PX128 | None |
| PX182 | Transcript of State v. Birch (1989), with nonjury portions removed | None |
| PX183 | Pony Sneakers (Habeas Ex. 26) | None |
| PX184 | Subzero Work Boots (Habeas Ex. 28) | None |
| PX185 | Texas Steer Work Shoes (Habeas Ex. 29) | None |
| PX186 | Photo of bloody chevron footprint (Habeas Ex. 152) | None |
| PX187 | Photos of 3 bloody footprints (Habeas Ex. 153) | None |
| PX188 | Photo of bloody Vibram heel footprint (Habeas Ex. 154) | None |
| PX189 | Photo of bloody Vibram full footprint (Habeas Ex. 155) | None |
| PX190 | Known impressions of Vibram footprints (Habeas Ex. 156) | None |
| PX191 | Photo of bloody Vibram full footprint (Habeas Ex. 157) | None |
| PX192 | Heel exemplar (Habeas Ex. 158a) | Relevance |
| PX193 | Heel exemplar (Habeas Ex. 158b) | Relevance |
| PX194 | Heel exemplar (Habeas Ex. 158c) | Relevance |
| PX195 | Heel exemplar (Habeas Ex. 158d) | Relevance |
| PX196 | Heel exemplar (Habeas Ex. 158e) | Relevance |
| PX197 | Lab Report 7-1-08 (Habeas Ex. 34) | Relevance |
| PX198 | Lab Report 3-31-10 (Habeas Ex.35) | Relevance |
| PX199 | Lab Report 6-29-11 (Habeas Ex. 36) | Relevance |
| PX200 | Lab Report 5-7-12 (Habeas Ex. 37) | Relevance |
| PX201 | Lab Report 7-30-12 (Habeas Ex. 38) | Relevance |
| PX202 | Lab Report 8-27-12 (Habeas Ex. 39) | Relevance |

| PX203 | Lab Report 3-13-13 (Habeas Ex. 40) | Relevance |
|---|---|---|
| PX204 | Lab Report 7-31-13 (Habeas Ex. 41) | Relevance |
| PX205 | Lab Report 11-27-13 (Habeas Ex. 42) | Relevance |
| PX206 | Lab Report 4-7-14 (Habeas Ex. 43) | Relevance |
| PX207 | Lab Report 1-2-15 (Habeas Ex. 44) | Relevance |
| PX208 | Lab Report 10-29-15 (Habeas Ex. 45) | Relevance |
| PX209 | TrueAllele Report 11-9-15 (Habeas Ex. 159) | Relevance |
| PX210 | TrueAllele Validation Study (Habeas Ex. 221) | Relevance |
| PX211 | Connecticut State Police Casebook binders | Foundation.  Also, hearsay and relevance related to portions of the binders. |
| PX212 | Audio recording of 7/12/88 interview of Todd Cocchia | None |
| PX213 | Ocif report of 1/31/89 interview of Todd Cocchia | None |
| PX214 | Ocif report of 1/25/89 arrest of Ralph Birch | None |
| PX215 | McCafferty report of 1/18/89 interview of Todd Cocchia | None |
| PX216 | Ocif report of 7/6/88 interview of Ralph Birch | None |
| PX217 | December 21, 1988 letter from Assistant State's Attorney David Shepack | None |
| PX218 | Transcript of proceedings of July 10, 2020, *State v. Ralph Birch* | None |
| PX220 | Transcript of Testimony of Todd Cocchia at Hearing in Probable Cause, February 14, 1989, *State v. Ralph Birch* | None |
| PX221 | Photo of open dresser drawer with White Owl box | None |
| PX222 | Photo of open dresser drawer with White Owl box | None |
| PX223 | Photo of open dresser drawer with White Owl box | None |
| PX224 | Photo of top of stairs in David Henning's house | Relevance |
| PX225 | Photo of Shawn Henning's arrest | Relevance |
| PX226 | Photo of Shawn Henning's room | Relevance |
| PX227 | Photo of Shawn Henning's room | Relevance |
| PX228 | Photo of Ralph Birch with mother on release date | None |

| PX229 | Photo of Ralph Birch with Shawn Henning on Birch's release date | None |
|---|---|---|
| PX230 | Photo of exterior of David Henning's house | Relevance |
| PX231 | Photo of Ralph Birch at police station | None |
| PX232 | Calendar: November-December 1985 | None |
| PX233 | Lab Report 02-05-2010 (Habeas Ex. 17) | Relevance |
| PX234 | Lab Report 08-09-2011 (Habeas Ex. 19) | Relevance |
| PX235 | Lab Report 06-20-2013 (Habeas Ex. 23) | Relevance |
| PX236 | Lab Report 05-13-2011 (Habeas Ex. 18) | Relevance |
| PX237 | Lab Report 03-20-2014 (Habeas Ex. 24) | Relevance |
| PX238 | Lab Report 08-09-2011 (Habeas Ex. 19) | Relevance |
| PX239 | Continuation of Investigation Report, 1/30/86, DEFS000558 | None |

**For Defendants**

| Exhibit | Description | Objection |
|---|---|---|
| DX A | Cocchia interview audio recording | None |
| DX B | Cocchia interview transcript, CSP007195 - 007208 | None |
| DX C | Continuation of Investigation Report, 7/14/88, SAO122498 - 122498 | None |
| DX D | State's Attorney's Agreement with Cocchia | None |
| DX E | Officer Quartiero handwritten notes | None |
| DX F | Inventory of Property Seized without a Seach Warrant, 12/4/85 | None |
| DX G | Possessed Property Receipt, 12/4/85, BIRCH001877 | None |
| DX H | Photograph of Possessed Property Receipt in NMPD case file | |
| DX I | Receipt for Seized Property, 12/2/85, 3-16 Initial Disclosures – 000204 | None |
| DX J | Continuation of Investigation Report, Evidence Report, 12/2/85, 3-16 Initial Disclosures – 000236 | None |
| DX K | Return for And Inventory Property Seized on Search and Seizure Warrant, 12/2/85, 3-16 Initial Disclosures – 000013 | None |
| DX L | NMPD Department General Order D.2 Order 87-2, dated 1/1/1987, 001351 | None |
| DX M | Crime scene video (Ex. E to Jordan MSJ) | None  (without audio, agreed-upon portions only) |
| DX O | Continuation of Investigation Report, Photo Report, 1/9/86 | None |

| | | |
|---|---|---|
| DX P | 1985 new articles, CSP005770 – CSP005797<br>    a.  The New Milford Times, 12/5/1985, "Murder shocks New Milford" – CSP005773<br>    b.  The News-Times, 12/3/1985, "Police probing death of man" – CSP005784, CSP005779<br>    c.  Waterbury Republic, 12/3/1985, "Death Seen as Possible Homicide" – CSP005791, CSP005778<br>    d.  Waterbury Republic, 12/5/1985, "Police Comb Murder Site; burglary possible motive" – CSP005795<br>    e.  The News-Times, 12/5/1985, "Police widen hunt for leads in stabbing" – CSP005775<br>    f.  Waterbury American, 12/4/1985, "New Milford Slaying Linked to Burglary" – CSP005797<br>    g.  Waterbury American, 12/6/1985, "Probe widening in Carr slaying" – CSP005787<br>    h.  The New Milford Times, 12/12/1985, "Divers" – CSP005785 | Hearsay, relevance, foundation |
| DX R | Arrest Warrant – Ralph Birch | Hearsay, relevance in part, prejudice |
| DX U | Continuation of investigation report 12.16.1985 | None |
| DX W | Continuation of investigation report 1.14.1986 | None |
| DX X | 2.17.1989 Memo re Open File Policy | None |
| DX Y | 3.5.1987 letter from Watson to Evelyn Carr | None |
| DX Z | *Ralph Birch v. Commissioner of Correction*, 334 Conn. 37 (2019) | Hearsay, relevance, prejudice |

**12.    DEPOSITION TESTIMONY**

**For Plaintiffs:**

1.    John Roma: 8:6-13 (oath), 14:10-18:6, 30:16-31:21, 32:5-38:22, 40:15-43:4, 43:16-46:1, 50:12-51:2, 57:16-60:1, 63:6-65:7, 86-18-89:8.

2.    Brian Acker: 4:1-4 (oath), 9:4-22; 10:21-11:4; 12:15-18; 14:23-15:5; 15:20-24; 20:24-21:9; 57:11-58:2; 58:5-59:22; 62:10-63:24; 65:25-66:11; 86:25-89:4; 101:6-109:4; 111:20-112:11; 129:17-137:25; 139:9-140:22;142:1-149:13; 154:2-159:2; 205:12-209:4.

Plaintiffs object to Defendants' counter-designations of the following portions of Mr. Acker's deposition: 122:4 – 124:25 (hearsay, relevance); 140:22-141:12 (relevance, speculation, impermissible opinion under Fed. R. Evid. 701); 209:22-210:23 (relevance, speculation, impermissible opinion testimony under Fed. R. Evid. 701); 217:25-218:17 (relevance, speculation, impermissible opinion testimony under Fed. R. Evid. 701).

**For Defendants:**

Defendants object to the introduction of deposition testimony in lieu of live testimony. To the extent that deposition transcripts are allowed, Defendants object to the Plaintiffs' designated portions as follows and identify the following counter-designations for submission along with those portions to which Defendants do not object.

1.    John Roma

Objections: 34:20 – 38:22; 63:6 -65:7; 87:18 – 89:8

Counter-designations: 30:22 – 31:24; 44:13 – 45:5

2.    Brian Acker

Objections: 101:6 – 103-23; 137:12-25; 143:25 – 144:3; 144:23 – 145:5; 145:24 – 146:8; 147:7 – 148:9; 148:20-25; 149:8-13; 158:15-18; 158:23 – 159:2; 206:11-17; 108:22 – 209:4

Counter-designations: 9:4 – 15:14; 59:22 – 61:5; 63:24 – 65:24; 66:11 – 67:25;

70:15 – 71:21; 112:3-6; 122:4 – 124:25; 140:22 – 141:12; 209:22 – 210:23;

217:25 – 218:17

**13.    REQUESTS FOR JURY INSTRUCTIONS**

See separate filings.

**14.    ANTICIPATED EVIDENTIARY PROBLEMS**

**For Plaintiff:**  See motions *in limine*.

**For Defendants:**  See motions *in limine*.

**15.    PROPOSED FINDINGS AND CONCLUSIONS**

N/A

**16.    TRIAL TIME**

Plaintiff anticipates 5-6 trial days for his case-in-chief.

Defendants will cross examine Plaintiff's witnesses and anticipate another 4-5 trial days

for their case.

**17.    COURTROOM TECHNOLOGY**

The parties will use the existing courtroom technology and possibly will use a slide

projector and screen that they will provide. Plaintiff has submitted a technology request form by

email to the Courtroom Deputy.

**18.    FURTHER PROCEEDINGS**

The parties have filed a number of *in limine* motions and may file additional motions in

limine concurrent with this filing.

**19.    ELECTION FOR TRIAL BY MAGISTRATE JUDGE**

The parties prefer a trial before Judge Bolden.

Dated: February 5, 2025                              Respectfully submitted,


THE PLAINTIFF,                                       TOWN OF NEW
RALPH BIRCH                                          MILFORD,  STEVEN
                                                    JORDAN, and ROBERT
By:  /s/ David A. Lebowitz                           SANTORO AS
KAUFMAN LIEB LEBOWITZ                                ADMINISTRATOR OF THE
& FRICK LLP                                         ESTATE OF DAVID
David A. Lebowitz, *pro hac vice*                    SHORTT, DEFENDANTS
Douglas E. Lieb (ct31164)
Alyssa Isidoridy, *pro hac vice*                          /s/ Elliot B. Spector
18 E. 48th Street, Suite 802
New York, NY 10017                                  Elliot B. Spector (ct05278)
(212) 660-2332                                      Jeffrey O. McDonald (ct28195)
                                                    Forrest Noirot (ct31754)
KIRSCHBAUM LAW GROUP,                               Hassett & George, P.C.
LLC                                                 945 Hopmeadow Drive
Damon A. R. Kirschbaum (ct21216)                    Simsbury, CT 06070
935 Main Street, Level A                            Tel. No.: (860) 651-1333
Manchester, CT  06040                               Email: ebspector87@gmail.com
(860) 522-7000