UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RALPH BIRCH,

                Plaintiff,

-against-

TOWN OF NEW MILFORD et al.,

                Defendants.

No. 3:20-CV-1790 (VAB)

March 16, 2025

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PROPOSED REVISIONS TO THE DRAFT JURY CHARGE**

Pursuant to Federal Rule of Civil Procedure 49, Plaintiff respectfully submits the following points and authorities in support of his proposed revisions to the Court's draft jury charge, ECF No. 292.

**I. The Instruction on the "Deprivation of a Right" Element of the Section 1983 Cause of Action Should Be Revised to Omit Any Discussion of a General State of Mind Requirement and to Instead Incorporate the Elements of Each Specific Claim**

The current jury instruction incorrectly states that to prevail on any of his claims under § 1983, Plaintiff must prove that "Detective Shortt and Detective Jordan intentionally or recklessly deprived Mr. Birch of a federal right."[1] ECF No. 292 at 16. The charge goes on to state expressly that "Section 1983 . . . is not violated if Mr. Birch was injured only as a result of . . . negligence . . . ." Id. at 17. However, the Second Circuit has expressly rejected the proposition "that all claims under § 1983 require a mental state greater than negligence." *Brandon v. Kinter*, 938 F.3d 21, 38 (2d Cir. 2019). "To the

---

[1] Plaintiff also requests that the Court change this and similar conjunctive language in the charge to avoid incorrectly suggesting that Plaintiff must prove misconduct by both individual defendants in order to prevail against either of them.

1

contrary, the § 1983 statute 'contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right.'" Id. (quoting Daniels v. Williams, 474 U.S. 327, 330 (1986)). Accordingly, the Court should separately instruct the jury about the necessary state of mind element for each claim within its substantive instruction about the elements of that claim. Plaintiff respectfully suggests that the most logical point in the instructions to explain those elements is within the "Deprivation of a Right" section of the § 1983 charge, so as to avoid confusing the jury by suggesting that the deprivation of a right is some kind of separate showing that Plaintiff must make in addition to proving the substantive elements of each claim.

With respect to the state-of-mind element of Plaintiff's *Brady* claim against Defendant Jordan, "district courts in this Circuit confronted with this issue have reached different conclusions," with some courts requiring intentionality and others only deliberate indifference or reckless disregard. Birch v. Town of New Milford, No. 20 Civ. 1790 (VAB), 2023 WL 4684720, at *37 (D. Conn. July 21, 2023). However, given the existence of separate negligence claims against Defendant Jordan in the alternative, Plaintiff agrees that the most prudent course is to instruct the jury that intentional suppression[2] is required to find for Plaintiff on the *Brady* claim (as contemplated by both Plaintiff's original proposal and the Court's draft *Brady* charge). A separate instruction generically stating that Plaintiff must prove that "Detective Jordan intentionally *or recklessly* deprived Mr. Birch of a federal right," ECF No. 292 at 16 (emphasis added), would be inconsistent with that approach.

---

[2] As the current draft of the instructions correctly states, Plaintiff is not required to prove that Jordan acted with "specific intent or purpose to deprive [Plaintiff] of his rights," *see* ECF No. 292 at 16; what matters is "that *the non-disclosure* was intentional." See Bellamy v. City of New York, 914 F.3d 727, 751 n.23 (2d Cir. 2019) (emphasis added).

2

As to the claim for failure to intervene, Plaintiff objects to any instruction suggesting that the jury must find intentional or bad-faith misconduct by Shortt in order to hold his estate liable for failure to intervene. The jury will be appropriately instructed that to hold Shortt liable for failure to intervene, it must first find a primary constitutional violation. *See* Forney v. Forney, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015). The primary constitutional violation alleged is fabrication of evidence by Detective Ocif, which concerns deliberate conduct. *See* Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). But once the jury finds that such a fabrication occurred, it need not further find that Shortt's response was reckless or invidious in order to find his estate liable.

Rather, as the Court's draft charge correctly states, the jury need then only find that Shortt (1) "had a realistic opportunity to intervene and prevent the harm"; that (2) "a reasonable person in [Shortt's] position would know that [Mr. Birch's] constitutional rights were being violated"; and that (3) Short did not "take reasonable steps to intervene." Cotto v. City of Middletown, 158 F. Supp. 3d 67, 83 (D. Conn. 2016); accord ECF No. 292 at 19-20. Each of those three elements is determined by reference to objective reasonableness, without regard to the defendant's subjective state of mind. *See* Ricciuti, 124 F.3d at 129 (noting that liability for failure to intervene turns on whether it was "objectively unreasonable for [the defendant] to believe that his fellow officers' conduct did not violate [the plaintiff's] rights"); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (noting that "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer" is typically "an issue of fact for the jury"). None of the elements of failure to intervene require a finding of bad faith. Accordingly, the Court should not instruct the jury that it must find that Shortt

3

acted with any particular subjective intent in order to find liability for failure to intervene.

## II. The Court Should Rephrase Its Instruction Concerning the Materiality Element of Evidence Fabrication

The draft charge on fabrication of evidence states, in relevant part, that Plaintiff must prove "that the fabricated evidence was likely to influence a jury's decision." ECF No. 292 at 19. Given the potential for confusion in the context of this case, Plaintiff requests that the Court rephrase this language to make clear that Plaintiff need only prove that the fabricated evidence was "of a type likely to influence a finder of fact" or that the fabricated evidence "was material to Plaintiff's 1989 criminal case" (or some similar language). See Nnodimele v. Derienzo, No. 13 Civ. 3461, 2016 WL 3561708, at *6 (E.D.N.Y. June 27, 2016) (observing that an evidence fabrication claim requires "that the fabricated evidence was material, that is, that it would be likely to influence a jury's decision *if a jury were to consider it*" (emphasis added)).

As the Second Circuit has made clear, "the (perhaps imprecisely named) fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 250 (2d Cir. 2020) (emphasis in original). Because "a criminal defendant's right to a fair trial protects more than the fairness of the trial itself," id. at 249, Plaintiff can establish a violation of § 1983 by demonstrating that the fabrication tainted other stages of the criminal process, such as by showing that "the prosecutor's and magistrate's assessments of the strength of the case" were "influenced by fabricated evidence," Garnett v. Undercover Officer C0039, 838 F.3d 265, 277 (2d Cir. 2016). An instruction

4

focusing on the fabricated evidence's effect on the criminal jury would be unduly restrictive and confusing and inconsistent with the Second Circuit's decision in Frost.

### III. The Court Should Revise the Draft Instruction on the Materiality Element of Plaintiff's *Brady* Claim

The draft *Brady* instruction characterizes the third element of the claim as requiring Plaintiff to prove that "Detective Jordan's failure to disclose this evidence resulted in prejudice." ECF No. 292 at 20. While this formulation is appropriate in the context of the criminal cases cited in the Court's annotations, the "resulted in prejudice" framing is likely to cause confusion in the context of a civil jury charge that elsewhere contains separate instructions about the standard for finding causation of damages. *See* Kyles v. Whitley, 514 U.S. 419, 434 (1995) (noting that "a showing of materiality" for *Brady* purposes "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal").

Compounding this concern, the draft charge then states that "[e]vidence is prejudicial if it is material to Mr. Birch's guilt or punishment," citing criminal cases in support. ECF No. 292 at 21. Obviously, the jury here is not being called upon to decide Mr. Birch's guilt or punishment, and there is no allegation or evidence that the $1,000 was relevant to Mr. Birch's sentencing in 1989. Nor does Mr. Birch claim that any "evidence is prejudicial." Rather, his claim is that the *suppression* of the evidence proximately caused his damages.

In light of these concerns, Plaintiff respectfully requests that the Court instead instruct the jury that Plaintiff must prove the suppressed evidence was material, rather than that its suppression caused prejudice. The Court should then instruct the jury that that "information is material if there is a reasonable probability that, had the evidence

5

been disclosed to the defense, the result of the proceeding would have been different" and that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome" of Mr. Birch's 1989 criminal case. United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005) (citations and quotation marks omitted).[3] The "materiality" and "prejudice" formulations are legally synonymous. *See, e.g.*, United States v. Alorwornu, No. 23-CR-00013, 2024 WL 1050326, at *5 (D. Conn. Mar. 11, 2024) ("Under the prejudice or 'materiality' prong, courts ask if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (internal quotation marks omitted)). Using the materiality formulation here will allow the jury to separate the "reasonable probability of a different outcome" required to establish prejudice under *Brady* from the required showing of proximate causation of injury necessary to establish Jordan's liability for Plaintiff's damages.

     Plaintiff does not perceive a need for any "guilt or punishment" language. However, if the Court is inclined to include it, Plaintiff requests that it do so by incorporating that phrase into the language proposed above, as follows: "And third, Mr. Birch must show that the suppressed evidence was material. Information is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a

---

[3] This formulation would necessitate minor revisions to the current draft charge, which states: "Evidence is material if there is a reasonable probability that if the evidence was disclosed, it would have changed the outcome of the case, **or** where the suppressed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ECF No. 292 at 21 (emphasis added). Plaintiff respectfully submits that the "undermine confidence" formulation is better understood as a gloss on the required showing of a reasonable probability of a different outcome, rather than an alternative way of proving materiality.

probability sufficient to undermine confidence in the outcome of Mr. Birch's 1989 criminal trial [with respect to Mr. Birch's guilt or punishment]."

Finally, Plaintiff requests that the Court specifically instruct the jury that Plaintiff "'need not demonstrate that after discounting the inculpatory evidence [at his 1989 criminal trial] in light of the undisclosed evidence, there would not have been enough left to convict.'" Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) (quoting Kyles, 514 U.S. at 434). In their cross-examination of Mr. Birch, Defendants relied extensively on a recitation of testimony presented at the 1989 criminal trial. In this context, the jury should be instructed that the presentation of other evidence by the prosecution in 1989 does not perforce negate Plaintiff's *Brady* claim. See Schermerhorn v. Loc. 100, Transp. Workers Union of Am., 91 F.3d 316, 322 (2d Cir. 1996) ("A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law.").

## IV. The Court Should Not Instruct on Qualified Immunity

The draft charge contains an annotation stating that "the Court will consider whether additional language to the jury instructions should be provided . . . related to the affirmative defense of quality immunity as to both of Mr. Birch's federal claims." ECF No. 292 at 21. Plaintiff objects to the inclusion of any legal instruction concerning quality immunity. Any factual questions necessary to resolve Defendants' claim to qualified immunity should be decided by the jury in response to special interrogatories, which are addressed separately in Plaintiff's submission concerning the draft verdict form. "Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is" a legal decision "to be made by the court." Zellner v.

7

Summerlin, 494 F.3d 344, 368 (2d Cir. 2007). There is therefore no reason to instruct the jury about qualified immunity, and doing so would risk confusing the jury and/or creating perverse incentives to reach an improper compromise verdict. *See* Stephenson v. Doe, 332 F.3d 68, 80 & n.15 (2d Cir. 2003).

## V. The Negligence Charge Should Be Revised to Conform to the Court's Pretrial Ruling Precluding the Defense of Governmental Immunity on Plaintiff's Statutory Negligence Claims

The draft charge states that "[t]here are three negligence claims at issue here, common-law negligence, statutory negligence, and negligent infliction of emotional distress," and directs the jury to consider governmental immunity "[b]efore discussing any of them." ECF No. 292 at 22. However, with respect to the statutory negligence claim, the Court ruled *in limine* that "if the jury rules in Mr. Birch's favor on this claim against Detective Jordan, he cannot avoid liability through claiming governmental immunity." Birch v. Town of New Milford, No. 3:20 Civ. 01790 (VAB), 2025 WL 289205, at *17 (D. Conn. Jan. 24, 2025). The charge should accordingly be revised to clarify that the jury should only consider governmental immunity with respect to the common-law negligence claims.

## VI. The Court Should Revise the Common-Law Negligence Instruction on Causation to Omit the Decontextualized Drafter Commentary

The draft common-law negligence instruction appears to have inadvertently included a portion of the "Notes" section from Connecticut Judicial Branch Civil Jury Instruction 3.1-2. The sentence on page 27 beginning "A superseding cause, by contrast . . ." is the second paragraph of the commentary to the model instruction and is included there for the purpose of *distinguishing* the concept of superseding cause, which Instruction 3.1-2 does *not* address, from that of "supervening cause," which is

8

discussed (without using the term of art) in the substance of the Instruction. *See* Conn. Jud. Branch Civil Jury Instr. 3-1.2 at 91–92, available *at* https://jud.ct.gov/Ji/Civil/Civil.pdf. The Connecticut Judicial Branch describes these Notes as "practice tips for using and adapting the instructions," and does not contemplate them being read to jurors. Id. In any event, including this language is likely to confuse the jury by defining the term "superseding cause" out of context and "by contrast" to another concept that the charge does not specify.

More fundamentally, the draft charge does not include the actual substantive instruction on superseding cause, *see* id. Instr. 3-1.5, and there would be no basis in the evidence to do so. *See Snell v. Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 753-54 (2019). Accordingly, this sentence should be removed.

## VII. The Court Should Include the Concept of Lost Liberty in Its Compensatory Damages Instruction

The draft charge concerning compensatory damages correctly states that Plaintiff seeks non-economic compensatory damages "for such things as physical pain and suffering, mental and emotional pain and suffering, and loss or diminution of the ability to enjoy life's pleasures"; a similar list of damages categories appears in the next paragraph. ECF No. 292 at 33. However, the list does not include the concept of lost liberty. As the Second Circuit has held, "[t]he damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty." Kerman v. City of New York, 374 F.3d 93, 125–26 (2d Cir. 2004). In order to avoid incorrectly implying that loss of liberty is not among the

9

categories of noneconomic damages the jury may consider and/or suggesting that it is subsumed in the category of emotional distress, Plaintiff requests that the Court add the phrase "loss of liberty" each time such a list of categories appears in the charge.

### VIII. The Court Should Not Instruct on Nominal or Punitive Damages

Plaintiff has elected to withdraw his prayer for punitive damages. Moreover, Plaintiff respectfully submits that he "should be allowed to determine whether to seek both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an outcome in his case based on his showing of proximately caused actual injury." Vilkhu v. City of New York, No. 06 Civ. 2095, 2009 WL 537495, at *6 (E.D.N.Y. Mar. 3, 2009). As "it is plaintiff's prerogative to request or to waive a nominal damages charge," id. at *7 n.7, Plaintiff respectfully requests that the Court remove any reference to nominal damages from the charge.

### IX. The Court Should Give an Instruction on Plaintiff's Fifth Amendment Right Against Self-Incrimination

Because Defendants elicited during cross-examination that Plaintiff did not testify in his own defense at his 1989 criminal trial, the jury should be instructed not to draw any unfavorable inferences based on that decision. Plaintiff proposes the following adaptation of Connecticut Judicial Branch Criminal Jury Instruction 2.2-4: "You heard Mr. Birch testify that he did not testify at his 1989 criminal trial. An accused person has the option to testify or not to testify at the trial. Mr. Birch was under no obligation to testify. He had a constitutional right not to testify. You must draw no unfavorable inferences from his choice not to testify at this criminal trial 1989."

Dated:     March 16, 2025              THE PLAINTIFF,
                                       RALPH BIRCH

                                       By: /s/ David A. Lebowitz

KAUFMAN LIEB LEBOWITZ
   & FRICK LLP
David A. Lebowitz, *pro hac vice*
Douglas E. Lieb (ct31164)
Alyssa Isidoridy, *pro hac vice*
18 E. 48th Street, Suite 802
New York, NY 10017
(212) 660-2332

KIRSCHBAUM LAW GROUP,
   LLC
Damon A. R. Kirschbaum (ct21216)
935 Main Street, Level A
Manchester, CT  06040
(860) 522-7000