## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RALPH BIRCH, | : | 3:20-cv-01790-VAB |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF NEW MILFORD et al., | : | |
| | : | |
| *Defendants* | : | |
| | : | April 15, 2025 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW, AND FOR AN OFFSET OF THE JURY VERDICT

The Defendants, Town of New Milford and Robert Santoro, as Administrator of the Estate of David Shortt (collectively, the "Defendants"), file this motion seeking judgment as a matter of law, or for an offset of the jury's verdict. See Fed. R. Civ. Proc. 50; Fed. R. Civ. Proc. 59 and C.G.S. § 54-102uu. The Court should grant the Defendants' motion – in whole or in part – and issue appropriate relief as detailed herein.

### I.    BACKGROUND, FACTS AND PROCEDURAL HISTORY

#### A.  The Plaintiff's Claims.

By Complaint, dated December 2, 2020, Plaintiff, Ralph Birch (the "Plaintiff" or "Mr. Birch") alleged that he was wrongfully incarcerated for the murder of Everett Carr and alleged claims of misconduct against the following Defendants: Town of New Milford; Andrew Ocif;

1

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

Scott O'Mara; John Mucherino; Steven Jordan; Joseph Quartiero; Michael Graham; Brian Acker; and Henry Lee. (Doc. 1). By First Amended Complaint, dated April 16, 2021 (Doc. 54), the Plaintiff amended his Complaint, including claims against Defendant, Robert Santoro as administrator for the Estate of David Shortt (hereinafter "David Shortt"). (Doc. 54). The Plaintiff alleged that the investigation of the murder of Everett Car had reached a dead end, and "knowing that they lacked any basis for an arrest, and facing increased pressure, Defendants set out to 'solve' the Carr homicide by manufacturing the evidence they were missing. Their targets were Ricky Birch and Shawn Henning." (Amended Complaint, ¶ 218) (Doc. 54). The Plaintiff alleged that "Defendants sought to bolster the invented case against Ricky by fabricating a statement from another informant, Todd Cocchia." (Amended Complaint, ¶ 249) (Doc. 54). The Plaintiff alleged the following claims related to the alleged fabrication of Todd Cocchia's statement.

255.    In July 1988, Ocif and NMPD Detective David Shortt traveled to Norfolk, Virginia to speak with Cocchia.

256.    The point of having Shortt travel with Ocif was for Shortt to observe, participate in, and listen to the interview with Cocchia. Shortt did in fact participate in the interview.

257.    At the beginning of the interview, Ocif told Cocchia, in sum and substance, that the prosecutors in Connecticut could ensure that he did not serve time in Connecticut if he provided helpful information.

258.    Cocchia then claimed that Ricky Birch had spontaneously confessed his participation in a murder while the two were on the bus to Virginia together.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

259.    It quickly became obvious to Ocif and Shortt that Cocchia's claim was bunk. Cocchia claimed that Ricky had confessed to killing a man during the daytime by himself. Of course, Everett Carr was killed at night by multiple assailants.

260.    Ocif and Shortt should have simply ignored Cocchia's transparently unreliable and self-serving claim, which they knew to be false.

261.    Ocif even commented during the interview that half of what Cocchia was saying was inaccurate.

262.    Instead, Ocif, with Shortt's acquiescence, decided to turn it into something he could use to pin the Carr homicide on Ricky Birch. As Ocif put it, "half a loaf of bread is better than none."

263.    During the interview, Ocif falsely told Cocchia, in sum and substance, that the police had ample evidence against Ricky Birch and that others had previously told police what Cocchia was now telling them.

264.    Ocif fixed Cocchia's numerous inaccurate statements about how the Carr murder occurred.

265.    Ocif provided Cocchia with additional details about the crime that Cocchia did not know, including that the homicide occurred at night, that the murder weapon was a knife, that the knife had come from the kitchen, that there was more than one assailant, and that the victim was old.

266.    Perhaps most astonishingly, Ocif *gave Cocchia the police file* on the Carr homicide so that Cocchia could familiarize himself with the materials it contained.

267.    Ocif later testified that, because Cocchia "didn't have one hundred percent [of the] details" about the Carr homicide, "we had to provide a little more information about what happened."

3

268.     Ocif took these actions for the purpose of fabricating a statement by Cocchia that he could use against Ricky Birch—a statement that could only exist if Ocif invented it.

269.     At no point did Shortt, who was present and paying attention throughout the interview, intervene to stop the fabrication from occurring.

(Amended Complaint, ¶¶ 255-269) (Doc. 54).

The Plaintiff alleged that "only by fabricating evidence supporting their incredible 'burglary-gone-wrong' theory and suppressing evidence that undermine it were Defendants able to secure Ricky Birch's conviction."  (Amended Complaint, ¶318) (Doc. 54).  The Plaintiff identified five basic parts to "[t]he State's extremely weak trial case against Ricky", including "the fabricated jailhouse informant testimony" of Todd Cocchia.  (Amended Complaint, ¶¶ 323, 331) (Doc. 54).

In his First Count, the Plaintiff pursued a claim under 42 U.S.C. § 1983 for fabrication of evidence in violation of the right to a fair trial against Defendants Ocif, O'Mara, Mucherino, Acker, Lee, and David Shortt.  (Amended Complaint, ¶¶ 380–388) (Doc. 54).[1]  That cause of action repeated and realleges all prior paragraphs, including the allegations contained within ¶¶255-269 related to the Cocchia interview.  (Amended Complaint, ¶ 380) (Doc. 54).  Within the

_____

[1] In his Second Count, the Plaintiff alleged a violation of 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth Amendment against Defendants Ocif, Acker, Mucherino and O'Mara.  (Amended Complaint, ¶¶ 389-396) (Doc. 54).

4

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

First Count, the Plaintiff alleged that Defendants "fabricated evidence against Plaintiff, and/or failed to intervene to prevent the fabrication of evidence against Plaintiff despite having knowledge of the fabrication and a reasonable opportunity to intervene." (Amended Complaint, ¶ 382) (Doc. 54). More specifically, "[t]he fabricated evidence includes but is not limited to the invented self-inculpatory 'bathroom' statement, the false secondary confessions attributed to Perugini and Cocchia, and the fabricated positive test for blood on the bathroom towel." (Amended Complaint, ¶ 383) (Doc. 54).

In the Fourth Count, the Plaintiff alleged claims of negligence against Defendants Jordan and David Shortt, alleging that "Jordan and Shortt owed Plaintiff a duty to exercise reasonable care in their investigation of crimes, to reasonably pursue and disclose exculpatory evidence, and to refrain from fabricating evidence and pursing criminal prosecutions without sufficient basis." (Amended Complaint, ¶ 406) (Doc. 54).[2]

---

[2] In the Second Count, the Plaintiff alleged a violation of 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth Amendment against Defendants Ocif, Acker, Mucherino and O'Mara. (Amended Complaint, ¶ 389-396) (Doc. 54). In the Third Count, the Plaintiff alleged a violation of 42 U.S.C. § 1983 for suppression of material favorable evidence / *Brady v. Maryland* against Defendants Graham, Jordan, Quartiero, Ocif, Acker and Shortt. In the Fifth Count, the Plaintiff alleged Negligent Infliction of Emotional Distress against Defendants Jordan and David Shortt, which claims were withdrawn during the trial. In the Sixth Count, the Plaintiff alleged indemnification against the Town of New Milford and in the Seventh Count, the Plaintiff sought a direct action against the Town of New Milford pursuant to C.G.S. § 52-557n. (Doc. 54).

5

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

### B.  Settlement of State Claims

Pursuant to a Settlement and Release Agreement, dated September 19, 2023 (the "Settlement Agreement"), the Plaintiff settled all claims against the State of Connecticut, Andrew Ocif, Scott O'Mara, John Mucherino, Michael Graham, Joseph Quartiero, Brian Acker, Henry Lee and the Estate of H. Patrick McCafferty (the "State Defendants") in exchange for payment of $12,600,000.00. (Attached as Exhibit A, is the Declaration of Forrest Noirot (hereinafter referred to as "Noirot Declaration"), ¶¶ 3–4); (Attached to the Noirot Declaration, as Exhibit B, is a true and accurate copy of the Settlement Agreement).  The Plaintiff did not resolve those claims against Defendants Steven Jordan and David Shortt, which proceeded to trial beginning March 10, 2025.

### C.  Evidence at Trial

The parties tried the case to a jury over the course of seven days, March 10 through March 19, 2025.  The following witnesses testified at trial, Plaintiff Ralph Birch, Shawn Henning, former State Police sergeant Brian Acker (by deposition), former State Police detective Michael Graham, Defendant and former New Milford police detective Steven Jordan, former State Police detective Andrew Ocif, former New Milford Police Department captain Norbert Lillis, former New Milford Police Department detective John Roma (by deposition), former State Police detective Joseph Quartiero, Plaintiff's expert William Bodziak, non-retained expert Lucinda Lopez-Phelan, non-retained expert Christine Roy and former prosecutor attorney David Shepack

**6**

(by deposition). The parties submitted one joint exhibit consisting of factual stipulations and approximately 190 exhibits for the jury's consideration.

Detective Ocif was the only witness that testified regarding the July 12, 1988, interview with Todd Cocchia. Neither David Shortt, nor Detective Charles Squires testified at trial regarding the Cocchia interview, as both men are deceased. The parties stipulated at trial that David Shortt died on November 10, 2019, and that Detective Charles Squires died on October 2, 2017. (Joint Ex. 1). Todd Cocchia did not testify at trial.

Detective Ocif testified that he learned that Todd Cocchia, who was being held in Virginia, had reached out to the New Milford Police Department with information regarding Ralph Birch. Detective Ocif did not know what information Todd Cocchia had regarding Ralph Birch when he drove to Virgina with David Shortt to meet Todd Cocchia. He testified that when he arrived at the police department to interview Todd Cocchia, Cocchia was initially unwilling to give a statement. After speaking with Cocchia for approximately 5 minutes, Detective Ocif got up to leave, at which point Cocchia indicated that he would give a statement about what he knew. At that point, Detective Ocif, David Shortt and Charles Squires accompanied Cocchia into an interview room. Detective Ocif testified that he did not bring any file materials with him to the interview and there was no evidence presented to the jury regarding any claim that Detective Ocif shared information from his file with Cocchia. Upon entering the interview room, Detective Ocif turned on his tape recorder, which created an audio recording of the complete

**7**

interview, which audio recording was later transcribed. Both the audio recording (DX-A) and the interview transcript (DX-B) were before the jury.[3]

The interview transcript (DX-B) was repeatedly shown to the jury during Detective Ocif's testimony and during both the Plaintiff and the Defendants' closing. Initially, on page one of the interview transcript, Cocchia asks Detective Ocif about assurances in exchange for a statement, and nothing was agreed upon. (DX-B). Beginning on page two of the transcribed statement, Cocchia volunteers information that was purportedly relayed to him by Ralph Birch, stating as follows:

Cocchia:      Alls I got is we were on our way here, and –

Ocif:         Who's we?

Cocchia:      Me and Rick Birch were on our way here

Ocif:         Rick Birch ok.

Cocchia:      And I said oh I was in, you know a whole shit load of trouble I was gonna have to do my suspended time for leaving Connecticut and (inaudible) You know, I figure you know, complaining, I was bitching to him. And he said, what're you worrying about, he says you know I got five years to go back to and then like there was silence for a couple minutes, and he said plus some. You know and I said what. **And he, he told me about way back he did a burglary and there was a man in the house and he killed him.** And at first I wasn't even sure if he was serious or not, come on, he said seriously. **He said he had been doing burglaries in the neighborhood for a while, you know, and the general area I think it was in New Milford, he didn't give any specific days and**

---

[3] The Defendants' Trial Exhibits are referred to as "DX" followed by the letter designation that it was offered at trial. Similarly, the Plaintiff's trial exhibits are referred to as "PX" followed by the number under which it was offered at trial.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

**times you know, but he told me that there was a man in the house and he stabbed
him.  And he said the man died.**

(emphasis added) (DX-B, p. 2).

Both the audio recording, and the written transcript of the Cocchia interview, make clear
that Detective Ocif did not provide any information to Cocchia regarding the murder of Everett
Carr prior to the excerpt above.  (DX-B, p. 2).  There was no evidence presented at trial indicating
that Detective Ocif provided Cocchia with information regarding the murder of Everett Carr prior
to Cocchia making the statements contained in the above excerpt.  The Plaintiff's counsel
highlighted various portions of the Cocchia interview in which it was suggested that Detective
Ocif acted improperly by providing information to Cocchia.[4]  However, prior to Detective Ocif
providing any information to Cocchia about the murder, Cocchia had already relayed Birch's
confession, that Birch told Cocchia that he had stabbed a man with a knife during a burglary in
New Milford.  (DX-B p. 2).  Those facts are undisputed and are contained within the transcript
(DX-B) and the audio recording (DX-A).

Months later, Todd Cocchia provided a written statement on January 18, 1989, relaying
Birch's confession to him that Birch killed a man with a knife during a burglary in New Milford.
(DX-N).  Prior to testifying at the criminal trial of Ralph Birch, Cocchia executed two Letters of

---

[4] The Plaintiff highlighted Detective Ocif's use of "old man" (DX-B, beginning on p. 3), that Ocif provided
information about what the perpetrators took out of the house (DX-B p. 4), that Cocchia said it was daytime (DX-
B, p. 7) and that Cocchia indicated that Birch was alone (DX-B, p. 7).

9

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

Agreement, swearing to tell truth and truthfully cooperate, and that he has been advised of the penalties for perjury and understands that he may be subject to prosecution for perjury for any false statements.  (DX-D).

The Plaintiff was arrested on January 25, 1989, for the murder of Everett Carr. (PX-214). In June of 1989, he was convicted of felony murder and burglary.  (PX-182).  On June 14, 2019, his conviction was overturned by the Supreme Court of Connecticut.  (Amended Complaint, ¶ 358). (Doc. 54)

### D.  Verdict

The jury began deliberating on March 18, 2025, following closing arguments.  The jury issued its verdict on March 19, 2025.  (Doc. 304).  In its verdict, the jury found for Steven Joran on all issues.  (Doc. 304).  The jury found for the Estate of David Shortt on the Plaintiff's 42 U.S.C. § 1983 claim, specifically finding that the Plaintiff did not prove by a preponderance of the evidence that David Shortt violated the Plaintiff's right to a fair trial by failing to intervene to prevent him from being deprived of liberty based upon fabrication of evidence.  (Doc. 304). On the Plaintiff's negligence claim, the jury found that the harm likely to be caused to the Plaintiff by David Shortt's actions or inactions was imminent and apparent to David Shortt.  (Doc. 304). The jury found that the Plaintiff proved by a preponderance of the evidence that David Shortt is liable for common law negligence against the Plaintiff, and the jury awarded compensatory damages in the amount of $5,700,000.00.  (Doc. 304).

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

### E. Judgment

The Court entered judgment in this case on March 28, 2025.[5]  There, the Court confirmed its order granting the stipulation of dismissal as to Defendants Andrew Ocif; Scott O'Mara; John Mucherino; Paul V. Lioon, as Administrator for the Estate of H. Patrick McCafferty; Joseph Quartiero; Michael Graham; Brian Acker; and Henry Lee.  See Judgment (Doc. 311).  In its judgment, the Court also entered judgment in money damages for the Plaintiff against Robert Santoro as Administrator of the Estate David Shortt and the Town of New Milford in the amount of $7,659,269.00, after adding Offer of Compromise interest.  The Court confirmed that the jury returned a verdict in favor of Steven Jordan on all counts.  (Doc. 311).

## II.    LEGAL ARGUMENT

### A. Rule 50 – Judgment as a Matter of Law

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. *See* Fed. R. Civ. P. 50. The standard under Rule 50 is the same as that for summary judgment: A court should grant a Rule 50 motion where "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *This Is Me, Inc.*

---

[5] The filing of the Defendants' post-trial motion is within 28 days of both the entry of judgment and of the Court's dismissing the jury.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

*v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998). In deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted). In short, the Court cannot "substitute its judgment for that of the jury." *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted). Rather, judgment as a matter of law may only be granted if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. *Galdieri– Ambrosini*, 136 F.3d at 289 (quoting *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1154 (2d Cir. 1994))(quotation marks omitted); *see also Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir. 1997). The test on a Rule 50(b) motion is not the strength or weakness of the evidence, but whether the evidence presented was such that a "reasonable juror would have been compelled to accept the view of the moving party." *Densberger v. United Technologies Corp.*, 125 F. Supp. 2d 585, 590 (D. Conn. 2000) (citing *This Is Me Inc.*, 157 F.3d at 142).

The Defendants moved for judgment under Rule 50 on all claims after the Plaintiff rested and before the case went to the jury. The Court denied the Defendants' motion.

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

1. **No Reasonable Jury Could Find for The Plaintiff; No Reasonable Jury Could Find That Andrew Ocif Had Fabricated Evidence, And That David Shortt Was Aware That Andrew Ocif Had Fabricated Evidence.**

The jury was instructed that "Mr. Birch claims that a police officer fabricated statements by Todd Cocchia that incriminated Mr. Birch in the murder of Everett Carr, and that Detective Shortt failed to intervene to prevent the fabricated evidence from causing Mr. Birch to suffer a deprivation of liberty." (Doc. 303).

The jury was further instructed that:

in order to prove his failure to intervene in the fabrication of evidence claim, Mr. Birch needs to prove two separate things by a preponderance of the evidence.

First, Mr. Birch needs to prove that there was fabrication of evidence by another officer.

And second, Mr. Birch must prove that Detective Shortt failed to intervene to prevent fabricated evidence from causing Mr. Birch to suffer a deprivation of liberty.

(Doc. 303, p. 18).

"In order to prove that an officer fabricated evidence, Mr. Birch must prove each of the following five elements by a preponderance of the evidence. First, that the officer accused of fabricating evidence was an investigating official. Second, that the officer did fabricate evidence. Third, that the fabricated evidence was likely to influence a jury's decision, if the evidence was presented to a jury. Fourth, that the information was forwarded to prosecutors. And fifth, that Mr. Birch suffered a deprivation of liberty as a result." (Doc. 303, pp. 18–19); See also *Ashley v. City*

13

*of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)); *Barnes v. City of New York*, 68 Fed.4th 123, 128 (2d Cir. 2023); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). "[T]o succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must [therefore] prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." (Citations omitted.) *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021). "The second element of a fair trial claim based on fabricated evidence requires a plaintiff to prove that a defendant's use of inaccurate information was 'knowing, as opposed to mistaken.' *Barnes*, 68 F.4th at 129; *see also Garnett*, 838 F.3d at 280 (explaining that 'an arrestee must prove by a preponderance of the evidence that the officer *created* false information' (emphasis added))." *Davis-Guider v. City of Troy*, Docket No. 23-589, 2024 U.S. App. LEXIS 32451, at *7 (2d Cir. Dec. 23, 2024)

A fabrication claim against an officer differs significantly from a claim that the officer used improper methods to obtain evidence. "Coerced testimony is testimony that a witness is forced by improper means to give; the testimony may be true or false. Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) (quoting *Fields v. Wharrie*, 740 F.3d

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

1107, 1110 (7th Cir. 2014)); see also *Anderson v. City of Rockford*, 932 F.3d 494, 510-11 (7th

Cir. 2019). Stated differently, it is one thing for a detective to use improper tactics to pressure a

witness to provide a statement that may be true and the witness believes to be true. It is another

to use such tactics to force a witness to provide a statement that is false and known to be false by

both the detective and the witness. Only the latter provides a basis for a fabrication claim.

Thus, to establish the fabrication claim, the Plaintiff was required to first prove that State

Police Detective Ocif manufactured Todd Cocchia's testimony knowing the Plaintiff, Ricky

Birch, never made such a confession to Cocchia.

"In order to prove that Detective Shortt failed to intervene, Mr. Birch [was required to]

prove each of the following three elements by a preponderance of the evidence. First, that

Detective Shortt had a realistic opportunity to intervene and prevent the harm. Second, that a

reasonable person in Detective Shortt's position would know that Mr. Birch's rights were being

violated. And third, that Detective Shortt did not take reasonable steps to intervene." (Doc. 303,

p. 19); *see also Jackson v. Nassau County*, 552 F. Sup. 3d 350, 383 (E.D.N.Y. 2021).

As the Court has previously stated, "The affirmative duty to intervene in a constitutional

violation is triggered when the observing officer knows or 'has reason to know' that a

constitutional violation is afoot, and the officer has a 'realistic opportunity to intervene' but fails

to do so." *Birch v. Town of New Milford*, Docket No. 3:20-cv-1790 (VAB), 2023 U.S. Dist.

LEXIS 125836, at *54-55 (D. Conn. July 21, 2023) (quoting *Anderson v. Branen*, 17 F.3d 552,

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

557 (2d Cir. 1994)). Thus, the Plaintiff was required to prove that Detective Shortt knew or had reason to know that State Police Detective Ocif fabricated evidence by manufacturing Todd Cocchia's testimony, knowing the Plaintiff never made such a confession to Todd Cocchia.

Uncontroverted evidence presented at trial showed that on July 6, 1988, Todd Cocchia informed Det. Charles Squires of the Norfolk, Virginia police department that he wanted to talk to Connecticut police about a murder that Ralph Birch was involved in. (DX-C). Det. Ocif testified that before he met Cocchia in Norfolk, he had had no communication with Cocchia. Ocif testified when they met, they spoke for about five or ten minutes outside the interview room about assurances Cocchia wanted. The recorded interview and transcript (DX-A, DX-B) showed that a brief conversation about assurances took place in the interview room and before any facts about the case were mentioned or substantive questions were asked, Cocchia relates Birch's confession on the bus to Norfolk where he states Birch, "told me about way back he did a burglary and there was a man in the house and he killed him." . . . "he told me that there was a man in the house and he stabbed him. And he said the man died." (DX-B page 2) This was the incriminating confession that Shortt would have reasonably believed could likely influence a jury. But there was no evidence presented to support a finding that Shortt would have had any reason to believe the confession statement was false or that Ocif, less than 15 minutes into their meeting had said or done anything to cause Cocchia to make that statement. In other words, Ocif did not fabricate

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

Cocchia's initial statement that Birch told Cocchia that Birch had killed a man with a knife during a burglary in New Milford. That statement was given before Ocif said or did anything.

After the confession statement, Ocif did say several times that the victim was old before Cocchia commented about an incident at a motel when police arrived outside and Birch freaked out and said, "you don't have a murder to worry about." (DX-B page 10). On page 12 of the transcript Ocif does inform Cocchia that the crime occurred at night and "he was with someone else." (DX-B). However, no incriminating statement was made after page 10. As stated above, Ocif did *not* fabricate Cocchia's initial statement regarding Birch's confession. Based on the recording, transcript and testimony there was insufficient evidence presented at trial to support a finding that during the interview of July 12, 1988, that a police officer fabricated statements by Todd Cocchia that incriminated Mr. Birch in the murder of Everett Carr, and that Detective Shortt would have known he had a duty to intervene but failed to intervene to prevent the fabricated evidence from causing Mr. Birch to suffer a deprivation of liberty.

The jury requested a review of Detective Ocif's video deposition that was conducted on February 15, 2015. The deposition took place 27 years after the Norfolk interview and after the habeas where Cocchia recanted his account of Birch's confession. In the video Det. Ocif stated Cocchia "lied, he lied a lot." He did not testify about when or what he lied about. The jury could have drawn an inference that Ocif believed Cocchia lied during the interview or at the habeas hearing. Presumably they chose to believe Ocif's testimony about his personal belief that Cocchia

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

lied pertaining to the interview. Nevertheless, there was no evidence Ocif communicated this personal belief to Det. Shortt.

If the jury drew an additional inference that he may have communicated this personal belief, there was no evidence as to when or what may have been communicated. There was no evidence that Det. Shortt shared this belief. There was no evidence that Shortt would have known Cocchia's statement concerning the confession on the bus was in fact false. There was no evidence presented at trial that Ocif did or said anything that would cause Cocchia to fabricate the confession. On the contrary the evidence presented showed Cocchia summoned Connecticut police through Det. Squires to provide information about a murder Birch was involved in. A reasonable officer in Shortt's position, hearing the unsolicited bus confession information would have reasonably believed the confession was the reason they were summoned by Cocchia to talk to him.

The recording, transcript and handwritten statement by Cocchia were forwarded to the State's Attorney. Assuming the jury concluded that Ocif should not have forwarded the recording and transcript to the prosecutor believing Cocchia was lying is insufficient to support the necessary element of fabrication claim that the officer forwards false information. Perhaps the jury misapprehended the legal duty of an officer to provide witness statements to prosecutors. A police officer cannot legally choose to withhold a witness statement or modify such statement

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

because he personally believes some parts of the statement are factually incorrect or the witness is not credible. An officer must submit the statement as provided by the witness.

The Court instructed the jury, "Mr. Birch needs to prove that there was fabrication of evidence by another officer." The jury's verdict cannot stand on Det. Ocif's personal belief that Cocchia lied. The presumed fabrication by Cocchia is insufficient to support a fabrication claim—given that the jury found that Shortt did not violate Mr. Birch's right to a fair trial by failing to intervene. (Doc. 303). The evidence must prove that an officer, in this case, Ocif, caused Cocchia to fabricate the confession information. There was insufficient evidence to prove Ocif fabricated the confession or caused Cocchia to do so, as evidenced by the Jury's verdict.

Second, there was insufficient evidence presented at trial that a reasonable person in Detective Shortt's position would know that Mr. Birch's rights were being violated. Given the nature of the interview an officer witnessing the interview would not have known that Cocchia's account of the confession was false or that Ocif was causing Cocchia to fabricate Birch's confession. Nor would Shortt have known Cocchia was fabricating the confession after the interview merely because Ocif may have believed Cocchia was untruthful. Absent evidence that Shortt knew Cocchia was untruthful, specifically regarding the incriminating confession and that Ocif caused him to fabricate the confession Shortt would have no duty to intervene.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

**2. No Reasonable Jury Could Find That Harm Likely to Be Caused to The Plaintiff by David Shortt's Actions or Inactions Was Imminent and Apparent to David Shortt Such as To Provide an Exception to Governmental Immunity.**

The Plaintiff still failed to establish that the "identifiable person-imminent harm" exception to governmental immunity applied to the Plaintiff's negligence claim. The alleged harm that Mr. Birch suffered was neither imminent, nor apparent to Detective Shortt at the time that Detective Ocif interviewed Todd Cocchia. Therefore, the negligence claim should be barred by governmental immunity.

Under Connecticut law, "the test to determine whether a municipal employee is entitled to governmental immunity for discretionary acts is distinct from the federal inquiry and requires separate consideration." *Fleming v. City of Bridgeport*, 284 Conn. 502, 531, 935 A.2d 126 (2007). "Put simply, a municipal official is otherwise generally immune from liability for discretionary. . . acts" *Id.* "A municipal employee's immunity for the performance of discretionary governmental acts is . . . qualified by three recognized exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . ." (Quotation marks omitted.) *Mulligan v. Rioux*, 229 Conn. 716, 728, 643 A.2d 1226 (1994). Further:

> Foreseeability is the touchstone of our analysis in determining whether a public officer can be liable for his discretionary acts under this exception. *Durrant v. Board of Education,* 284 Conn. 91, 101, 931 A.2d 859 (2007); see also *Purzycki v. Fairfield,* 244 Conn. 101, 108 n.5, 708 A.2d 937 (1998) ("[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may

20

result if it is not exercised" [internal quotation marks omitted]). Thus, we will permit official liability for discretionary acts only if "the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Durrant v. Board of Education,* supra, 106.

*Fleming v. City of Bridgeport*, 284 Conn. 502, 533, 935 A.2d 126 (2007). "By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm."

*Doe v. Petersen*, 279 Conn. 607, 616, 903 A.2d 191 (2006).

For purposes of determining whether a plaintiff was subject to imminent harm, "[i]mminent does not simply mean a foreseeable event at some unspecified point in the not too distant future." *Bonington v. Westport*, 297 Conn. 297, 314, 999 A.2d 700 (2010); see also *Silberstein v. 54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 275, 41 A.3d 1147 (2012). Rather, "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that *the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm*." (Emphasis in original; internal quotation marks omitted.) *Doe v. Madison*, supra, 340 Conn. 37.

*Doe v. City of New Haven*, 214 Conn. App. 553, 580-81, 281 A.3d 480 (2022). To meet the apparentness requirement, "the plaintiff must show that the circumstances would have made the government agent aware that his or her acts or omissions would likely have subjected the victim to imminent harm. This is an objective test pursuant to which we consider the information available to the government agent at the time of her discretionary act or omission." (Citations

21

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

omitted.) *Edgerton (Estate of Hopkins) v. Town of Clinton*, 311 Conn. 217, 231, 86 A.3d 437 (2014).

Evidence was insufficient to prove that Detective Shortt's failure to intervene to prevent the fabricated evidence would cause Mr. Birch to imminently suffer a deprivation of liberty. The circumstances surrounding the interview on July 12, 1988, would not have informed Shortt that the conviction of Mr. Birch was clear and unequivocal.

Nor was there evidence presented, or instruction given to the jury to support a conclusion that a police officer is prohibited from submitting a witness statement he personally believes is inaccurate or untrue. Such a finding would be contrary to law and was not supported by evidence. There was no evidence presented proving that Ocif knew the incriminating statement was false. At best the jury could have inferred that Ocif "believed" Cocchia was not credible. Regardless of Ocif's belief, there was virtually no evidence supporting a conclusion that Shortt knew Cocchia was lying, or that Ocif made him lie about the incriminating statements, or that Ocif should not have given Cocchia's statement to the prosecutor. These necessary factors must have been proven to support the negligence verdict against David Shortt for failure to intervene.

Assuming, *arguendo*, that Shortt knew Ocif personally believed Cocchia was lying, such knowledge would not make it apparent to a reasonable person that Birch's conviction was imminent. The evidence proves that at the time of the interview and during the subsequent months through trial the decision making and the judgments of others evaluating Cocchia's credibility

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

was not dependent on Det. Ocif's opinion and were totally unrelated to any act or inactions of

Det. Shortt. As stated above,

> The imminent harm exception applies where "the danger involved a limited time period and limited geographical area . . . [and] the risk of harm was significant and foreseeable . . ." (Internal quotation marks omitted.) *Violano v. Fernandez, supra,* 280 Conn. 331. If "[t]he risks of [harm] implicates a wide range of factors that can occur, if at all, at some unspecified time in the future," the exception does not apply. (Internal quotation marks omitted.) *Id.,* 330, quoting *Evon v. Andrews,* 211 Conn. 501, 508, 559 A.2d 1131 (1989).

*Anglin v. Town of East Hartford*, Docket No. CV065001800, 2007 Conn. Super. LEXIS 2571,

at *13-14 (Super. Sep. 27, 2007). By way of example, the *Anglin* court, in explaining the

imminence requirement, cited *Alexander v. Vernon,* Superior Court, judicial district of Tolland,

Docket No. CV X07 020078935 (May 3, 2004, Sferrazza, J.), noting in that case:

> [T]he decedent was murdered by her husband two days after the municipal police investigated her domestic violence claim. *Id.* At the time of the investigation on February 12, 2000, the police, after hearing conflicting accounts of physical abuse, did not arrest either party but told them that they would check with the Attorney General's office regarding arrest warrants for both. *Id.* On February 13, the decedent telephoned the police to report that her husband had destroyed property within the home. *Id.* When the officers arrived to investigate, the decedent told them that her husband had fled to Maryland. The officers told her they would seek an arrest warrant for the husband. *Id.* On February 14, the husband killed the decedent while she was staying at her mother-in-law's residence. *Id.* On the basis of these facts, the court did not find imminent harm: "Here, the claimed risk can only be that, at some unspecified date after [the decedent] departed her residence, her husband would track her down and kill her. This is a risk which might be realized, if at all, at some future unknown time and place and, therefore, cannot give rise to the imminent harm to an identifiable person exemption to qualified governmental immunity." *Id.*

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

*Anglin v. Town of East Hartford*, Docket No. CV065001800, 2007 Conn. Super. LEXIS 2571, at *14-15 (Super. Sep. 27, 2007).

In *Brooks v. Sweeney*, the Connecticut Superior Court addressed a situation where a health inspector, pursuant to his duty to enforce the health code, worked with a property owner, giving her time to get the owner's septic system fixed. The owner eventually stated that she would not or could not comply with the orders of the health district. The inspector prepared an affidavit in support of an arrest warrant, a judge signed the warrant, and the owner was arrested for failure to comply with an order of the health district. The plaintiff brought claims of, *inter alia*, malicious prosecution, negligent supervision, and a federal claim pursuant to 42 U.S.C. § 1983 against defendants Sweeney and Huleatt on the theory of selective enforcement. *Brooks v. Sweeney*, Docket No. CV065005224S, 2008 Conn. Super. LEXIS 3122, at *3 (Super. Nov. 28, 2008).

In granting the defendants motion for summary judgment on grounds of governmental immunity, the court noted, "[t]here is no evidence in the record which supports the proposition that any action, or failure to act, by Huleatt, subjected the plaintiff to imminent harm. As defendant West Hartford pointed out in its brief, Sweeney's acts in preparing the arrest warrant application—which Huleatt allegedly failed to stop—could hardly be said to create an imminent risk of arrest. Prosecutors, and then judges, do not review warrant applications on a set schedule. Police officers do not always attempt to serve arrest warrants as soon as they know about them. In this case, the plaintiff was not arrested until 32 days after Sweeney submitted the arrest

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

warrant. The court finds, as a matter of law, that any 'harm' which plaintiff could conceivably have been subjected to, as a result of Sweeney's or Huleatt's conduct, was not 'imminent.'" *Brooks v. Sweeney*, Docket No. CV065005224S, 2008 Conn. Super. LEXIS 3122, at *25 (Super. Nov. 28, 2008). In *Cotto v. Board of Education* the Connecticut Supreme Court identified two other relevant examples as well:

> [I]n *Shore v. Stonington*, 187 Conn. 147, 150, 444 A.2d 1379 (1982), the defendant police officer approached a vehicle that he had observed speeding and being erratically driven, after the operator had stopped in the parking lot of a social club, where he was to pick up his girlfriend. The operator manifested obvious signs of being under the influence of alcohol or drugs. *Id.*, 150-51. The police officer did not arrest the operator, but instead, allowed him to proceed with only a warning that "he had better slow down and . . . let his girlfriend drive." *Id.*, 150. Less than one hour later, the operator struck and killed the plaintiff's decedent. *Id.*, 151. This court concluded, as a matter of law, that the police officer had no reason to know that his failure to arrest the intoxicated operator would subject an identifiable person to imminent harm and thus precluded submission of the claim of negligence to the jury. *Id.*, 154. In deciding that abrogation of discretionary act immunity under the "imminent harm" exception was inappropriate, the court reasoned that the mere fact that the police officer had contact with the operator of the vehicle before the fatal collision did not create a clear and unequivocal duty to act to prevent that collision.

*Cotto v. Board of Education*, 294 Conn. 265, 278, 984 A.2d 58 (2009).

> Similarly, in *Evon v. Andrews*, supra, 211 Conn. 505-508, this court relied on the "identifiability" and "imminency" requirements of the test for the exception to the governmental immunity doctrine to conclude that municipal officers could not be liable for their allegedly negligent failure to enforce certain provisions of a municipal housing code vis-a-vis a residential premises where a fatal fire subsequently broke out. The court reasoned that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

unspecified time in the future is by no means a group of identifiable persons . . . . Furthermore, the [victims of the fire] were not subject to imminent harm. . . . [T]he fire could have occurred at any future time or not at all." (Citations omitted; internal quotation marks omitted.) *Id.*, 508.

*Cotto v. Board of Education*, 294 Conn. 265, 279, 984 A.2d 58 (2009).

Similarly, here, nothing indicated to Shortt that Birch's conviction, and any related harm, was imminent. In the case at bar, evidence at trial showed that Todd Cocchia was interviewed on July 12, 1988. (DX-B, DX-C). Mr. Birch was not arrested in connection with the murder case until January 25, 1989. (PX 214). Between the interview of Todd Cocchia and the arrest of Mr. Birch, *197* days elapsed. During that time between the interview and arrest, Assistant State's Attorney David Shepack contacted Attorney Jack Doyle in Norfolk, Virginia, regarding Cocchia's recent indication to Shepack that he would not testify if he did not "receive some consideration on the charges . . . pending in Virginia," on December 21, 1988. (PX-217). Then, on January 18, 1989, Todd Cocchia signed his statement reiterating what he told Detectives Ocif and Shortt during the July 12, 1988, interview. (DX-N, PX-215). As shown in the record, any harm that came to Mr. Birch was not imminent and apparent to Detective Shortt at the time of the interview.

Indeed, there was no evidence that Det. Shortt participated in the probable cause determination to submit the warrant or the preparation of the arrest warrant. The State's Attorney determined the credibility of Cocchia and presented him as a witness at the probable cause

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

hearing and at trial. The State's Attorney's office entered into two agreements with Cocchia requiring him to be truthful. (DX-D). State's Attorney Shepack testified through deposition that he had a duty to not present false testimony, to correct inaccurate or false testimony and to proceed only with a case that he believed he could prove beyond a reasonable doubt. These events were months in the making, they can hardly be considered to have posed an "imminent" harm.

Subsequently, the Court made a probable cause finding and the jury as the ultimate arbiter of Cocchia's credibility either accepted his account of the confession or decided guilt beyond a reasonable doubt based on other evidence.

There was no articulable evidence as to why Det. Ocif testified approximately 26 years after the conviction of Mr. Birch that he believed Mr. Cocchia lied. Nor was there any evidence as to what he may have lied about. The recording and transcript were available to all before trial. Cocchia was subject to cross examination.  No evidence was presented proving that Det. Shortt had any more material information than those participating in the criminal litigation to better enable him to judge Cocchia's credibility. Apparently, it was not clear to those prosecuting or judging Mr. Birch that Cocchia was fabricating Birch's confession. Based on evidence presented at trial the need for Det. Shortt to intervene to prevent Det. Ocif from causing Cocchia to fabricate evidence to prevent imminent harm to Mr. Birch would not have been clear and unequivocal, nor was it apparent to Shortt that his failure to intervene was likely to subject Mr. Birch to harm

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

**B. The Plaintiff's Award Must Be Offset by The Plaintiff's Prior State Settlement Pursuant to C.G.S. § 54-102uu.**

Effective June 4, 2024, C.G.S. § 54-102uu was amended to require that any damage award obtained after a claimant received an award from the State pursuant to that statute must be offset. Pursuant to § 54-102uu(h), the jury verdict must be offset by the Plaintiff's prior settlement against the State Defendants, reducing the Plaintiff's award to zero. § 54-102uu(h) provides that:

> (h) Any damages awarded after an award pursuant to this section to the claimant resulting from an action by the claimant against any other unit of government within the state by reason of the same subject of the claim shall be offset by the amount of the compensation award received under section.

*See* C.G.S. § 54-102uu(h).

Upon settling his claims with the State Defendants in February of 2023, the Plaintiff received an award from the State in the amount of $12,600,000.00. (Noirot Declaration, ¶¶ 3–4); *see also*, the Plaintiff's Motion in Limine re State Settlement, Doc. 220-1). Thereafter, the Plaintiff continued to pursue his claim against the Town of New Milford, Steven Jordan and David Shortt based upon the same subject of the settled claims. In accordance with § 54-102uu(h), the Plaintiff's award in this jury trial must be offset by the $12,600,000.00 received from the State Defendants, resulting in a complete offset of the Plaintiff's jury award reducing the award to zero.

28

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

The language in C.G.S. § 54-102uu is clear on its face that an offset is required. Our courts have repeatedly stated that:

> In matters of statutory interpretation, we are guided by well-established principles, paramount among which is the principle that 'our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .'

(Citations omitted; internal quotation marks omitted.) *Connecticut Assn. of Not-For-Profit Providers for the Aging v. Dept. of Social Services*, 244 Conn. 378, 391, 709 A.2d 1116 (1998).

"We are obligated to search for a construction of the statute that makes a harmonious whole of its constituent parts." *International Brotherhood of Police Officers, Local 564 v. Borough of Jewett City*, 234 Conn. 123, 136, 661 A.2d 573 (1995) (citing *Dept. of Administrative Services* v. *Employees' Review Board,* 226 Conn. 670, 679, 628 A.2d 957 (1993); *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council,* 215 Conn. 474, 482-83, 576 A.2d 510 (1990); *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987)).

"In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z. If the text of the statute is not plain and unambiguous, we may consider extratextual sources of information such as the statute's legislative history and circumstances surrounding its enactment, to the legislative policy it was

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . . Our fundamental objective is to ascertain the legislature's intent."[6] (Citations omitted.) *Johnson v. Preleski*, 335 Conn. 138, 145, 229 A.3d 97 (2020).

Thus, unless a statute is ambiguous, the text of the statute itself shall control in determining the meaning of the statute. See *Reyes v. State*, 222 Conn. App. 538, 553, 306 A.3d 515 (2023) ("when challenged with the task of statutory interpretation, we first consider the text of the statute itself and its relationship to other statutes and that, if this examination leads us to conclude that the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, it is inappropriate to consult extratextual evidence of the meaning of the statute."). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *R.C. Equity Group, LLC v. Zoning Commission*, 285 Conn. 240, 266, 939 A.2d 1122 (2008) (quoting *Small v. Going Forward, Inc.,* 281 Conn. 417, 422, 915 A.2d 298 (2007).

---

[6] Connecticut General Statute §1-2z provides, in particular, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

The intent of C.G.S. § 54-102uu(h) is clear, and the Plaintiff's damage award in this action must be offset by the amount of compensation that the Plaintiff previously received from the State.

C.G.S. § 54-102uu provides that a person is eligible to receive compensation for wrongful incarceration if (1) such a person has been convicted by the state and sentenced to a term of imprisonment and (2) such person's conviction was vacated or reversed; and the information was dismissed on grounds consistent with innocence. See C.G.S. § 54-102uu. There is no dispute that the Plaintiff was convicted by the state and sentenced to a term of imprisonment; he testified that he served thirty years for the murder of Everett Carr. Further, the Plaintiff's conviction was vacated, as the parties stipulated at trial. (Joint Exhibit 1). Moreover, the Plaintiff argued extensively at trial that there was substantial evidence of innocence, eliciting testimony from a William Bodziak, a footwear impression expert, and multiple witnesses from the Connecticut forensic laboratory regarding bloodstain and DNA evidence supporting his claim that there was no forensic link between the Plaintiff and the crime scene. There is little dispute that the Plaintiff met his eligibility under § 54-102uu.

The Plaintiff pursued his claim under § 54-102uu to the Claims Commissioner, *Ralph J. Birch v. State of Connecticut*, File No. 26626, as referenced in the Settlement and Release Agreement. (Noirot Declaration, ¶ 5). In consideration for receiving the State's payment of $12,600,000.00, the Plaintiff executed a Stipulation of Dismissal of the federal claims set forth

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

in this action and specifically agreed to withdraw his claim before the Claims Commissioner, as

the settlement resolved that claim completely.  The agreement states as follows:

> NOW THEREFORE, in consideration of the promises, agreements, covenants, and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:
>
> <u>Plaintiff's Obligations</u>:  The plaintiffs will execute this Settlement and Release Agreement, an IRS Form W-9, and a Stipulation of Dismissal of all claims against the State Defendants in the Suits, pursuant to Fed. R. Civ. P. 41(a), with prejudice and without an award of costs.  In addition, each plaintiff will file a withdrawal, with prejudice, of their claims filed with the Office of the Claims Commissioner: *Ralph J. Birch v. State of Connecticut*, File NO. 26626, and *Shawn Henning v. State of Connecticut*, File NO. 26629.

(emphasis in original) (Noirot Declaration,  Exhibit B).

In addition to agreeing to withdraw his claim before the Claims Commissioner in

consideration of his settlement with the State, the Plaintiff specifically released the State of

Connecticut "from all causes of action, suits, claims, controversies, damages and demands that

the Plaintiff had including any claims arising out of or in any way related to the circumstances

that formed the basis for this action, including "any state or federal administrative agency or

before the Claims Commissioner pursuant to Conn. Gen. Stat. § 4-141, et seq."  (Noirot

Declaration, Exhibit B). The Plaintiff was compensated for his claim to the Claims

Commissioner.

There can be no question that those settled claims between the Plaintiff's and the State

arose from the same subject as the claims against David Shortt, as the claims against David Shortt

32

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

arise only out of conduct that originated with the State Defendants, specifically Detective Ocif. The claims and David Shortt and Detective Ocif overlap and are inextricably intertwined. The Plaintiff alleged that Detective Ocif engaged in various tactics during the July 12, 1988, interview with Todd Cocchia "for purposes of fabricating a statement by Cocchia that he could use against Ricky Birch – a statement that could only exist if Ocif invented it." (Amended Complaint, ¶ 268). In turn, the Plaintiff alleged that "[A]t no point did Shortt, who was present and paying attention throughout the interview, intervene to stop the fabrication from occurring." (Amended Complaint, ¶ 269). The jury was instructed that in order to prove David Shortt failed to intervene in the fabrication of evidence, that the Plaintiff "much prove that there was a fabrication of evidence by another officer." (Doc. 303, p. 18). That other officer was Detective Ocif. The same Defendant that the Plaintiff settled out with, along with the other State Defendants, for $12,600,000.00. There is no dispute that the settled claims arise from the same subject as the claims that were tried to the jury.

The language of § 54-102uu makes clear that an offset is required in this matter. A review of the legislative history further supports that finding.

In situations where a statute is ambiguous, and not clear on its face, the Connecticut Supreme Court "repeatedly has recognized that testimony before legislative committees regarding proposed legislation sheds light on the problem or issue that the legislature sought to

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

resolve, and the purpose it sought to serve, in enacting a statute." (Citations omitted, quotation marks omitted.) *Dias v. Grady*, 292 Conn. 350, 358, 972 A.2d 715 (2009).

A review of the legislative history surrounding the enactment of 54-102uu(h) confirms that the legislature intended for the Plaintiff's damage award in this action to be offset by the compensation previously received from the State. In 2024, C.G.S. § 54-102uu was amended to include (h) along with various other revisions.

A review of the legislative history reveals the following notable comments regarding the intention of the new amendments to 54-102uu. Senator Kissel commented:

> During the public hearing, it was quite amazing to know that you would like to think that this never happens in Connecticut, but occasionally wrongful convictions do happen. We already have a statutory formula as far as what the compensation would be depending on the length of time an individual was incarcerated as to based on a wrongful conviction.
>
> But the underlying bill in conjunction with the amendment also makes it very clear that if there's both a state claim and a local claim that they would offset one another for so that it would not be overly compensated and yet at the same time, the individual could pursue one avenue or another and it wouldn't necessarily harm the individual if they chose to proceed against the town and then later the state or vice versa.

S. Proc., 2024 Sess., p. 2148 (Attached, as Exhibit C, to the Noirot Declaration is the compiled legislative history of Connecticut Public Act 24-106, which was enacted in 2024 and Amended C.G.S. § 54-102uu).

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

Amanda Wallin, a State Policy Advocate with the Innocence Project, spoke in favor of

the bill, noting as follows.

> Secondly, the bill lifts the civil litigation bar.  Compensation through the Claims
> Commission process is intended to allow exonerees to become whole and to be able
> to rebuild their lives as quickly as possible after their wrongful conviction and
> incarceration.
>
> However, the civil litigation process permits exonerees to receive damages from
> bad actors who contributed to their wrongful conviction.  Federal civil right
> lawsuits can hold those actors accountable and incentivize agencies to make
> changes to prevent future wrongful convictions.  A civil offset provision allows the
> State to recover money if an exonerate wins an award or settlement from the entities
> that are actually responsible for the wrongful conviction.  The offset provision is a
> more fiscally responsible option than barring civil lawsuits altogether.

H.R. Proc., 2024 Sess., p. 2274–2275 (Noirot Declaration, Exhibit C).  The State of Connecticut

Attorney General, William Tong, noted in his submission:

> Notably, S.B. 439 would replace the statutory requirement that claimants release
> any future claims arising out of the wrongful conviction and incarceration with a
> provision that would permit the claimant to seek future damages, for example from
> a municipality, which would be offset by the damages awarded by claim's
> commissioner.

*Id*., p. 2342 (Noirot Declaration, Exhibit C).

This legislative history confirms what is already clearly stated in the plain language of

the statute.  The amendments to § 54-102uu were intended so that claimants were no longer

required to release all future claims arising out of wrongful conviction and incarceration without

limitation.  Newly enacted § 54-102uu(g) added a qualifier that a person compensated pursuant

**Hassett & George, P.C.**

945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

to this section shall sign a release giving up all claims "against the state" that the person may have arising from the wrongful conviction.  Prior to that amendment, and without such a qualifier, any person compensated under this statute was required to sign a release relinquishing any right to pursue any other action or remedy at law or in equity that such person may have arising out of such wrongful conviction, without limitation.  The amendments to § 54-102uu removed the requirement that a person awarded under this section must release all municipalities and other allegedly bad actors.  Following the 2024 amendments, persons compensated under this statute were no longer barred from pursuing further claims against other parties, such as a local law enforcement officer or municipality.  However, in expanding the scope of § 54-102uu, the legislature included a qualifier making clear that should the compensated individual pursue such a claim against a municipality, any damage award to that individual would be offset by the amount paid pursuant to this section.  *See* § 54-102uu.

Our courts require that statutes be harmoniously construed such that the statute, as a whole, makes logical sense.  The plain language of the newly enacted § 54-102uu, as supported by legislative history, require that that amount obtained after such an award from the State be offset by the prior award.  The amendment to § 54-102uu(g) made clear that claims against municipalities can survive an award from the State, however § 54-102uu(h) requires that any award obtained be offset.  To hold otherwise would allow for the Plaintiff to be compensated twice, which 54-102uu expressly prohibits. Likewise, Connecticut court's disfavor such a double

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

recovery. *See Belanger v. Village Pub I, Inc.*, 26 Conn. App. 509, 517, 603 A.2d 1173 (1992) (noting in a wrongful death case, that the release of a claim against one defendant, acted "to decrease the plaintiff's subsequent recovery against the remaining defendants. The court prevented the plaintiff from receiving a double recovery by reducing the verdict against the defendants to take into account the payment by [the released defendant]."); see also *Mahon v. B.V. Unitron Mfg.*, 284 Conn. 645, 665, 935 A.2d 1004 (2007) ("under § 52-216a, a trial court may, in the exercise of its discretion, reduce a jury award to account for pretrial settlement payments. Before doing so, however, the court first must determine that the settlement payments, when added to the jury award, render that award excessive as a matter of law, a threshold that is met only when the total amount received so far exceeds what is fair and reasonable as to be unconscionable.").

Prior to trial, the Plaintiff recovered $12,600,000 from the State Defendants for the same subject of claims that were presented to the jury in this action. After finding in the Plaintiff's favor on liability, the jury determined that the value of the Plaintiff's damage claim totals $5,700,000.00. Pursuant to § 54-102uu, the Plaintiff's award must be completely offset by the prior State settlement—or, at the very least, reduced to take the State settlement into account. To allow the Plaintiff to be awarded $5,700,000 is fundamentally unfair and in violation of the mandatory language of C.G.S. § 54-102uu.

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

### III. CONCLUSION

The Court should grant this motion. The Court shoulder enter judgment for the Defendants as a matter of law; alternatively, the Court should offset the jury's verdict in accordance with C.G.S. § 54-102uu.

DEFENDANTS
TOWN OF NEW MILFORD, STEVEN
JORDAN, ROBERT SANTORO AS
ADMINISTRATOR OF THE ESTATE OF
DAVID SHORTT

BY/s/ *Forrest A. Noirot*_____
Jeffrey O. McDonald (ct28195)
Elliot B. Spector (ct05278)
Forrest A. Noirot (ct31754)
Hassett & George, P.C.
628 Hebron Avenue Suite 212
Glastonbury, CT 06033
T: (860)651-1333
F: (860)651-1888
ebspector87@gmail.com
jmcdonald@hgesq.com
fnoirot@hgesq.com

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date first above a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

BY /s/ *Forrest A. Noirot*
Federal Bar No.: ct31754

39

**Hassett & George, P.C.**
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888  Juris 407894