**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| |
|---|
| RALPH BIRCH,<br>*Plaintiff*,<br><br>v.<br><br>TOWN OF NEW MILFORD et al.,<br>*Defendants*. |

No. 3:20-cv-1790 (VAB)

**RULING AND ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW AND
MOTION FOR AN OFFSET OF THE JURY VERDICT**

Ralph Birch (the "Plaintiff" or "Mr. Birch") sued the Town of New Milford, Steven

Jordan, and Robert Santoro, as the Administrator of the Estate of David Shortt (the "Estate of

David Shortt" singly, or all of the Defendants collectively as the "Town Defendants"), as well as

Andrew Ocif, Scott O'Mara, John Mucherino, Joseph Quartiero, Michael Graham, Brian Acker,

and Dr. Henry Lee (collectively the "State Defendants") under 42 U.S.C. § 1983 and various

state common law torts for alleged fabrication of evidence, malicious prosecution, and

suppression of material exculpatory evidence, which allegedly resulted in Mr. Birch's wrongful

conviction for felony murder and burglary and subsequent incarceration for more than thirty

years. *See* First Am. Compl., No. 3:20-CV-1790, ECF No. 54 (Apr. 16, 2021) ("Am. Compl.").

Following a stipulation of dismissal, the claims against the State Defendants were

terminated. *See* Order, ECF No. 206 (May 3, 2024).

Following a seven-day trial, a jury unanimously found that Ralph Birch had proven by a

preponderance of the evidence that the Estate of David Shortt was liable for common-law

negligence against Ralph Birch, while apportioning no liability to Steven Jordan on any of the

claims against him, and no liability against the Estate of David Shortt under Section 1983.

1

Verdict Form, ECF No. 304 (Mar. 19, 2025) ("Verdict"). The jury awarded Ralph Birch $5,700,000 in damages, *id.*, and because of interest on the jury verdict due to the rejection of an offer of compromise, ECF Nos. 79, 309, the Court entered judgment in the amount of $7,659,269. ECF No. 311.

Now, the Town of New Milford and the Estate of David Shortt, have renewed their motion for judgment as a matter of law and jointly move to offset the jury verdict. Defs.' Post-Trial Mot. for J. as a Matter of Law and for an Offset of the Jury Verdict, ECF No. 318 (April 15, 2024) ("Mot.").

For the reasons outlined below, the renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and motion for a jury offset under Connecticut General Statutes § 54-102uu are both **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural background and will only reiterate what is necessary to address the Defendants' pending motions.[1]

Jury selection in this case began on March 10, 2025. Min. Entry, ECF No. 294 (Mar. 10, 2025).

On March 17, 2025, at the conclusion of both parties' cases, the Town Defendants moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, which the Court denied without prejudice to renew. Min. Entry, ECF No. 302 (Mar. 17, 2025).

On March 19, 2025, the jury returned with its verdict finding the Estate of David Shortt liable for common-law negligence against Ralph Birch, apportioning no liability to Steven

---

[1] Much of the relevant history is detailed in Court's July 21, 2023, Ruling and Order on Motions for Summary Judgment. *See* Ruling and Order on Motions for Summary Judgment at 4–13, ECF No. 161.

Jordan on any claim and no liability against the Estate of David Shortt under Section 1983, and awarded Ralph Birch $5,700,000 in damages. *See* Verdict.

On March 28, 2025, because of the rejection of an offer of judgment, the Court entered judgment in the amount of $7,659,269. Judgment, ECF No. 311.

On April 15, 2025, the Defendants filed a renewed motion for judgment as a matter of law and a motion for a jury offset. Mot.; Mem. of L. in Supp. of Defs.' Post-Trial Mot. for J. as a Matter of Law and for an Offset of the Jury Verdict, ECF No. 318-1 (April 15, 2025) ("Mem.").

On May 1, 2025, Ralph Birch filed a memorandum of law in opposition to the Defendants' motion for judgment as a matter of law and for an offset of the jury verdict. Mem. of L. in Opp'n to Defs.' Mot. for J. as a Matter of Law and for an Offset, ECF No. 319 (May 1, 2025) ("Opp'n").

On May 8, 2025, the Defendants filed a reply in support of their motion for judgment as a matter of law and for an offset of the jury verdict. Defs.' Reply Mem. in Supp. of Mot. for J. as a Matter of Law and for an Offset of the Jury Verdict. Reply, ECF No. 321 (May 8, 2025) ("Reply").

## II.    STANDARD OF REVIEW

### A.  Rule 50

The standard governing a motion for judgment as a matter of law under Federal Law of Civil Procedure 50 is "appropriately strict." *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988). The motion "'may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Wiercinski v. Mangia 57, Inc.*,

787 F.3d 106, 112 (2d Cir. 2015) (quoting *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)) (alterations in original).

### B. Statutory Interpretation

Any question of statutory interpretation "begin[s] with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)), and *United States v. Am. Soc. Of Composers, Authors, and Publishers*, 627 F.3d 64, 72 (2d Cir. 2010)). Courts "attempt to ascertain how a reasonable reader would understand the statutory text, as a whole. If we can ascertain the plain meaning of the statutory text by examining it in the context of the statute as a whole, we need proceed no further." *Id.* (internal quotation marks and citation omitted).

"Extrinsic materials have a role in statutory interpretation . . . to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.* (internal quotation marks and citation omitted). But courts "turn to the legislative history only when the plain statutory language is ambiguous or would lead to an absurd result." *Id.* (internal quotation marks and citation omitted).

## III.   DISCUSSION

The Town Defendants have moved for a judgment as a matter of law, and for an offset of the jury verdict. *See* Mem. at 1.

The Court will address each argument in turn.

### A. The Renewed Motion for Judgment as a Matter of Law

A Rule 50 motion must be denied "'unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or

otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (quoting *Nadel v. Isaksson*, 321 F.3d 266, 272 (2d Cir. 2003)); *see also Alfaro v. Wal– Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) ("'[T]he same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50.'" (quoting *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (alterations in original))). Moreover, notwithstanding a movant's reliance on trial evidence that favored the movant's version of events, a court considering a Rule 50 motion "must disregard all evidence favorable to the moving party that the jury is not required to believe." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014).

"It is well settled that Rule 50(b) relief is available only if a party 'sought such relief before the jury retired to deliberate under Fed. R. Civ. P. 50(a)(2) and limits the permissible scope of the later motion to those grounds specifically raised in the prior motion for [judgment as a matter of law].'" *Greenaway v. Cnty. of Nassau*, 327 F. Supp. 3d 552, 561 (E.D.N.Y. 2018) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001)) (alteration in original).

"[A] motion for judgment as a matter of law [under Rule 50(a)] 'must at least identify the specific element that the defendant contends is insufficiently supported.'" *Id.* (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998)).

"[I]f an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice.'" *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986)). "'Manifest injustice exists where a jury's verdict is

wholly without legal support.'" *Greenaway*, 327 F. Supp. 3d at 562 (quoting *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014)).

The Defendants argue that: (1) "Based on the recording, transcript and testimony there was insufficient evidence presented at trial to support a finding that during the interview of July 12, 1988, that a police officer fabricated statements by Todd Cocchia that incriminated Mr. Birch in the murder of Everett Carr, and that Detective Shortt would have known he had a duty to intervene but failed to intervene to prevent the fabricated evidence from causing Mr. Birch to suffer a deprivation of liberty[,]" Mem. at 17, and (2) "[the] Plaintiff still failed to establish that the 'identifiable person-imminent harm' exception to governmental immunity applied to the Plaintiff's negligence claim. The alleged harm that Mr. Birch suffered was neither imminent, nor apparent to Detective Shortt at the time that Detective Ocif interviewed Todd Cocchia. Therefore, the negligence claim should be barred by governmental immunity." Mem. at 20.

In opposition, Mr. Birch argues that: (1) the "Defendants' motion for judgment as a matter of law on the merits of the negligence claim, fails [because] it is contrary to the Second Circuit's appellate mandate and the law of the case[, and] the evidence amply supports the jury's finding that Shortt breached a duty to intervene to prevent Mr. Birch from being deprived of liberty based upon fabricated evidence," Opp'n at 2, and (2) while the Defendants "contend— without reference or citation to any particular evidence adduced at trial—that the harm caused by the fabrication of Cocchia's story was not imminent from Shortt's perspective at the relevant time[,] [t]he facts found by the jury rationally demonstrate otherwise." Opp'n at 10.

In reply, the Defendants argue that: "The Second Circuit's mandate and the law of the case doctrine do not prevent this Court from granting judgment as a matter of law after trial. The prior finding that the evidence was sufficient to warrant a jury question does not bar

6

reconsideration if the trial evidence ultimately failed to support the jury's verdict. These doctrines are discretionary and do not restrict the Court's ability to revisit its rulings prior to final judgment. Further, the evidence at trial regarding Todd Cocchia's ("Cocchia" or "Mr. Cocchia") statements was insufficient to support the jury's verdict. Mr. Cocchia's initial statement, providing specific details about Birch's alleged confession, was consistent with the investigation at the time, and no evidence demonstrated that Detective Shortt knew the statement was false or that Detective Ocif caused Mr. Cocchia to fabricate it." Reply at 1–2.

The Court disagrees.

"Under the law-of-the-case doctrine, a district court's substantive pretrial rulings may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). The Second Circuit has also "held that under the law-of-the-case doctrine: 'When the court of appeals has remanded a case for trial after ruling that summary judgment in favor of a given party was inappropriate because the evidence indicated the existence of genuine issues of material fact to be resolved by the jury, the district court cannot properly, on remand, grant judgment as a matter of law to that party on the basis of trial evidence that is not substantially different.'" *Green v. City of New York*, 359 F. App'x 197, 198–99 (2d Cir. 2009) (quoting *Kerman v. City of New York*, 374 F.3d 93, 110 (2d Cir. 2004)).

Both this Court in its summary judgment decision, and the Second Circuit on appeal, decided that a reasonable jury could find that Detective Ocif knowingly coached and elicited false statements from Mr. Cocchia. *See Birch v. Town of New Milford*, No. 3:20-CV-1790 (VAB), 2023 WL 4684720, at *41 (D. Conn. July 21, 2023) ("[A] reasonable jury could find that

State Police Detective Ocif knowingly elicited false information in violation of Mr. Birch's constitutional right to a fair trial.") (citing to the transcript of the interview with Mr. Cocchia), *appeal dismissed*, No. 23-1153, 2024 WL 3083385 (2d Cir. June 21, 2024); *Birch v. Town of New Milford*, No. 231153, 2024 WL 3083385, at *2 (2d Cir. June 21, 2024) ("[A] reasonable jury could find that Ocif improperly coached Cocchia to make false statements inculpating Birch, and that Shortt witnessed this coaching[.]") (finding this based on Mr. Cocchia's testimony in the state habeas proceeding and the recorded portions of the Cocchia interview).

Based on the same interview that the jury heard during trial, *see, e.g.*, March 13, 2025, Jury Trial Transcript at 42:8–18, ECF No. 312 (April 3, 2025) ("Ocif Tr.") ("Q. . . . And then [Mr. Cocchia] said he would talk, right? A. He said wait. Q. And then you turned on the recording? A. Yes. Q. Correct? A. Yes, in the interview room. Mr. Lieb: So I'm going to show a portion of Plaintiff's Exhibit 73, the transcript, and play the accompanying portion of Defendant's Exhibit A, the audio, both in evidence. Mr. Foran, let's play the first clip of the interview."); *id.* at 64:10–12 ("Q. (Mr. Spector) Mr. Ocif, did we just listen to the entire interview that took place within the interview room? A. I think so, yes."); Marked Trial Exhibit List, ECF No. 308 (Mar. 18, 2025) ("Def-A Cocchia Interview Audio Recording.wav Def-B Cocchia Interview Transcript"), this evidence is enough for the jury to find the Estate of David Shortt liable for common-law negligence against Mr. Birch, once the jury was satisfied that governmental immunity did not apply to his actions. *See* Connecticut Civil Jury Instructions, § 3.6-3 ("Common-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care a reasonably prudent person would use in the same circumstances. In determining the care that a reasonably prudent person would use in the circumstances, you should consider all of the circumstances which were known or should have been known to the

defendant at the time of the conduct in question . . . It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised.");[2] *see also Doe v. Boy Scouts of Am. Corp.*, 147 A.3d 104, 111 n.6 (Conn. 2016) (quoting an identical instruction, and recognizing it as "a standard negligence instruction"). Even without the consideration of the law-of-the-case doctrine, however, there was still enough evidence for the jury to reach its verdict.

First, before addressing the issue of common-law negligence, the jury had to determine whether there was governmental immunity for the Estate of David Shortt. *See* Jury Instructions at 21, ECF No. 303 (March 18, 2025) ("This exception has three components, each of which Mr. Birch must prove by a preponderance of the evidence, existed at the time of his alleged injury. These components are: (1) that Mr. Birch was an identifiable victim with respect to his claims of negligence against . . . Detective Shortt . . . (2) that the harm, which he claims befell him was imminent when . . . Detective Shortt . . . acted or failed to act . . . and (3) that it was apparent to . . . Detective Shortt . . . that his . . . conduct was likely to subject Mr. Birch to the particular harm alleged."); *see also Edgerton v. Town of Clinton*, 86 A.3d 437, 447 (Conn. 2014) ("This court has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that

[2] Significantly, this was precisely what the jury here was charged. *See Ramsey v. Carmac*, 899 A.2d 727, 736 (Conn. App. 2006) ("As long as the [instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper.").

9

harm. All three must be proven in order for the exception to apply." (internal citations and quotation marks omitted)).

And, on this record, a reasonable jury could find that Detective Shortt had "no immunity [and therefore] proceed[ed] to determine whether Mr. Birch has proven [his common-law negligence claim against Detective Shortt] . . . ." *Id.* at 23; *see, e.g.*, Ocif Tr. at 34:2–18 ("Q. You went to see Todd Cocchia, correct? A. Yes. Q. He was another guy who had been in jail with Ricky Birch, right? A. Yes. Q. You went to Virginia with Detective David Shortt? A. Yes. Q. Of the New Milford Police Department, right? A. Yes. Q. It was Shortt who contacted you about Todd Cocchia, correct? A. Yes. Q. Shortt told you that he had become aware that Cocchia might have some information, right? A. It came to Detective Shortt from a detective from down in Norfolk, Virginia. Q. Okay. So, you and Shortt went down to Virginia, correct? A. Yes."); *id.* at 39:11–19 ("Q. During your interview with Mr. Cocchia, Detective Shortt was there, right? A. Yes. Q. He was there the whole time, right? A. Yes. Q. As far as you know, he was listening, right? A. He was what? Q. Listening? A. Yes."); *id.* at 44:18–20 ("Q. You were the one who introduced to Cocchia that it was an old man who was killed, correct? A. Yes, that was correct[.]"); *id.* at 47:3–6 ("Q. Do you see a couple of lines down from the yellow you say, 'Okay. I'll try to give you a hint.' Do you see that? A. Yes."); *id.* at 50:1–3 ("Q. You gave Todd the information that there was more than one perpetrator, correct? A. Partially, yes."); *id.* at 50: 7–9 ("Q. . . . You told Todd that it was nighttime, correct? A. Yes, I did.").

Second, having satisfied itself that no immunity applied to Detective Shortt's actions here—which the jury must have done since it found the Estate of David Shortt liable for common-law negligence—the jury had a more than sufficient basis to find that Detective Short breached the "duty to use care [which] exists when a reasonable person, knowing what the

defendant here either knew or should have known at the time of the challenged conduct, would foresee that harm of the same general nature as that which occurred here was likely to result from that conduct." Connecticut Civil Jury Instructions, § 3.6-3; Jury Instructions at 23 (same); *see also* Ocif Tr. at 52:8–12 ("Q. You don't recall Shortt ever expressing any disagreement with the way you handled that interview, correct? A. No he didn't disagree with it at all. Q. He didn't object at all, did he? A. No, no."); *id.* at 51:6 -51:16 (the jury hearing earlier video deposition testimony of Ocif saying about Cocchia, "He was not going to give a statement. He was very clear about that. . . . [and later] Yeah, he lied. He lied a lot, you know. He wanted to get out of jail in Virginia, and he was waiting for that to happen. He was going to get five years down there for that.").

Given the absence of any inculpatory eyewitness testimony, or physical evidence, such as fingerprints or anything else, linking Mr. Birch to the crime scene, *see e.g.*, Jury Trial Transcript at 47:5–21, ECF No. 322 (June 4, 2025) ("Birch Tr.") ("Q. Did any eyewitnesses testify that they saw you at or near Everett Carr's house the night of the murder? A. No. . . . Q. Did the prosecution present any evidence that your fingerprints were found at the scene? A. No. . . Q. Did the prosecution present any physical evidence linking you to being present at the crime scene? A. No, exactly the opposite again."), and the resulting significance of Mr. Cocchia's testimony at Mr. Birch's criminal trial, *id.* at 46:20–25 ("Q. Okay. Turning back to your trial, which we were beginning to discuss before the break, did Todd Cocchia testify at your trial? A. Yes. Q. And what was generally speaking nature of that testimony? A. He said that I confessed to him that I committed this murder."), on this record, the jury reasonably could have concluded a breach of the duty of care because Detective Shortt "knowing what [he] here either knew or should have known at the time of the challenged conduct, would foresee that harm of the same

general nature as that which occurred here was likely to result from that conduct."  Connecticut

Civil Jury Instructions, § 3.6-3; *see also Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146,

175, 72 A.3d 929, 947 (2013) ("The test for the existence of a legal duty of care entails (1) a

determination of whether an ordinary person in the defendant's position, knowing what the

defendant knew or should have known, would anticipate that harm of the general nature of that

suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of

whether the defendant's responsibility for its negligent conduct should extend to the particular

consequences or particular plaintiff in the case." (citing *Ryan Transportation, Inc. v. M & G*

*Associates*, 832 A.2d 1180, 1184 (Conn. 2003))).

As a result, there was not a "complete absence of evidence supporting the verdict . . . [,]"

nor was the evidence in favor of Detective Shortt "so overwhelming that reasonable and fair

minded [persons] could not arrive at a verdict against [him].'" *Wiercinski*, 787 F.3d at 112

(second alteration in original).

Accordingly, Defendants' motion for judgment as a matter of law will be denied.

### B.  Motion for Jury Offset

"A person is eligible to receive compensation for wrongful incarceration if: (1) Such

person has been convicted by this state of one or more crimes and has been sentenced to a term

of imprisonment for such crime or crimes and has served all or part of such sentence; and (2)

Such person's conviction was (A) vacated or reversed, and (B) the complaint or information

dismissed on (i) grounds of innocence or grounds consistent with innocence, or (ii) a ground

citing an act or omission that constitutes malfeasance or other serious misconduct by any officer,

agent, employee or official of the state that contributed to such person's arrest, prosecution,

conviction or incarceration.". Conn. Gen. Stat. §§ 54-102uu(a)(1)–(2).

A person who meets the eligibility requirements of subsection (a) of this section may present a claim against the state for such compensation with the Claims Commissioner . . .". *Id.* at § 54-102uu(b). And, "[a]ny person who is compensated pursuant to this section shall sign a release providing that such person voluntarily relinquishes any right to pursue any other action or remedy at law or in equity against the state that such person may have arising out of such wrongful conviction and incarceration." *Id.* at § 54-102uu(g).

Conn. Gen. Stat. § 54-102uu(h) further provides that "[a]ny damages awarded after an award pursuant to this section to the claimant resulting from an action by the claimant against any other unit of government within this state by reason of the same subject of the claim shall be offset by the amount of the compensation award received under this section."

Additionally, Conn. Gen. Stat. § 54-102uu(k) states that "[t]he provisions of this section shall not apply to any agreement or stipulation pursuant to the provisions of section 3-125a." Conn. Gen. Stat. § 3-125a limits the Connecticut Attorney General from entering into agreements or stipulations "in an amount in excess of two million five hundred thousand dollars over the term of the agreement or stipulation, unless the General Assembly, by resolution, accepts the terms of such provision." Conn. Gen. Stat. § 3-125a(a).

The Defendants argue that "[p]ursuant to § 54-102uu(h), the jury verdict must be offset by the Plaintiff's prior settlement against the State Defendants, reducing the Plaintiff's award to zero." Mem. at 28.

In opposition, Mr. Birch argues that the (1) the "Defendants have waived any claim for an offset," Opp'n at 14, (2) the "Defendants' argument ignores the statutory text and context of General Statute § 54-102uu, which authorizes the Connecticut Claims Commissioner to award compensation to exonerees. The municipal offset provision of § 54-102uu(h), on which

Defendants rely, applies only where there has been an "award" of compensation by the Claims Commissioner. The State Settlement is not such an "award." It is a voluntary compromise of Mr. Birch's federal civil rights claims pursuant to General Statute § 3-125a, to which the provisions of § 54-102uu expressly do not apply[,]" *id.* at 15, and (3) "even if the offset provision could ever apply to such a settlement, Defendants would not be entitled to benefit from it here because it was enacted into law after the State Settlement took effect and is not retroactive." *Id.*

In reply, the Defendants argue that: (1) "While it is true that setoffs and offsets are generally required to be pleaded as counterclaims, this rule does not apply here." Reply at 9. (2) "While it is true that the statute uses the term award to refer to compensation ordered by the Claims Commissioner, the purpose of the offset provision is to prevent double recovery for the same injury. The settlement agreement, which was approved by the legislature pursuant to Conn. Gen. Stat. § 3-125a, serves the same compensatory purpose as an award under § 54-102uu. To interpret the statute as applying only to formal awards by the Claims Commissioner would elevate form over substance and frustrate the legislative intent to prevent windfall recoveries." *Id.* at 9–10. (3) "While it is true that substantive statutes are generally presumed to apply only prospectively, the offset provision at issue here is properly characterized as procedural rather than substantive." *Id.* at 10. Lastly, (4) "the agreement between the State and Plaintiff contemplates and includes Plaintiff's claims arising under C.G.S. § 54-102uu, and therefore the award was still received under § 54-102uu. [And] applying the offset provision in the case at bar aligns with the legislative intent behind the statute—fair compensation while preventing double recovery." *Id.* at 11.

The Court disagrees.

14

As a preliminary matter, while "a setoff claim . . . must be set forth in the pleadings to provide a basis for relief," *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009), a district court has discretion to consider a belatedly-raised argument." *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (citing *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249 (2d Cir.2005) ("First, she argues that the issue was first raised in Defendants' summary-judgment reply papers. Assuming that is so, the district court had discretion to consider it." (internal citations omitted))), *aff'd*, 374 F. App'x 71 (2d Cir. 2010). But, without deciding whether this claim is properly before the Court, the claim fails on the merits.

As noted recently, Conn. Gen. Stat. § 54-102uu is "an alternative remedy to an action in tort." *Horn*, No.  3:18-cv-1502 (RNC), 2024 WL 1342762 (March 29, 2024, at *8 n.9 (recognizing that, "in cases involving wrongful or unreliable convictions, the legislature has provided an alternative remedy to an action in tort"). "Conn. Gen. Stat. § 54-102uu provides that a person is eligible for compensation from the Claims Commission if he has been imprisoned for a violation of state law and his conviction has been vacated on grounds of actual innocence or serious misconduct by an officer that contributed to the person's arrest, prosecution, conviction or incarceration. A person who accepts compensation relinquishes any right to pursue any other action arising out of the conviction and imprisonment." *Horn v. City of New Haven*, No. 3:18-CV-1502(RNC), 2024 WL 1342762, at *8 n.9 (D. Conn. Mar. 29, 2024). In other words, the statute is applicable only to those who have pursued the "alternative remedy" through the Claims Commission, and chosen that route, rather than "an action in tort," to remedy their alleged harm, which is not the case here.

If that iteration of the statute did not clarify its inapplicability to this case, then additional language in the statutory text, Conn. Gen. Stat. § 54-102uu(k), certainly does: "The provisions of this section shall not apply to any agreement or stipulation pursuant to the provisions of section 3-125a." Here, the settlement agreement claimed by the Town Defendants to justify an offset under Conn. Gen. Stat. § 54-102uu(h) was agreed to under Conn. Gen. Stat. § 3-125a. *See* Exhibit 3 to Opp'n, ECF No. 319-4 (May 1, 2025) (Resolution Approving the Stipulation of the Settlement in Ralph Birch v. Town of New Milford, et al. and Shawn Henning v. Town of New Milford, et al.) ("Resolved by the Senate: That the provisions of the stipulation of settlement . . . requiring an expenditure from the General Fund budget in excess of two million five hundred thousand dollars and submitted by the Attorney General to this Assembly for approval in accordance with section 3-125a of the general statutes, are approved.").[3] As a result, for this additional reason, Conn. Gen. Stat. § 54-102uu's offset provision does not apply to this case.

Accordingly, the motion for an offset of the jury award will be denied.[4]

---

[3] Because the statutory text is clear, the Court does not and need not consider arguments related to the legislative history or statutory purpose. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ("If we can ascertain the plain meaning of the statutory text by examining it in the context of the statute as a whole, we need proceed no further."). For similar reasons, the Court also does not and need not consider whether the offset provision applies retroactively.

[4] While the Town Defendants have been very effectively represented during the course of this case, having succeeded at trial in obtaining a defense verdict in favor of one of the Town Defendants, and liability on only one claim against another, the Town Defendants' Conn. Gen. Stat. § 54-102uu argument relies on thinly-veiled policy positions, *see, e.g.*, Reply at 10 ("To interpret the statute as applying only to formal awards by the Claims Commissioner would elevate form over substance and frustrate the legislative intent to prevent windfall recoveries."), rather than caselaw or even a learned treatise, and cites not a single case in support of their suggested method of statutory interpretation. Such arguments may serve some purpose, but they are not ones generally appreciated in a court of law. *Cf. Reed v. Town of Gilbert*, 576 U.S. 155, 184 (2015) (Kagan, J., concurring) ("The Town of Gilbert's defense of its sign ordinance—most notably, the law's distinction between directional signs and others—does not pass strict scrutiny, or intermediate scrutiny, or even the laugh test.").

IV.    **CONCLUSION**

For the reasons stated above, the renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and motion for a jury offset under Connecticut General Statutes § 54-102uu are both **DENIED.**

**SO ORDERED** at New Haven, Connecticut, this 6th day of June, 2025.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE